530 new

1  **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2  Name  Tatum          Willie          E
3        (Last)          (First)        (Initial)

3

4  Prisoner Number   C-55580

4

5  Institutional Address  P.O.Box 689 California Training Facility C.T.F.

5  Soledad State Prison,East Dorm 90/Low

6  ═══════════════════════════════════════════════════
7                **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**

8  Willie Earn Tatum Jr.
   (Enter the full name of plaintiff in this action.)      **CV  08        0814**

9                     vs.                          Case No. _____
                                                  (To be provided by the clerk of court)
10  Ben Curry,Warden

11  Soledad State Prison                          **PETITION FOR A WRIT**
                                                  **OF HABEAS CORPUS**
12

13                                                E-filing

14  (Enter the full name of respondent(s) or jailor in this action)

15

16  ═══════════════════════════════════════════════════
                    Read Comments Carefully Before Filling In

17  When and Where to File

18       You should file in the Northern District if you were convicted and sentenced in one of these

19  counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20  San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21  this district if you are challenging the manner in which your sentence is being executed, such as loss of

22  good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23       If you are challenging your conviction or sentence and you were not convicted and sentenced in

24  one of the above-named fifteen counties, your petition will likely be transferred to the United States

25  District Court for the district in which the state court that convicted and sentenced you is located. If

26  you are challenging the execution of your sentence and you are not in prison in one of these counties,

27  your petition will likely be transferred to the district court for the district that includes the institution

28  where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

1  Who to Name as Respondent

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1. What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13                 County Superior Court, Oakland):

14          Superior Court Dept."E" East       Pomona,Ca.Los    Angeles

15          Court                              County Location

16          (b)    Case number, if known  A-528706

17          (c)    Date and terms of sentence 10-27-82,Life with possible parole

18          (d)    Are you now in custody serving this term? (Custody means being in jail, on

19                 parole or probation, etc.)          Yes  x    No _____

20                 Where?

21                 Name of Institution: California Training Facility C.T.F.

22                 Address: P.O.Box 689 C.T.F.,Soledad State Prison

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  Kidnap for purpose of Robbery,two (2) counts concurrently

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS      - 2 -

3. Did you have any of the following?

      Arraignment:                        Yes __x__    No _____

      Preliminary Hearing:            Yes __x__    No _____

      Motion to Suppress:            Yes _____    No _____

4. How did you plead?

      Guilty __x__    Not Guilty _____    Nolo Contendere _____

      Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

      Jury _____    Judge alone__x__    Judge alone on a transcript _____

6. Did you testify at your trial?          Yes _____    No __x__

7. Did you have an attorney at the following proceedings:

      (a)    Arraignment            Yes __x__    No _____

      (b)    Preliminary hearing      Yes __x__    No _____

      (c)    Time of plea            Yes __x__    No _____

      (d)    Trial                  Yes _____    No _____

      (e)    Sentencing             Yes __x__    No _____

      (f)    Appeal                Yes _____    No _____

      (g)    Other post-conviction proceeding    Yes _____    No _____

8. Did you appeal your conviction?        Yes _____    No __x__

      (a)    If you did, to what court(s) did you appeal?

           Court of Appeal          Yes _____    No _____

           Year: _____      Result: _____

           Supreme Court of California    Yes _____    No _____

           Year: _____      Result: _____

           Any other court           Yes _____    No _____

           Year: _____      Result: _____

      (b)    If you appealed, were the grounds the same as those that you are raising in this

1       petition?                        Yes _____    No_____

2     (c)    Was there an opinion?          Yes _____    No_____

3     (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                     Yes _____    No_____

5         If you did, give the name of the court and the result:

6     _____

7     _____

8   9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9   this conviction in any court, state or federal?         Yes _____    No_ x _

10     [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition. You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15   U.S.C. §§ 2244(b).]

16     (a)    If you sought relief in any proceeding other than an appeal, answer the following

17             questions for each proceeding. Attach extra paper if you need more space.

18         I.    Name of Court: Superior Court,Los Angeles County

19             Type of Proceeding: Writ of Habeas Corpus

20             Grounds raised (Be brief but specific):

21             a. Denial of parole,risk,danger to society if release

22             b. from prison. Has a prior criminal history. Has not

23             c. participated in self-help programing. Removed from

24             d. hearing. Refuse to discuss offense.

25             Result: writ denied         Date of Result: 4-10- 07

26         II.   Name of Court: Second Appellate District,California

27             Type of Proceeding: Writ of Habeas corpus

28             Grounds raised (Be brief but specific):

a. Denial of parole, risk, danger to society if release

b. from prison. Has prior criminal history. Has not

c. participated in self-help programing. Removed from

d. hearing. Refuse to discuss offense.

Result: writ denied                Date of Result: 9-26- 07

III.    Name of Court: California Supreme Court

Type of Proceeding: Petition for Review

Grounds raised (Be brief but specific):

a. Denial of parole, risk, danger to society if release

b. from prison. Has prior criminal history. Has not

c. participated in self-help programing. Removed from

d. hearing. Refuse to discuss offense.

Result: petition denied            Date of Result: 12-12- 07

IV.    Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result: _____    Date of Result: _____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No__x__

Name and location of court: _____

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to

support each claim. For example, what legal right or privilege were you denied? What happened?

Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1  need more space. Answer the same questions for each claim.

2      [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5      Claim One: See Exhibit (A) at Pg.57,Lns.12-27

6

7      Supporting Facts: No evidence in the record showing or proving that

8     petitioner is a current threat and danger to society.

9      Due Process

10

11      Claim Two: See Exhibit (A) at Pg.57,Lns.25-26; Pg.58,Lns.1-3

12

13      Supporting Facts: Its my right to refuse to discuss the offense an

14     in doing so it shall not be held against me,for it was held

15  against me in denying parole.

16      Due Process

17      Claim Three: See Exhibit (A) at Pg.58,Lns.22-26

18

19      Supporting Facts: Criminal history minimal,no prior convictions

20      Due Process

21

22

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 6 -

**Attach page(6)**

Claim Four: See Exhibit (A) at Pg.59,Lns.20-26

Supporting Facts: The record do not support the conclusion that petitioner has not participated in self-help programimg.

**Due Process**

Claim Five:See Exhibit (A) starting at Pg.40,Lns.20-27;On thru to Pgs.44,Lns.1-16

Supporting Facts: The record do not support that petitioner was not cooperating during the hearing and became combative an argumentative and needed to be remove from petitioner's parole hearing.

**Due Process**

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    Hayward    v.Marshall(2008)DJDAR    93;    Dannenberg(2007)    156

5    Cal.App.4th(1387);    Yellen    v.Diane    Butler(E.D.Cal.CIV

6    S-01-2398(2003);Scott,supra,133    Cal.App.4th(2005);Biggs

     v.Terhune,334 f.3d 910(9th Cir.2003)

7    Do you have an attorney for this petition?                    Yes_____    No   X

8    If you do, give the name and address of your attorney:

9    _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on  January 29, 2008            Willie Earl Tatum Jr.

14                     Date                          Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

## Introduction

1  This case arises out of repeated denials of parole to

2  Willie E. Tatum Jr.(hereinafter,Petitioner),for continual

3  denial of parole by the Board of parole

4  hearings(hereinafter,the Board). On September 15th,2005

5  petitioner appeared before the board for petitioner's

6  (12th) parole consideration hearing an at the conclusion

7  of the hearing the board determined that petitioner was

8  unsuitable for parole,and parole was denied for

9  (2),years. On June 29th,2006 petitioner filed a writ of

10  habeas corpus to the Superior court of California,County

11  of Los Angeles an on April 10th,2007 the petition was

12  denied. On July 17th,2007 petitioner filed a writ of

13  habeas corpus to the court of Appeal of the State of

14  Califronia,Second Appellate District an on September

15  26th,2007 the court denied the writ. In October 2007

16  petitioner filed a petition for review in the Supreme

17  court of California, an on December 12th,2007 the court

18  denied the petition for review.

19  The board's reasons for finding petitioner unsuitable for

20  parole were:

21  (1) Petitioner poses an unreasonable risk of danger to

22  society a threat to public safety if release from prison,

23  The offense was carried out in a very callous

24  manner,there were multiple victims and they were abused

25  during the crime.

26  (2) Petitioner have a prior criminal history an a

27  unstable social history.

28  (3) Petitioner has not sucessfully participated in

beneficial self-help programing.

1  (4)   Petitioner   was   removed   from   his   parole
2  hearing,reasons stated by the board,petitioner became
3  argumentative,not cooperating,an combative.

4  (5) Petitioner was denied parole because he refuse to
5  discuss the offense at the parole hearing.

6  These reasons for denial of parole are an unreasonable
7  determination of the facts,petitioner do not have a
8  substantial criminal past involving convictions of
9  violating the law. In (1982) at the age of 24,years of
10 age petitioner's marriage of (2),years was suffuring
11 because petitioner was unemployed at the time of
12 committing this crime prior to being unemployed
13 petitioner worked as a welder and fork-lift driver. A
14 failing marriage unemployment along with alcohol and drug
15 use contributed to petitioner's bleak state of mind of
16 some 25,years ago which created significant stress in
17 petitioner's life causing petitioner to make unwise life
18 decisions and choices in which lead to the commitment
19 offense. Throughout petitioner's incarceration i have
20 participated in programs to help bring about self
21 improvement development to better myself,such programs
22 as:Anger Management classes,Life Skills, "AA" and
23 "NA",and have received favorable and supported
24 Psychological evaluations from staff Psychologist over
25 the years.Furthermore,petitioner have establish an
26 excellent work record with exceptional an above average
27 ratings. The unreasonable determination of the facts that
28 was before the board,for the board to continue to deny

parole to petitioner is contrary to the United States

1  Supreme court law because petitioner's record,taken as a
2  whole does not provide "some evidence" to support a
3  finding that petitioner currently poses an unresonable
4  risk of danger to public safety if released from prison.
5  (See In Re Dannenberg(2007) 156 Cal.App.4th 1387)
6  ///
7  ///
8  ///
9  ///

1    As the court in Greenholtz, said that,"To insure that a
2  state-created Parole scheme serve the public interest purpose of
3  rehabilitation and deterrence,the Parole Board must be cognizant not
4  only of the factors required by state statute to be considered,but
5  also the concept embodied in the constitution requiring due process
6  of law. See also, Biggs v. Terhune,334 f.3d 910,at 916 (9th
7  Cir.2003).

8    These factors underscore why the court in In re Scott(2),133 Cal.
9  App.4th 573, at pg.595,took pains to reiterate that "The commitment
10  offense can negate suitability[for parole],only if circumstances of
11  the crime... rationally indicate that the offender will present an
12  unreasonable public safety risk if release from prison. "Thus,as this
13  court of Appeal recently concluded in the matter of In re Lee,2006
14  DJDAR 13961 at pg.13963,the test is not whether "Some evidence"
15  supports the reasons the Parole Board cites for denying parole,but
16  whether "Some evidence" indicates a Parole release unreasonably
17  endangers public safety. (Cal. Code Regs.,title,15.§2402
18  subd.(a),[Parole denied if prisoner "will pose an unreasonable risk
19  of danger to society if released from prison."] Therefore,"Some
20  evidence" of the existence of a particular factor dose not
21  necessarily equate to some evidence the parolee's release
22  unreasonably endangers public safety.Id.

23    Thus,The court must view the Parole Board's reasons for denial of
24  petitioner's Parole within the context of the other factors it must
25  consider to see if some evidence shows he continues to pose an
26  unreasonable risk to public safety.In re Scott,supra,133 Cal.App.4th
27  at pg.594-595,applying that test petitioner's asserts the court will
28  find no evidence that he is likely to commit another crime or that
his release would unreasonably endanger the public.

1  Petitioner is not attempting to minimize the seriousness of his
2  offense of 25,years ago,for which society has legitimately punish
3  him,however,no reasonable possibility exists that petitioner will
4  reoffend other than the instant case petitioner's criminal history is
5  minimal to say the least,for there in **NO** prior convictions one arrest
6  as a juvenile and three arrest as an adult,(See Exhibit _(A)
7  2005 Board Hearing transcripts(hereinafter"HT"),at pg.10,Lns.6-27;
8  pg.11,Lns.1-27; pg.12,Lns.1-6)

9  Petitioner is now a middle age man of 50,years of age and who has
10 accomplish much during his incarceration,for he has acquired an
11 education and vocations,has taken numerous life skills classes
12 providing him with the ability to cope with stress an anger,none of
13 which he possessed at the age of 25,years of age when he committed
14 the offense.

15 The primary reason the Parole Board cites for its denial of parole
16 is,"The nature of petitioner's crime" unchanging factors
17 therefore,the board's decision is not supported by some evidence.

18 Petitioner contends the Superior court erred,when it summarily denied
19 the petition and failed to identify what evidence contained in the
20 record supported the board's finding of unsuitability. Petitioner,is
21 unclear as to whether the court found that "Some evidence" in the
22 record supported the reasons the board cites for denying parole,or
23 whether "some evidence" indicates his release unreasonably endangers
24 public safety.;In re Scott,2006 DJDAR 13961 at p.13963;(See
25 Exhibit(D),The decision from the Superior court denying the petition
26 on April 10th,2007)

27 As this court of Appeal found in Lee,"some evidence" of the existence
28 of a particular factor does not necessarily equate to some evidence
   the parolee's release unreasonably endangers public safety. Id. at
   p.13963.                    (3)

1 │ Furthermore,this court concluded,"The test is not whether some
2 │ evidence supports reasons the the [Board] cites for denying parole,but
3 │ whether some evidence indicates a parole release unreasonably
4 │ endangers public safety.(Cal. Code Regs.,title 15,§2402
5 │ subd.(a),"Parole denied if prisoner"will pose unreasonable risk of
6 │ danger to society if release from prison."];See, e.g., In, re
7 │ Scott,(2005),133 Cal. App.4th 573,595 [The commitment offense can
8 │ negate suitability for parole only if circumstances of the crime...
9 │ rationally indicate that the offender will present an unreasonable
10 │ safety risk if releases from prison."]

11 │ Moreover,in accordance with the court of Appeal decision in In re
12 │ Lee,the Superior court's denial of the petition failed to reveal the
13 │ Board's reason's of unsuitability within the contex of the other
14 │ factors it must consider to see if some evidence shows petitioner
15 │ continues to pose a current an unreasonable risk to public safety.
16 │ (2006) DJDAR at pp.13963; See In re Scott,supra,133 Cal.App.4th at
17 │ pp.594-595. For the above stated reasons .the petition should be
18 │ return to the Superior court for review consistent with this court of
19 │ Appeal's view's in In re Scott,(2006),DJDAR !#(¢!.

20 │ **"The Board of Parole Hearings Decision Denying Parole Did Not Comport
      with Due Process"**
21 │      On    September    15th,2005,Petitioner's    twelfth(12th),Parole
22 │ consideration hearing was held. The Board of Parole Hearings
23 │ (Board),again denied parole for a period of two(2),years. In the
24 │ Board's decision to deny Parole the Board concluded that,"Petitioner
25 │ continued to pose an unreasonable risk of danger to society or a
26 │ threat to public safety if released from prison",The Board relied
27 │ primaraly on the commitment offense the Board found that the offense
28 │ "Was a very serious crime","The offense was carried out in a very

callous manner","There were mutiple victims"
See exhibit (A) 2005 Board's decision transcripts "HT" at
pg.57,Lns.12-26; pg.58,Lns.4-6

(4)

1    Parole suitability decisions for inmate serving indeterminate life
2    terms are made,in the first instance by the Board. In re Scott,(2004),
3    119 Cal. App.4th 871,884-885. The Board has broad discretion and must
4    normally set Parole relase  in a manner that provides uniform terms
5    for offenses of similar gravity an magnitude with respect to public
6    safety(ibid;Penal Code section,§3041,subd.(a),and must set a Parole
7    date unless it determines that the gravity of the current or past
8    convicted offense or offenses are such that public safety requires a
9    more lengthier period of incarceration.In re Scott,supra at
10   pp.885;Penal Code section §3041 subd,(b). That decision is guided in
11   turn by regulations directing the Board's consideration to six
12   (6),nonexclusive circumstances tending to show unsuitability,
13   California Code of Regulations,tile 15.,section §2402,subd.(c),and
14   nine (9),tending to show suitability id.,section §2402,subd.(d),In
15   re Scott,supra at pp.897.

16   According to the applicable regulations circumstances tending to
17   establish unsuitability for Parole are that the prisoner;(1),committed
18   the offense in an especially heinous,atrocious,or cruel
19   manner;(2),possesses a previous record of violence;(3),has an unstable
20   social history;(4),previously has sexually assaulted another
21   individual in a sadistic manner;(5),has a lengthy history of severe
22   mental problems related to the offense;(6),has engaged in serious
23   misconduct while in prison.(Cal. Code Regs.,title 15.,section
24   §2402,subd.(c),In re Rosenkrantz,(200),29 Cal.4th 616,653-64 fn.
25   omitted.

26   Circumstance(1),is supported where (a) multiple victims were
27   attacked,injured,or killed in the same or separate incidents;(b),The
28   offense was carried out in a dispassionate and calculated manner,such
     as an execution-style murder;(c),The victims was abused,defiled,or
     mutilated during or after the offense;(d),The offense was carried out

1    in a manner that demonstrates an exceptionally callous disregard for
2    human suffering;and(e),The motive for the crime is inexplicable or
3    very trivial in relation to the offense, Cal. Code Regs.,title
4    15.section §2402,subd.(c),(1)",Rosenkrantz,at pp.653,fn.11.

5    Overmore, The court of appeal recently concluded in the matter of In
6    re Lee,(2006),DJDAR 13961 at p.13963,the test is whether -"some
7    evidence" supports the reasons the board cites for denying parole,but
8    whether "some evidence" indicates a parolee's release unreasonably
9    endangers public safety.

10    Cal. Code Regs. title 15. section §2402 subd.(a) [parole denied if
11    prisoner "will pose an unreasonable risk of danger to society if
12    released from prison"] therefor,"some evidence" of the existence of a
13    particular factor in the commission of a crime such as "Multiple
14    victims",dose not necessarily equate to some evidence the parolee's
15    release unreasonably endangers public safety.Id.

16    The Superior court in its denial of the petition agreed with the
17    board in its denial of parole that the offense involved"Multiple
18    victims",Cal Code Regs.,title 15., section §2402 subd.(c)-(a) "Multiple
19    victims" were attacked,injured,or killed in the same or separate
20    incidents.

21    There were multiple victims involved in the commission of the crime
22    however the board has in its discretion has recharacterized the offense
23    making it to appear to be much more serious or violent than what
24    actually took place in the commission of the crime. Petitioner is not
25    attempting to minimize the seriousness of this offense of 25,years
26    ago,for which society has legitimately punish him. Commissioner Fisher
27    stated on record at petitioner's parole hearing held on 9/15/05,"That
28    the panel accepts the finding of the court to be true"(See Exhibit (A)
"HT" at pg.4,Lns.10-14)

(6)

1    Furthermore,petitioner with the agreement of the District Attorney's
2    office of Los Angeles county plead guilty to the offense from the
3    plea agreement that was offered to an accepted by petitioner by way
4    of the District Attorney's office for the conviction,for there wasn't
5    a trial. The facts of the offense would be found in the
6    (1982),Probation officer's report and the Superior
7    court(1982),sentencing transcripts an in viewing both of the said
8    mention transcripts in their entirety the court would see that the
9    recharacterization of the offense viewed by Commissioner Fisher is
10   different from the finding of the Superior court and the probation
11   report.

12   Moreover,[Commissioner Fisher]:"Obviously,there were multiple
13   victims and the victims were abused during the offense because they
14   were robbed whether or not a hand was laid on them,that was abusive.
15   (See Exhibit(A)"HT"at pg.58,Lns.6-15)

16   The (1982),Probation officer's report found that,"The victims were
17   visibly shaken but physically unhurt",(See Exhibit(B),Probation
18   report,at pg.7,Lns.18-19);(See also Exhibit(C),(1982),Superior court
19   sentencing transcripts,at pg.2,Lns.22; pg.3,Lns.9-11),The court found
20   that,"There was no or little harm inflicted upon them,"These women
21   were not abused or injured in the commission of this crime as
22   Commissioner Fisher views this offense.

23   Regulations provides that circumstances tending to establish
24   suitability for parole are that the prisoner,(1) does not possess a
25   record of violent crimes committed while a juvenile;(2) has a stable
     social history;(3) has shown signs of remorse;(4) committed the crime
26   as a result of signifcant stress in his life,especially if the stress
27   has built over a long period of time;(5) committed the criminal
     offense as a result of battered woman syndrome;(6) has made realistic
28   plans for parole or has developed marketable skills that can be put
     to use upon release;(9) has engaged in institutional activities that
     indicates an enhanced ability to function within the law upon

1  Cal.Code Regs.,title 15.,section §2402subd.(d)."Rosenkrantz,supra,29
2  Cal.4th at p.654.

3    Finally,the regulations explains that the foregoing circumstances are
4  set forth as general guidelines; the importance attached to any
5  circumstances or combination of circumstances in a particlar case is
6  left to the judgment of the panel."Cal.Code Regs.title 15 section
7  §2402,subd,(c)-(d),"Rosenkrantz,supra,29 Cal.4th at p.654.

8  Court review of the board's decision is governed by a deferential "some
9  evidence" standard designed to ensure minimum procedural due process
10 protection,"Rosenkrantz,supra,29 Cal.4th at p.658;In re Scott,supra,119
11 Cal.App.4th at p..885-887",[T]he "some evidence" standard is extremely
12 deferential and reasonably cannot be compared to the standard of review
13 involved in ... considering whether substantial evidence supports the
14 findings"(id. at p.665);Nevertheless,it requires "some indicia of
15 reliability",In re Scott(2005),334 f.3d 910,915,and maybe understood
16 as meaning that suitability determination must have some rational basis
17 in fact,In re Scott,at p.590 fn.6 .

18   The key question is whether "some evidence" supports the board's
19 decision. The board's decision discussed that petitioner as a juvenile
20 was arrested one (1),time for at the age of 16,years of age in (1974)
21 was involved in a fight and placed on six months probation and
22 successfully completed probation,the result of the fight i had broke
23 the guy's jaw whom i had a fight with,and six(6),years later as an
24 adult was arrested three(3),times from (1980-81),two(2)arrest for
25 domistic issues with my wife an in both incidents they wer prosecutor's
26 rejects an one (1) arrest for having a switch blade knife (See Exhibit
27 (A) "HT" at pg.10,Lns.5-27; pg.11,Lns.1-27; pg.12,Lns.1-8)

28   Most notably,the board commended petitioner for work that he has been
   donig remaining disciplinary free since (1989),18,yrs.(See Exhibit(A)
   "HT"at pg.24,Lns,6-26; pg.61,Lns.11-14)

1  The commitment offense can negate suitability only if circumstances of
2  the crime reliably established by evidence in the record rationally
3  indicate that the offender will present an unreasonable public safety
4  risk if released from prison. Yet,the predictive value    of the
5  commitment  offense may be very questionable after a long period of
6  time.[citation]. Thus,denial of release based solely on the basis of
7  the gravity of the commitment offense warrants especially close
8  scrutiny,"In re Scott,supra,133 Cal.App.4th at pp.594-595,fns.omitted
9  Chief among the board's reasons for denying parole was the belief of
10 the panel that the offense was "carried out in a very callous
11 manner",obviously,there was  multiple victims,and the victims were
12 abused during the offense because they were robbed and then they
13 forced into a van with apparently four(4) men,[Mr.Tatum],petitioner
14 being one of them,and Mr.Tatum according to the victims and
15 corroborated by one of the codefendants,told them to take off their
16 clothes because he was going to fuck them(See Exhibit(A)"HT"at
17 pg.58,Lns.4-16)

18 In the Superior court decision to deny the petition the court found
19 other than the board's findings that,"There is some evidence to
20 support the finding that the offense was carried out in a manner that
21 demonstrates  an   exceptionally  callous   disregard   for   human
22 suffering,"means the offense in question must have been committed in a
23 more aggravated or violent manner than ordinarily shown in the
24 commission of that offense.

25 To deny parole where no circumstances of the offense reasonably could
26 be considered more aggravated or violent than the minimum neccessary
27 to sustain a conviction for that offense,violates due process of
28 law.In re Scott,supra,133 Cal.App.4th at p.598,

//                                                    '

(10)

1  The essence of the board's decision and the Superior court finding
2  that the offense was callous which demonstrates an exceptionally
3  disregard for human sufferin,thus making petitioner's release at this
4  time an unreasonable risk of danger to society. Given the lapse of
5  twenty-five (25),years of confinement and exemplary evidence of
6  rehabilitation gains made by petitioner over that time,continued
7  reliance on these aggravating factors of the crime do not amount to
8  "some evidence" supporting denial of parole.

9  The commitment offense, The court have observed in an unsuitability
10 factor that is immutable and whose perdictive value may be very
11 questionable after a long period of time [citation].In re
12 Scott,supra,133 Cal.App.4th at pp.594-595,fn.omitted. The Scott,opinion
13 also noted,as has our Supreme court,strong legal and scientific support
14 that."predictions" of future dangerousness are exceedingly
15 unreliable",even where the passage of time is not a factor and the
16 assessment is made by an expert. Id at p.595 fn.9

17 Reliance on a immutable factor,without regard to or consideration of
18 subsequent circumstances,my be unfair to run contrary to the
19 rehabilitation goals espoused by the prison system,and result in a due
20 process violation Id.at p.595.

21 A parole hearing [also],does not ordinarily provide a prisoner a
22 very good opportunity to show his offense was not committed in a
23 especially heinous,atrocious or cruel manner,even if such evidence
24 exist and the prisoner is willing to run the risk his effort to make
25 such a showing will be seen as unwillingness to accept responsibility
26 and therefore evidence of unsuitability, Id. at p..600-601,fn.

27 This may be made worse by the absence of a trail transcripts
28 (Ibid),That is the case here.

//                          (11)

1   The alarming fact of this case is twelve(12),times in denying
2   petitioner's parole this board has relied solely on the gravity of
3   the offense something that no rehabilitative progress can ever
4   change.

5   An instructive case is,Yellen v. Diane Butler(E.D.Cal.2003,No# CIV
6   S-01-2398, Where petitioner,Yellen is serving two(2),concurrent terms
7   of life with the possibility of parole for the conviction of
8   Kidnap/Robbrey ,and was found unsuitable for parole at his
9   third(3rd),parole hearing before the board in (1999),and three more
10  additional hearings following the (1999) hearing an at which he found
11  unsuitable for parole.

12  The facts of the offense in many an all respects are far more worse
13  than the instant case,Petitioner,Yellen along with two(2), crime
14  partners in (1983),from November 5th til November 21st,went on a
15  crime spree crimes including:conspiring to robb Neiman-Marcus,the
16  overt acts in the conspiracy were stealing Mr.Silverman's
17  Porsche,breaking in at Kelco Industries to lure (ADT) security
18  personnel,Kidnapping and Robbing Mr.Nixion,stealing Mr.Castenada's
19  Van,posing as interested buyers of and attempting to steal
20  Mr.Terzibachian's Porsche,Kidnapping to robb Mr.Nixion and
21  Mr.Castenada,robbing Mr.Castenada and Mr.Nixion,unlawfully taking
22  both of their Vehicles,attempting grand theft auto of Mr.Terzibachian
23  Car,assault with fire-arms on Micheal and Rebecca Terzibachian and
24  Joseph Deuer,assaulting Neiman-Marcus employees,burglarizing
25  Neiman-Marcus.

26  Petitioner,Yellen was convicted and sentenced to prison for
27  concurrent life terms with the possibility of parole for
28  Kidnap/Robbery,the board continued to rely on the facts of the crime
    to deny parole.

(12)

1  The board concluded that Yellen's crime was trivial in relation to the
2  offense,and the involved multiple victims.

3  The Eastern District court(2003),in Yellen wrote,more important in
4  assessing any due process violation is the fact that continuous
5  reliance on unchanging circumstances transforms an offense for which
6  California law provides eligibility for parole into a de facto Life
7  imprisonment without the possibility of parole,the court ask
8  rhetorically petitioner,Yellen's crime or motivation for the crime
9  which are going to change,the answer is nothing. The circumstances of
10 the crime will always be what they were,and petitioner's motive for
11 committing them will always be trivial petitioner has no hope of ever
12 obtaining parole except that a panel in the future will arbitrarily
13 hold that the circumstances were not that serious or the motive was
14 more than trivial.

15 Given that no one seriously contends lack of seriousness or lack of
16 triviality at the present time the potential for parole in this case is
17 remote to the point of non-existence,petitioner's liberty interest
18 should not be determined by such an arbitrary remote possibility.

19 Further,the court found that there was not sufficient evidence to
20 support the (1999) board's decision finding petitioner,Yellen
21 unsuitable for parole.

22 Petitioner in the instant case is experiencing the same results as did
23 petitioner,Yellen continuous denial of parole an unlike
24 petitioner,Yellen being denied parole for six (6) times,petitioner in
25 the instant case have been denied parole by the board
26 twelve(12),times,the board relying on immutable factors to deny parole
27 violation of due process of law.

28 ///

(13)

1    The court in Irons,supra,358 f.Supp.2d at p.947 fn.3 ;express that,"To
2    a point it is true,"the circumstances of the crime and the
3    motivation for it may indicate a petitioner's
4    instability,cruelty,impulsiveness,violent tendencies and the like.
5    Howeve,after fifteen(15),or so years in the caldron of prison life,not
6    exactly an ideal therapeutic environment to say the least,and after
7    repeated demonstrations that despite the recognized hardship of
8    prison,this petitioner does not posses those attribute,the predictive
9    ability of the circumstances of the crime is near zero.

10    The rehabilitation success of petitioner is without a doubt a major
11    factor in this case. The board's decision denying parole on the basis
12    of the facts of the offense lacks "some evidence" that granting parole
13    posed an unreasonable risk of danger to society,(Cal.Code Regs.,title
14    15. section §2402,subd.(a).,The petition filed in this case should be
15    granted and the board ordered to reverse its decision of the (2005)
16    parole hearing from unsuitable to suitable,and grant petitioner a
17    release date.

18    ///

19    **There was no evidence before the Board showing that Petitioner had a**
20    **unstable social history another reason to deny parole.**

21    The board opined that petitioner,"Has an unstable social history
22    related to the fact that between the ages of 13,to 15,years. of age
23    petitioner was a gang member,smoked marijuana an also was involved in
24    using other drugs and alcohol(See Exhibit(A)"HT"at pg.59,Lns.8-14)

25    Petitioner contend,that back in October(1982) when convicted of this
26    offense an entering into the Department of Corrections in my initial
27    interview,i was ask a number of questions such as:"Did i belong to a
28    gand,"Did i drink alcohol,"Have i ever used drugs",and from my memory i
    answered yes to all of the questions.

**(14)**

1  The record reflect that there is no evidence showing that when
2  petitioner had drunk alcohol from time to time and used drugs an
3  associated with a gang,for my involvement with these elements wasn't
4  to the degree that petitioner's daily life evolved around these
5  negative activities for if it was a reality of some 30,years ago of
6  extensive drug an alcohol use and gang activity,for that involvement
7  to that degree would constitute an unstable social history an it
8  would be well documented within the record of such involvement such
9  as arrest and convictions relating to these issues,however the record
10 is devoid of evidence showing that petitioner had an unstable social
11 history,prior to the commitment offense,petitioner was married and
12 worked as a welder and fork-lift driver,and provided for my family
13 and lived a stable social life.

14 Moreover,petitioner submits that his past does not by itself
15 reasonably establish current unsuitability because there is no
16 additional evidence to complete a chain of reasoning between his past
17 and in finding that because of it he currently poses an unreasonable
18 risk of danger if released.

19 The fact that petitioner was forthright an admitted to drinking an
20 using drugs along with gang association at the ages of 13-16,years of
21 age some 30,plus years ago does not by itself represent some evidence
22 that he is currently a risk and danger if release from prison.

23 Thus,as this court of Appeal recently concluded in the matter of In
24 re Scott,2006,DJDAR 13961 at p.13963,"The test is not whether some
25 evidence supports the reasons the board cites for denying parole,but
26 whether some evidence indicates a parolee's release unreasonably
27 endangers public safety. Cal.Code Regs.,title 15. section
28 §2402,subd.(a),[Parole denied of prisoner will pose an unreasonable
   risk of danger to society if released from prison]

(15)

1   Therefore,"some evidence" of the existence of a particular factor
2   does not necessarily equate to some evidence the parolee's release
3   unreasonably endangers public safety.Id.

4   Thus,the court must view the parole board's reason for denial of
5   petitioner's parole within the context of the other factors it must
6   consider to see if some evidence shows he continue to pose a current
7   unreasonable risk to public safety.In re Scott,supra,133 Cal.App.4th
8   at pp.594-595,Applying that test,peititoner asserts the court will
9   find no evidence that he is likely to commit another crime or that his
10  release would unreasonably endanger the public.

11  Furthermore, although at the board hearing the record will reveal
12  petitioner's involvement and participating in self-help substance
13  abuse programs continuously since (1989) within the institution.

14  (See Exhibit(A)"HT" at pg.26,Lns.4-27; pg.27,Lns.1-10)

15   In sum,the factor cited by the board that petitioner has an unstable
16  social history because of the use of alcohol and drug along with
17  association with a gang does not constitute some evidence that
18  petitioner,he currently poses an unreasonably risk of danger.
19  indeed,if peititoner's past involvement with the use of drugs an
20  alcohol   and   gang   association   invariably   establish   his
21  unsuitability,then the parole board could deny parole for the rest of
22  petititoner's life based on this immutable factor. The board's
23  decision in this regard appears to be arbitrary and capricious because
24  as noted,the decision omits any consideration of,or even reference
25  to,the undisputed evidence noted above.

26   ///
27  ///
28  ///

(16)

1  The Board's Decision Denying Parole Failed To Reflect Due
2  Consideration Of The Circumstances Tending To Show His Suitability
3  For Parole.

4  The board failed to consider evidence showing petitioner's is
5  suitable for release from prison. The evidence shows the existence
   in this case of all the foregoing circumstances tending to show
6  suitability for release from prison,except the "Battered woman
7  syndrome,Cal.Code of Regs. section §2402,subd.(d),(1),(9).

8  The board commended petitioner for some of the circumstances tending
   to show suitability for parole;has completed high school,has
9  vocations,and    marketable    skills,participated    in    self-help
10 programing,has favorable psychiatric reports,and has realistic plans
11 for parole an ample letters of support from family and friends
12 supporting his release an at Fifty(50),years of age reduces the
13 probability of recidivism (See Exhibit(A)"HT" at pg.59,Lns.21-24;
14 pg.60,Lns.6-19)

15 The board's failure to undertake the individulized consideration of
16 all    relevant    factors    required    by,Rosenkrantz,29    Cal.4th    at
17 p.655,"also offends the board's own regulations,which require that
18 [A]ll relevant,reliable,information available to the panel shall be
19 considered in determining suitability for parole,Cal.Code of
20 Regulations.,title  15.  section  §2402,subd.(b);In  re  Ramirez,94
21 Cal.App.4th 549,at 571-72.

22 [F]ailure to acknowledge that Ramirez's conduct in prison was a
23 circumstance that supported his application for parole,is yet another
24 indication of an arbitrary and capricious determination.

25 The board's treatment of petitioner is if anything more unfair than
26 that considered in Ramirez,because more evidence of circumstances
27 tending to show suitability for release was ignored here than in that
28 case.

//

(17)

1   Furthermore,the   evidence   of   petitioner's   participation   and
2   performance while incarcerated is particularly significant. As the
3   Supreme court has recognized,the behavior of an inmate during
4   confinement is critical in the sense that it reflects the degree to
5   which   the   inmate   is   prepared   to   adjust   to   parole   release
6   Greenholtz,442 U.S. at p.15,99 S.ct.2100.

**Conclusion**

8   For all the reasons   expressed herein,this court should grant the
9   petition for habeas corpus.

10  ////
11  ////
12  ///
13  ////
14  ////
15  ////
16  ////
17  ////
18  ////
19  ////
20  ////
21  ////
22  ////
23  ////
24  ////
25  ////
26  ////
27  ///
28  ///

**(18)**

1  Petitioner Was Removed From His Parole Hearing And Deprived Of The
2  Right To Ask Questions And To Speak Regarding An Unsupported
3  Claim,For There Was No Evidence That Petitioner Was Not
4  Cooperating,Being Combative,and Argumentative And Needed To Be Remove
   From His Parole Hearing.

5

6  On September 15th,2005,Petitioner went before the Board for
7  petitioner's twelfth(12th),parole consideration hearing. The hearing
8  was conducted by Commissioner,Susan Fisher,Deputy Commissioner
9  D.H.Mcbean,Deputy District Attorney for the county of Los Angeles
10 Alexis Delagarza,Katera Rutledg Attorney for petitioner,and
11 Petitioner Willie E. Tatum Jr. were all present.

12  The Following Colloguy Is What Led To Petitioner's Removal From The
    Hearing.
13

14 [District Attorney Delagraza]:"I think the last hearing or the
15 hearing before last,they suggested that petitioner do programing with
16 the respect to the fact that the victims of the crime were women and
17 the concern was that he had sexual aggression issues didhe ever do
18 any self-help or any kind of anything on that"]

19 [Petitioner]:"Excuse me,you said that you read that in some
20 transcripts of last years hearing"]

21 [Commissioner Fisher]:"Wait until the board ask the questions"]

22 [Deputy Commissioner Mcbean]:"Hold on is it in the transcripts of the
23 hearing or was it in the transcripts of the decision"]

24 [District Attorney Delagraza]:"In the report i read that where it
25 indicated what the inmate was told to do,I'm trying to find where it
26 was"]

27 [Petitioner]:"And back to the representative,The District
28 Attorney,"She said that she read is somewhere i mean,what document is
   this"]

1  [Commissioner Fisher]:"Just clam down we're not going to just leave
2  it on record unsolved"]

3  [Deputy Commissioner Mcbean]:"Well it is a good question though,even
4  if it hasn't been posed in the past,and i know you're not interested
5  in talking about the crime today"]

6  [Petitioner]:"Right"]

7  [Deputy Commissinoer Mcbean]:"I do notice that in terms of self-help,
8  the only thing you've done is A.A.,and there was the sexual component
9  of the crime,have you tried to do anything at all in terms of
10  self-help on any sexual issues"]

11  [Petitioner]:"No because,i what was the conviction?,what is the
12  conviction?"]

13  [Deputy Commissioner Mcbean]:"Concerning the facts on the crime"]

14  [Petitioner]:"Okay,but what about the conviction?"]

15  [Deputy Commissioner Mcbean]:"I'm asking the question"]

16  [Petitioner]:"What was the conviction,I wasn't convicted of no sexual
17  crime"]

18  [Commissioner Fisher]:"Mr.Tatum let me give you some advice you're
19  doing the same thing right now that you have been doing in other
20  hearings ,that have been getting you into trouble,if we're trying to
21  go"]

22  [Petitioner]:"Get to what-what are you trying to get to
23  Ms.Commissioner"[

24  [Commissioner Fisher]:"All right get him out of here please"]

25  [Petitioner]:"Can i have my chrono's,give me my chrono's"]

26  [Commissioner Fisher]:"I'll give them to you later,I'll give it to
27  your Attorney at the end of your hearing,just for the record,I'm
28  having the officer remove Mr.Tatum from the room,he is not
cooperating,hes being combative,and hes argumentative,an we don't
need to have him here"]

(29)

1  (See Exhibit(A)"HT",Starting at pg.40,Lns.20-27; On through to
2  pg.44,Lns.1-16)

3  California Penal Code section §3041.5,and California Code of
4  Regulations section §2247,affords petitioner the right during a
5  parole hearing to ask an answer questions and to speak on my own
6  behalf,an as petitioner exercised thses rights to ask questions and
7  to speak on my own behalf regarding the unsupported claim made by
8  District Attorney Delagraza,petitioner was told to wait by
9  Commissioner Fisher,"Until the board ask the questions,violating
10 procedural right's of petitioner.(See Exhibit(A)"HT" at
11 pg.41,Lns.4-9)

12 [Commissioner Fisher]:"Just clam down we're not going to just leave
13 it on record unsolved"];(See Exhibit(A)"HT" at pg.42,Lns.20-25)

14 The unsupported claim made by District Attorney Delagraza did in fact
15 remained on record unsolved,for she did not and could produce the
16 supporting documentation,[T]he "Report" as evidence at the hearing to
17 support her unsupported stated claim regarding this sexual aggression
18 issue that was fabricated by her.

19 Cal.Code of Regs. title,15. section §2030,(d),(2);hearing procedures;
20 Role of the Prosecutor, in pertinent part:

21 "In making comments,supporting documentation in the file should be
22 cited",for District Attorney Delagraza stated that she had read a
23 prior board report stating that a prior board suggested that
24 petitioner do some programing relating to sexual agression issues,for
25 she mad the unsupported claim but did not and could not produce the
26 documentation at the hearing to support her claim that went unsolved
27 an as result petitioner was removed from his parole hearing
28 after questioning the vilidity of the District Attorney's statement.

(See Exhibit(A)"HT" at pg.40,Lns.20-27;pg.41,Lns.1-17;pg.48,Lns.8-22)

21)

1  Further,for no such "Reports" even exist for the board don't issue
2  any reports for any recommendations or suggested programing that the
3  board may recommend,it would be found in the decision section of a
4  board transcripts after parole is denied,for an example of this
5  procedure(See Exhibit(A)"HT"at Decision pg.61,Lns.2-5)

6  Moreover,at the outset of the parole hearing petitioner invoke the
7  right not to discuss the offense(See Exhibit(A)"HT" at pg.4,Lns.2-15;
8  pg.7,Lns.5-11);See also California Penal Code section §5011(b),and
9  Cal.Code of Regulations section §2236)

10  The question stated into the record by District Attorney Delagraza
11  and supported by the board panel which led to petitioner being
12  removed from his parole hearing,was a question involving
13  circumstances surrounding the offense in which petitioner was not
14  convicted of however these circumstances still remain as elements of
15  the crime and petitioner chose not to discuss the offense,the
16  conviction in (1982) was for Kidnap/Robbery, not Kidnap/Rape;(See
17  Exhibit(A)"HT"at pg.40,Lns.20-27; pg.47,Lns.1-19)

18  Overmore,Commissioner Fisher was the hearing officer in charge of
19  petitioner's parole hearing,Cal.Code of Regulation,title 15.section
20  §2030(d),(1),hearing procedures in pertinent part:

21  The hearing officer shall ensure throughout the hearing that
22  unecessary,irrelevant or cumulative oral testimony and statements are
23  excluded",and for the allowance by Commissioner Fisher of the
24  unsupported stated claim and questions ask by District Attorney
25  Delagraza,and Deputy Commissioner Mcbean,for these questions and
26  statements were unecessary,irrelevant and was found to be unsupported
27  by the record leading to petitioner being removed from his
28  hearing,violation of due process of law.

22)

1  Furthermore,for at the outset of the hearing Commissioner
2  Fisher stated into the record;[Commissioner Fisher]:"I do
3  want to remind that you're not required to admit to or
4  discuss the offense,but the panel accepts the finding of
5  the court to be true an also at the outset of the
6  hearing,petitioner invoked the right not to discuss the
7  offense(See        Exhibit        (A)        "HT"        at
8  Pg.4,Lns.10-14;Pg.7,Lns.5-11)

9  Pursuant to California Penal Code section §5011 (b),and
10  Cal.Code Regs. tit 15.section §2236 states in pertinent
11  part:" A life prisoner is afforded the right not to admit
12  to or discuss the offense an in doing so it shall not be
13  held against the prisoner".

14  Violation of State mandated procedures constitute a
15  Federal due process violation only if the violation
16  causes a fundamentally unfair result.[Citation].(See
17  Estelle v. Mcguire,502 U.S. 62,65,112 S.ct.475,112 (1991)
18  The unfair result petitioner was denied parole for
19  refusing to discuss the offense at my parole hearing.
20  (See EXhibit (A) "HT"at Pg.57,Lns.21-26;Pg.58,Lns.1-3)
21  ///
22  ///
23  ///
24  ///
25  ///
26
27
28

23

## Conclusion

1

2  That, this court grant this petition, for all reasons

3  expressed herein.

4  ///

5  ///

6  ///

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Petitioner pro, se

Willie Earl Tatum Jr.

January 29, 2008

c                                24

# EXHIBIT A

1        **P R O C E E D I N G S**

2        **DEPUTY COMMISSIONER MCBEAN:** Okay. We're

3   on record.

4        **PRESIDING COMMISSIONER FISHER:** Okay.

5   Thank you. This is going to be a Subsequent

6   Parole Consideration Hearing for Willie Tatum

7   CDC Number C-55580. Today's date is 9/15/05 and

8   we're located at the Correctional Training

9   Facility. Inmate was received on 11/2/82 from

10  Los Angeles County. The life term began on

11  11/2/82 and the minimum eligible parole date is

12  2/28/89. The controlling offense for which the

13  inmate has been committed is kidnapping and

14  robbery. Case number A-528706, Count One, Penal

15  Code Section 209(b). Inmate received a term of

16  life. Once again the minimum eligible parole

17  date is 2/28/89. And Mr. Tatum, we're going to

18  be tape recording, so for the purpose of voice

19  identification, for the transcriber, we're each

20  going say our first and last name and spell our

21  last name. I'm going to start with myself, but

22  when I get around to you, I need your CDC number

23  as well. All right?

24        **INMATE TATUM:** All right.

25        **PRESIDING COMMISSIONER FISHER:** I'm going

26  to start with myself and go to my left. Susan

27  Fisher, F-I-S-H-E-R, Commissioner.

2

1    **DEPUTY COMMISSIONER MCBEAN:**  My name is DH

2    McBean, M-C-B-E-A-N, Deputy Commissioner.

3    **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  Alexis

4    Delagarza, D-E-L-A-G-A-R-Z-A, Deputy District

5    Attorney, Los Angeles County.

6    **ATTORNEY RUTLEDGE:**  Tara E. Rutledge, R-U-

7    T-L-E-D-G-E, Attorney for Mr. Tatum.

8    **INMATE TATUM:**  Willie Tatum, T-A-T-U-M, C-

9    55580.

10   **PRESIDING COMMISSIONER FISHER:**  Thank you.

11   Ms. Rutledge, did you have a chance to talk to

12   Mr. Tatum about the Americans With Disabilities

13   Act?

14   **ATTORNEY RUTLEDGE:**  Yes.

15   **PRESIDING COMMISSIONER FISHER:**  Okay.  Any

16   accommodations we need to make today?

17   **ATTORNEY RUTLEDGE:**  None.

18   **PRESIDING COMMISSIONER FISHER:**  Okay.  I

19   do want to note for the record that I have the

20   BPT 1073 Form here, and it was signed by Mr.

21   Tatum.  It was dated by his counselor 11 --

22   well, it just says 11/4.  It doesn't have an

23   actual date on it, but it was signed by Mr.

24   Tatum.

25   **INMATE TATUM:**  Who was the counselor?

26   **PRESIDING COMMISSIONER FISHER:**  Rubio.

27   **INMATE TATUM:**  Sometime last year.

1    **PRESIDING COMMISSIONER FISHER:**   Okay.  It
2    does state that you didn't have any disabilities
3    at that time, and that's still correct?
4        **INMATE TATUM:**  Yes.  Correct.
5        **PRESIDING COMMISSIONER FISHER:**   Now.  Are
6    those reading glasses?
7        **INMATE TATUM:**  Yes.
8        **PRESIDING COMMISSIONER FISHER:**   Did you do
9    an Olson Review?
10       **INMATE TATUM:**  Yes.
11       **PRESIDING COMMISSIONER FISHER:**   And did
12   you have your glasses available?
13       **INMATE TATUM:**  Yes.
14       **PRESIDING COMMISSIONER FISHER:**   Okay.
15   Great.  Thank you.  All right.  This hearing is
16   being conducted pursuant to Penal Code Section
17   3041 and 3042 and the Rules and Regulations of
18   the Board of Prison Terms that govern parole
19   consideration hearings for life inmates.  And as
20   you know, Mr. Tatum, the purpose of the hearing
21   today is to consider your commitment offense,
22   your prior criminal and social history, and your
23   behavior and programming since you've been in
24   prison since this offense.  We've had the
25   opportunity to review your file.  I'm going to
26   give you the opportunity to make any corrections
27   that you need to today.  All right?

1      **INMATE TATUM:**   Okay.

2      **PRESIDING COMMISSIONER FISHER:**   We're
3   going to reach a decision today as to whether or
4   not we find you suitable for parole.  If we do
5   find you suitable, I'll explain to you today
6   what the length of your confinement will be.
7   Before we recess today to deliberate, I'm going
8   to give you the opportunity, as well as the
9   District Attorney the opportunity to make a
10  final statement about your suitability.  I do
11  want you to remind that you're not required to
12  admit or discuss the offense, but that the Panel
13  accepts the findings of the Court to be true.
14  You understand that?

15     **INMATE TATUM:**   Yes.

16     **PRESIDING COMMISSIONER FISHER:**   Okay.  The
17  California Code of Regulations states that
18  regardless of time served, a life inmate shall
19  be found unsuitable for and denied parole, if in
20  the judgment of the Panel, he would pose an
21  unreasonable risk of danger to society if
22  released from prison.  (indiscernible).

23     **INMATE TATUM:**   Yes.  Yes.  Yes.

24     **PRESIDING COMMISSIONER FISHER:**   Okay.  I
25  still have to make the record.

26     **INMATE TATUM:**   Yeah.

27     **PRESIDING COMMISSIONER FISHER:**   You have

1   rights related to your hearing that include the

2   right to a timely notice of the hearing, the

3   right to review your Central File, and the right

4   to present relevant documents.  Counsel, have

5   your client's rights been met?

6       **ATTORNEY RUTLEDGE:**  Yes.

7       **PRESIDING COMMISSIONER FISHER:**  All right.

8   You also have the right, Mr. Tatum, to an

9   impartial Panel.  Having seen your two Panel

10  members today, do you have any objections to

11  your Panel?

12      **INMATE TATUM:**  No.

13      **PRESIDING COMMISSIONER FISHER:**  Counsel,

14  any objections to your Panel?

15      **ATTORNEY RUTLEDGE:**  No.

16      **PRESIDING COMMISSIONER FISHER:**  Okay.  I'm

17  going to give you a written copy of our decision

18  today.  It will be a tentative decision, and it

19  will be affective within a 120 days, and then a

20  copy of your decision and a copy of the

21  transcript of your hearing will be sent to you.

22  Are you familiar with the changes that took

23  place last year regarding how you appeal Board

24  decisions?

25      **INMATE TATUM:**  The 1040 process?

26      **PRESIDING COMMISSIONER FISHER:**  Right.

27      **INMATE TATUM:**  That's no longer --

1      **PRESIDING COMMISSIONER FISHER:**  Right.

2      **INMATE TATUM:**  -- around.

3      **PRESIDING COMMISSIONER FISHER:**  All appeals

4  now go directly to the Court.

5      **INMATE TATUM:**  Right.

6      **PRESIDING COMMISSIONER FISHER:**  So should

7  you need additional information about that, your

8  correctional counselor would have it and it

9  should also be in the prison library.

10      **INMATE TATUM:**  Okay.

11      **PRESIDING COMMISSIONER FISHER:**  Okay.  I

12  passed the exhibit sheet, Ms. Delagarza, do you

13  have everything?

14      **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  I do.

15  Thank you.

16      **PRESIDING COMMISSIONER FISHER:**  Okay.  Ms.

17  Rutledge, do you have everything?

18      **ATTORNEY RUTLEDGE:**  Yes.

19      **PRESIDING COMMISSIONER FISHER:**  Is there

20  anything that needs to be submitted?

21      **DEPUTY COMMISSIONER MCBEAN:**  I think they

22  gave a last -- I checked with Mr. Tatum.  It

23  looks like his last chrono, August 5th, 2000, we

24  received today.

25      **PRESIDING COMMISSIONER FISHER:**  Okay.

26  Great.

27      **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  I have

1   that.

2      **PRESIDING COMMISSIONER FISHER:**   All right.

3   Do you have any preliminary objections?

4      **ATTORNEY RUTLEDGE:**   None.

5      **PRESIDING COMMISSIONER FISHER:**   And is Mr.

6   Tatum going to be speaking with us today?

7      **ATTORNEY RUTLEDGE:**   No.

8      **PRESIDING COMMISSIONER FISHER:**   Okay.   Is

9   he going to speak on any issues at all, or just

10   not about the crime?

11      **INMATE TATUM:**   Not about the crime.

12      **PRESIDING COMMISSIONER FISHER:**   Okay.   So

13   when we're going through your social history or

14   your programming or your disciplinaries, will

15   you be talking to us about those?

16      **INMATE TATUM:**   I may.

17      **PRESIDING COMMISSIONER FISHER:**   Okay.   All

18   right.   Just in case, I need to --

19      **INMATE TATUM:**   Right.

20      **PRESIDING COMMISSIONER FISHER:**   I need to

21   swear you in.   Okay.

22      **INMATE TATUM:**   Okay.

23      **PRESIDING COMMISSIONER FISHER:**   Other hand.

24      **INMATE TATUM:**   All right.

25      **PRESIDING COMMISSIONER FISHER:**   Do you

26   solemnly swear or affirm that the testimony you

27   give at this hearing will be the truth and

1  nothing but the truth?

2  **INMATE TATUM:**  Yep.

3  **PRESIDING COMMISSIONER FISHER:**  All right.
4  Counsel, I'm looking at the most recent summary,
5  which is the November 2 Board Report.  Will that
6  work for you?

7  **ATTORNEY RUTLEDGE:**  That's fine.

8  **PRESIDING COMMISSIONER FISHER:**  All right.
9  Let me see here.  It says under summary of the
10  crime:

11  On May 21, 1982, at about 2:00 A.M, female
12  victim Becker and Simon-- that's Susan Becker
13  and Peggy Simon were forced off the road by the
14  van.  Tatum and Jackson exited the van and
15  approached the victim's car.  The following
16  individuals remained in the van:  Garringer,
17  Fernandez, and Williams.  Tatum was armed with a
18  loaded revolver and forced his way into the
19  passenger side of the victim's vehicle.  Jackson
20  threatened the victims with a knife and also
21  forced his way into the victim's vehicle.  The
22  victims screamed.  Victim Becker's brother and
23  her boyfriend heard the scream and went out to
24  investigate.  Tatum pointed the revolver
25  directly at the man and told them to get back.
26  The two men complied with Tatum's order.  The
27  victims were forced to drive away from their

9

1    location.   Tatum ordered Becker to follow the

2    van.   They drove a short distance during which

3    Tatum and Jackson robbed the victims of their

4    jewelry.   They then ordered the victims out of

5    their car and into the waiting van.   Inside the

6    van, Tatum ordered the victims to remove their

7    clothes.   Fernandez attempted to unbutton Peggy

8    Simon's pants.   He stopped when he was told to

9    wait until they got on the freeway.   The police

10   had been contacted by the victim's boyfriend,

11   and the van was identified.   The police spotted

12   the van and a chase ensued.   The chase lasted a

13   short time.   The chase culminated when the van

14   crashed into a tree.   The five defendants then

15   attempted to escape by running out of the van.

16   Tatum and Garringer were arrested immediately at

17   the scene.   Remaining defendants were arrested

18   later near the scene of the crashed van.

19        And it notes the information was obtained

20   from pages five through eleven of the Probation

21   Officer's Report.   Under prisoners version is --

22   is this the one you want me to use, Counsel?

23   The prisoner's version -- or would you prefer a

24   different one?   Let's see.   What else is here?

25   There's a -- the last psych report is 8/21/03.

26   There's a review of life crime there.

27        **INMATE TATUM:**   The findings from the

1   Probation Report and Court.  We'll go with that.
2       **PRESIDING COMMISSIONER FISHER:**  Okay.  The
3   (indiscernible) version.  All right.
4       **INMATE TATUM:**  Yeah.  Go with that.
5       **PRESIDING COMMISSIONER FISHER:**  All right.
6   Let's see here.  Okay.  Let's start -- let's
7   talk about your social history, and I am looking
8   at the Probation Officer's Report for any prior
9   arrests or convictions.  It says -- under
10  juvenile it says dependent (indiscernible) that
11  as a juvenile he was only arrested on one
12  occasion.  It occurred a the age of 16 when he
13  was arrested for assault with intent to commit
14  great bodily injury.  He explains that he became
15  involved in a fight and broke the victim's jaw.
16  He was placed on six months probation and his
17  father had to pay the restitution amounting to
18  $3000.  Is that correct?
19      **INMATE TATUM:**  Yeah, that's correct.
20      **PRESIDING COMMISSIONER FISHER:**  Okay.
21  Under adult history there was an arrest in 1980
22  for battery.  It says no disposition is shown.
23  This defendant believes this involved a fight
24  with his wife when he hit her once.  She
25  screamed loudly and the police were called.
26  They subsequently decided not to file and told
27  defendant to not hit his wife.

11

1       **INMATE TATUM:**  What year was that?

2       **PRESIDING COMMISSIONER FISHER:**  It was

3   September of 1980 -- 1980 disposition.

4       **INMATE TATUM:**  That was prosecutor reject.

5       **PRESIDING COMMISSIONER FISHER:**  It was

6   prosecutor's reject?

7       **INMATE TATUM:**  Yeah.

8       **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  I'm

9   sorry.  I didn't hear -- which one were you

10  talking about?

11      **PRESIDING COMMISSIONER FISHER:**  The

12  September 1980.  Is that right?  And that does

13  say prosecutor's reject on the CINI(phonetic) in

14  May of '81.  It says that you were arrested for

15  receiving stolen property.  Let's see here.

16  This says that your dad gave you a knife and

17  that you kept it on your person.

18      **INMATE TATUM:**  Right.

19      **PRESIDING COMMISSIONER FISHER:**  And it says

20  you were stopped by the police and they found

21  the knife.  And that was -- was it a

22  switchblade?

23      **INMATE TATUM:**  It was a switchblade knife.

24      **PRESIDING COMMISSIONER FISHER:**  All right.

25  And there was another one with no disposition

26  known in '81, looks like it was another night.

27  Apparently they charged you with battery, but

1    they didn't file charges.  Is that correct?

2        **INMATE TATUM:**  That's correct.

3        **PRESIDING COMMISSIONER FISHER:**  All right.

4    And then the last one -- the last one they show

5    is the --

6        **INMATE TATUM:**  Commitment offense.

7        **PRESIDING COMMISSIONER FISHER:**  Yeah.

8        **INMATE TATUM:**  That's it.

9        **PRESIDING COMMISSIONER FISHER:**  Okay.

10   Good.  All right.  Were you raised by your mom

11   and your stepfather?

12       **INMATE TATUM:**  Yes, that's correct.

13       **PRESIDING COMMISSIONER FISHER:**  And it

14   doesn't tell me if you have brothers and

15   sisters.  Do you have any siblings?

16       **INMATE TATUM:**  I have four brothers.

17       **PRESIDING COMMISSIONER FISHER:**  Are they

18   all older or all younger?

19       **INMATE TATUM:**  Three is under me -- is

20   younger than I, and one is older.

21       **PRESIDING COMMISSIONER FISHER:**  And are you

22   in contact with all of them?

23       **INMATE TATUM:**  Yes.

24       **PRESIDING COMMISSIONER FISHER:**  How are

25   they doing?

26       **INMATE TATUM:**  They're doing good.

27       **PRESIDING COMMISSIONER FISHER:**  How about

13

1    your mom and her husband.  Are they still alive?

2        **INMATE TATUM:**  Still alive.

3        **PRESIDING COMMISSIONER FISHER:**  Still in

4    LA?

5        **INMATE TATUM:**  In La Quinta, yeah.

6        **PRESIDING COMMISSIONER FISHER:**  Okay.  And

7    are you in pretty constant contact with them?

8        **INMATE TATUM:**  Yes.

9        **PRESIDING COMMISSIONER FISHER:**  Good.

10   Okay.  It says that you were married -- now, I'm

11   looking back at -- this is '03 when the last

12   psych evaluation was.  It says that you were

13   still legally married at the time, but you were

14   also engaged.  You just had never legally

15   divorced from your wife, correct?

16       **INMATE TATUM:**  That's true, no.

17       **PRESIDING COMMISSIONER FISHER:**  Has that

18   changed at all?

19       **INMATE TATUM:**  No.

20       **PRESIDING COMMISSIONER FISHER:**  Are you

21   still engaged?

22       **INMATE TATUM:**  Yes, I am.  And depending on

23   being paroled, you know, I take care of all

24   those matters.

25       **PRESIDING COMMISSIONER FISHER:**  All the

26   logistics?

27       **INMATE TATUM:**  Right.

14

1    **PRESIDING COMMISSIONER FISHER:** Okay. How
2    did you meet your fiancée?
3        **INMATE TATUM:** I met her through a family
4    friend of mine.
5        **PRESIDING COMMISSIONER FISHER:** Okay. And
6    you have a son?
7        **INMATE TATUM:** Yes.
8        **PRESIDING COMMISSIONER FISHER:** So he must
9    be around 28 now, does that seem right?
10       **INMATE TATUM:** About that.
11       **PRESIDING COMMISSIONER FISHER:** And what's
12   he do?
13       **INMATE TATUM:** He's -- unfortunately he's
14   incarcerated too.
15       **PRESIDING COMMISSIONER FISHER:** That's too
16   bad.
17       **INMATE TATUM:** Yeah.
18       **PRESIDING COMMISSIONER FISHER:** Is it a
19   life term?
20       **INMATE TATUM:** Yes, it is.
21       **PRESIDING COMMISSIONER FISHER:** That's too
22   bad. Does he have kids?
23       **INMATE TATUM:** No.
24       **PRESIDING COMMISSIONER FISHER:** So you're
25   not a grandfather yet?
26       **INMATE TATUM:** No.
27       **PRESIDING COMMISSIONER FISHER:** Let's see

1   here. It says that -- under substance abuse
2   history, it says you never thought of yourself
3   as an alcoholic, but that now you think looking
4   back that you probably were. Is that correct?
5        **INMATE TATUM:** Is that what it says there?
6        **PRESIDING COMMISSIONER FISHER:** That's what
7   it says. Is that not right?
8        **INMATE TATUM:** That is it, yeah.
9        **PRESIDING COMMISSIONER FISHER:** Because if
10  it's not right, let's fix it.
11       **INMATE TATUM:** That's what it is.
12       **PRESIDING COMMISSIONER FISHER:** Okay. It
13  says according to your records, you've used PCP
14  about 40 times, and that you were drinking and
15  using PCP on the date of the offense. Is that
16  correct?
17       **INMATE TATUM:** Yes, that's correct.
18       **PRESIDING COMMISSIONER FISHER:** And that
19  you started smoking pot from about the sage of
20  14.
21       **INMATE TATUM:** Yes.
22       **PRESIDING COMMISSIONER FISHER:** Okay.
23  Anything else? Any other kinds of drugs or
24  anything?
25       **INMATE TATUM:** That's it right there.
26       **PRESIDING COMMISSIONER FISHER:** Okay. Wow,
27  you got stabbed years ago?

16

1      **INMATE TATUM:** Yeah.

2      **PRESIDING COMMISSIONER FISHER:** It says

3 that you never fully recovered from it. Is that

4 true? You still have problems from it?

5      **INMATE TATUM:** I would say so, yeah. You

6 know, getting older.

7      **PRESIDING COMMISSIONER FISHER:** Start --

8 you start to feel things that you didn't feel

9 before.

10     **INMATE TATUM:** Right, yeah.

11     **PRESIDING COMMISSIONER FISHER:** I can

12 relate to that.

13     **INMATE TATUM:** Yeah.

14     **PRESIDING COMMISSIONER FISHER:** All right.

15 And anything else about your social history that

16 I haven't asked you about that you think would

17 be important for us to know?

18     **INMATE TATUM:** As far as what did I do, as

19 far as work?

20     **PRESIDING COMMISSIONER FISHER:** Just in

21 general, just anything about you that you think

22 that we should know about you.

23     **INMATE TATUM:** I love music. I worked when

24 I could. That's about it. I like sports. That

25 kind of stuff.

26     **PRESIDING COMMISSIONER FISHER:** Okay. I

27 just want to make sure that I didn't miss or

1  gloss over anything that you thought was

2  important, that we got it covered.  All right.

3  Let's talk about parole plans.  I'm going to

4  tell you what you it says in the file.  And I

5  have some letters in here too, so I'm going to

6  through those.  It says that you would live with

7  your mom and your stepfather.  Is that correct?

8      **INMATE TATUM:**  Yes, that's correct.

9      **PRESIDING COMMISSIONER FISHER:**  And it also

10  says that you have skills as a welder, forklift

11  driver, upholsterer, and small engine repair,

12  and that you could work in any of those fields.

13      **INMATE TATUM:**  That's correct.

14      **PRESIDING COMMISSIONER FISHER:**  Okay.  I'll

15  tell you what I've got here.  I have -- I have a

16  letter from Dedra Morey (phonetic).

17      **INMATE TATUM:**  That's my fiancée.

18      **PRESIDING COMMISSIONER FISHER:**  She says --

19  this letter assures my ongoing full support of

20  Bill Tatum upon his release and during his

21  incarceration.  She says that she's in close

22  contact with your family and she says they agree

23  with me to provide financial, emotional support

24  as needed.  Bill is ready and willing to work

25  and attend school to support himself.  There are

26  many areas Bill has shown an interest in besides

27  the music field, which he studied while in

1    prison.  Bill's inquired about computers.  I
2    talked to the Urban League, which will start him
3    in a basic training and job skills program as
4    soon as he's released.  He's looking forward to
5    working with his skills in the church.  It says,
6    I'm currently teaching in the public schools and
7    also at church.  I know Bill will be involved in
8    positive constructive daily activities.  She
9    says that you would also take care of your
10   parents.  That your dad has cancer and your mom
11   has asthma and congestive heart failure.  Is
12   that right?

13       **INMATE TATUM:**  Yeah, but my father, he
14   passed.  He passed last year -- last year,
15   September.

16       **PRESIDING COMMISSIONER FISHER:**  I'm sorry.
17       **INMATE TATUM:**  Yeah.

18       **PRESIDING COMMISSIONER FISHER:**  This must
19   of been right before that, because this was
20   stamped September of '04.

21       **INMATE TATUM:**  Right.

22       **PRESIDING COMMISSIONER FISHER:**  And your
23   stepfather is ill also, I guess.  Asthma and
24   high blood pressure and arthritis is what she
25   says.

26       **INMATE TATUM:**  Yeah.  They getting up in
27   age.  They up in age.

19

1    **PRESIDING COMMISSIONER FISHER:**  Let's see

2    here.  And she talks about what you've done, the

3    certificates that you've gotten, and the fact

4    that she believes that those will certainly help

5    you find work.  And this is another copy of her

6    letter.  And that's all I've gotten in way of

7    support letters.  Is there anything that I

8    should have that I'm missing here?

9    **ATTORNEY RUTLEDGE:**  No.  I also notice that

10   the C file letters didn't get our file.

11   **INMATE TATUM:**  Right.  Here's three more

12   letters.

13   **PRESIDING COMMISSIONER FISHER:**  Okay.  If

14   you'll give those to the Officer.  Thank you.

15   Do you play a musical instrument?

16   **INMATE TATUM:**  Yes, ma'am.

17   **PRESIDING COMMISSIONER FISHER:**  Multiple

18   musical instruments?

19   **INMATE TATUM:**  Yes.

20   **PRESIDING COMMISSIONER FISHER:**  What do you

21   play?

22   **INMATE TATUM:**  The piano is my instrument

23   of choice and then base guitar.

24   **PRESIDING COMMISSIONER FISHER:**  Have you

25   had any opportunity to practice while you've

26   been here?

27   **INMATE TATUM:**  Yeah.

1    **PRESIDING COMMISSIONER FISHER:**   Have you?

2    **INMATE TATUM:**   Yeah.

3    **PRESIDING COMMISSIONER FISHER:**   Good.

4    **INMATE TATUM:**   Yeah.

5    **PRESIDING COMMISSIONER FISHER:**   All right.

6    This is another copy of her letters.   Wow.   She

7    sent a bunch of copies.

8    **INMATE TATUM:**   Yeah.

9    **PRESIDING COMMISSIONER FISHER:**   Okay good.

10   And this is the same letter.

11   **INMATE TATUM:**   Right.

12   **PRESIDING COMMISSIONER FISHER:**   So I'm not

13   going to through that.   We have a letter here --

14   okay.   You're going to have to help pronounce

15   this name.   Is that Morteal (phonetic).

16   **INMATE TATUM:**   Morteal (phonetic).

17   **PRESIDING COMMISSIONER FISHER:**   Morteal

18   (phonetic) Cobbs, and this is your aunt, right?

19   **INMATE TATUM:**   Yes.   My mother's sister.

20   **PRESIDING COMMISSIONER FISHER:**   Okay.   She

21   says, I'm very concerned about the time that he

22   has spent in prison.   She says that I feel that

23   the Board should give him a date to be released.

24   I'm hoping that the Board would consider to let

25   him come back to society.   He's always been a

26   good nephew.   He has good background, grew up in

27   the church, and worked with different

1  auxiliaries.  He has a family that loves him and
2  always will.  Okay.  Let's see.  There's an
3  opening here somewhere, but I just not seeing
4  it.  Up here -- yes, it is.  Looks like it's
5  been resealed.

6     **INMATE TATUM:**  Yeah.  That's coming from
7  the mailroom.

8     **PRESIDING COMMISSIONER FISHER:**  Okay.  I
9  don't -- I don't want to mess up your letter
10  here.

11     **ATTORNEY RUTLEDGE:**  Is it open on the side?
12     **PRESIDING COMMISSIONER FISHER:**  I don't
13  think it is.

14     **INMATE TATUM:**  Looks like it's taped from
15  the bottom and the top.

16     **PRESIDING COMMISSIONER FISHER:**  It's taped
17  and I don't want the mess with this letter.  All
18  right.  Being as careful as I can here.  All
19  right.  And they taped it so well that it was
20  taped inside the envelope.  And this is from
21  Debra Sweet-Kelly.

22     **INMATE TATUM:**  My first cousin.

23     **PRESIDING COMMISSIONER FISHER:**  Okay.  She
24  says several years, similar correspondence, was
25  sent to you as a persuasive measure for Willie's
26  release.  Again, several years later, I find
27  myself corresponding with you again.  She says

22

1    the prolonged duration of his physical
2    incarceration has caused him to serve and suffer
3    protracted exclusion from the family he duly
4    loves.  She says -- she's mostly talking about
5    your -- about the length of your incarceration.
6    I believe Willie has more than paid his debt and
7    is no longer a risk to humanity.  He deserves a
8    chance to proof himself in society -- I'm sorry,
9    prove to himself in society that he's been
10   rehabilitated and will be an upstanding citizen.
11   Please use Willie's release to proof to society
12   that the prison reform system does work.  Our
13   family loves him dearly and will gladly welcome
14   him with open arms.  As a closely knit family,
15   we will all bond together to keep Willie well
16   within the realm of positive productive.  We are
17   abundantly blessed to have several church
18   ministers and officers who are willing to serve
19   as personal counselors to him in many ways.  All
20   right.  Is there anything else about your parole
21   plans that I haven't asked you about that you
22   think would be important for us to know?

23       **INMATE TATUM:**  In 2003, I contacted a
24   couple of truck driving schools.  That's what I
25   want to do --

26       **PRESIDING COMMISSIONER FISHER:**  Okay.

27       **INMATE TATUM:**  -- when I'm paroled, and one

1   and your attorney an opportunity to address some
2   things.  I see you last appeared before the
3   Board of Prison Terms on 11/19/03.  At that time
4   you were given a one year denial.
5       **INMATE TATUM:**  Yes.
6       **DEPUTY COMMISSIONER MCBEAN:**  You were asked
7   to remain disciplinary free and to participate
8   in self-help and therapy as available.  You have
9   a current classification score of -- wait a
10  minute.  Yeah, 19.  Custody level is medium AR.
11  Are you still working for PIA?
12      **INMATE TATUM:**  Yes, ma'am.  Yes, I am.
13      **DEPUTY COMMISSIONER MCBEAN:**  All right.
14  And that's in work products?  Is that furniture
15  factory?
16      **INMATE TATUM:**  Yes.
17      **DEPUTY COMMISSIONER MCBEAN:**  Did you need a
18  minute with your client?
19      **ATTORNEY RUTLEDGE:**  No, we clarified it.
20      **DEPUTY COMMISSIONER MCBEAN:**  Okay.  And it
21  looks like you have been in the furniture
22  factory since about '02?
23      **INMATE TATUM:**  Yes, that's correct.
24      **DEPUTY COMMISSIONER MCBEAN:**  And you have
25  above average or exceptional work reports.
26  Doing well.
27      **INMATE TATUM:**  Yes.

1      **DEPUTY COMMISSIONER MCBEAN:** Before that
2  were you in PIA sewing?

3      **INMATE TATUM:** Yes, I was.

4      **DEPUTY COMMISSIONER MCBEAN:** Back in '98
5  through 2000 to 2001 --

6      **INMATE TATUM:** Right.

7      **DEPUTY COMMISSIONER MCBEAN:** Something like
8  that.

9      **INMATE TATUM:** Right.

10      **DEPUTY COMMISSIONER MCBEAN:** All right.  So
11  you've been in PIA for quite a while.  Now you -
12  - you dropped out of high school in the 11th
13  grade; is that right?

14      **INMATE TATUM:** Yes.

15      **DEPUTY COMMISSIONER MCBEAN:** Okay.  And
16  then did you finish your high school or get your
17  GED?

18      **INMATE TATUM:** I finished my high school
19  while incarcerated at DVI Tracy in '91.

20      **DEPUTY COMMISSIONER MCBEAN:** '91.  Okay.
21  From a vocational standpoint, you have completed
22  one vocational trade, and that's small engine
23  repair in '97.

24      **INMATE TATUM:** Yes.

25      **DEPUTY COMMISSIONER MCBEAN:** That right?
26      **INMATE TATUM:** Yes.

27      **DEPUTY COMMISSIONER MCBEAN:** Okay.  Any

1   others?  Any other voc trades that you

2   completed?

3       **INMATE TATUM:**  That's it.

4       **DEPUTY COMMISSIONER MCBEAN:**  Okay.  The

5   file indicates some use of marijuana, PCP,

6   Benzedrine, amphetamine, cocaine, and alcohol.

7   Is that correct?

8       **INMATE TATUM:**  Prior to conviction, yes.

9       **DEPUTY COMMISSIONER MCBEAN:**  Prior to the

10  life crime?

11      **INMATE TATUM:**  Right.

12      **DEPUTY COMMISSIONER MCBEAN:**  There's a

13  history of that drug use?

14      **INMATE TATUM:**  Right.

15      **DEPUTY COMMISSIONER MCBEAN:**  And from a

16  self-help standpoint, I saw that you

17  participated in AA in '96, and in '03, 4 and 5.

18  Is that right?

19      **INMATE TATUM:**  Well, from '87, from '87 to

20  now, to 2005.

21      **DEPUTY COMMISSIONER MCBEAN:**  Well, I

22  couldn't find all those chronos.  I'll look

23  again.  I saw one in '96.

24      **INMATE TATUM:**  Right.

25      **DEPUTY COMMISSIONER MCBEAN:**  And that was

26  the first one I saw.  And I saw some in '03, 4

27  and 5.  Did you get chronos along the way giving

1   you credit for your participation?

2       **INMATE TATUM:** Yes. How many files do you

3   have there, two?

4       **DEPUTY COMMISSIONER MCBEAN:** Two, yeah.

5       **INMATE TATUM:** Where they are?

6       **DEPUTY COMMISSIONER MCBEAN:** I'll have the

7   officer bring them. Thanks.

8       **DEPUTY COMMISSIONER MCBEAN:** Okay. In '96,

9   '97, '95, '94, '92, '89, I wonder is there a

10  third file?

11      **INMATE TATUM:** Could be.

12      **DEPUTY COMMISSIONER MCBEAN:** Okay. I'm

13  going to see in a second. I'm going to go look

14  to see if there is a third file that we don't

15  have. All right. I'm glad to see that you

16  maintained copies of those. So do you know the

17  steps, Mr. Tatum?

18      **INMATE TATUM:** I know some of them.

19      **DEPUTY COMMISSIONER MCBEAN:** Do you find

20  that you use them in your life?

21      **INMATE TATUM:** Yes.

22      **DEPUTY COMMISSIONER MCBEAN:** Can you tell

23  me about one or two that you find that you use

24  in your daily life?

25      **INMATE TATUM:** Step one.

26      **DEPUTY COMMISSIONER MCBEAN:** What is that?

27      **INMATE TATUM:** Admit to myself, as well as,

1   know that I was powerless over my addiction and

2   my life had become unmanageable.  Step four,

3   make a list of all the -- essentially, a moral

4   inventory of myself, which I do that regularly.

5   And then there's step eight, make a list of all

6   the people who I have harmed and be willing to

7   make an amends to the them, if possible.

8       **DEPUTY COMMISSIONER MCBEAN:**  Okay.  Did you

9   do those things?

10      **INMATE TATUM:**  Yes.  I do those things,

11  yeah.

12      **DEPUTY COMMISSIONER MCBEAN:**  Very good.

13  Okay.  Let's see.  You also did a anger

14  management video in a August of '05, and

15  attended employability -- I think that's video a

16  as well in December of '04.  And in the past

17  have participated in arts and corrections and I

18  saw that you played in the band for variation

19  functions?

20      **INMATE TATUM:**  Right.

21      **DEPUTY COMMISSIONER MCBEAN:**  In the

22  institution?

23      **INMATE TATUM:**  Right, the children's

24  Christmas festival.

25      **DEPUTY COMMISSIONER MCBEAN:**  Right.  Okay.

26  So you're part of the institution man?

27      **INMATE TATUM:**  Yes.

1    **DEPUTY COMMISSIONER MCBEAN:**  All right.

2    Any other self-help that you've done, especially

3    since your last appearance -- since '03?

4    **INMATE TATUM:**  I've been reading my bible,

5    you know, I use that.  That's self-help for me.

6    **DEPUTY COMMISSIONER MCBEAN:**  Okay.

7    **INMATE TATUM:**  Yeah.

8    **DEPUTY COMMISSIONER MCBEAN:**  Anything else?

9    **INMATE TATUM:**  That's it.

10   **DEPUTY COMMISSIONER MCBEAN:**  That's it?

11   **INMATE TATUM:**  Yeah.

12   **DEPUTY COMMISSIONER MCBEAN:**  Okay.  Let's

13   see.  Let's look at your disciplinary history.

14   You have six CDC 115s, last one being 10/20 of

15   '89.  That was for threatening staff.  That's

16   not a very good one.  It states on October 20th,

17   '89, at approximately 1200 hours, **INMATE TATUM**

18   threatened me, he stated "Any motherfucker that

19   crosses me is going to get taken out.  I'm a

20   gangster ass motherfucker, and I'll take care of

21   the motherfucker my Goddamn self."  Sorry, I

22   have to use that language, but I need to read.

23   He also pointed out that, "This room is full of

24   inmates and the guards can't get in here before

25   they get to you.  These comments were made after

26   I said there wasn't much options left except to

27   write up inmates who continue to eat in the

1    classroom after several verbal warnings." So

2    what would you like to tell us about that one?

3         INMATE TATUM:  Do you have a copy of that

4    115 in there?

5         DEPUTY COMMISSIONER MCBEAN:  It is the

6    Central File.

7         INMATE TATUM:  Is that the copy of the 115?

8         DEPUTY COMMISSIONER MCBEAN:  It's the

9    original.

10        INMATE TATUM:  Is it?

11        DEPUTY COMMISSIONER MCBEAN:  Did you say

12   those things?

13        INMATE TATUM:  No.  I didn't say those

14   things.  No, I didn't.

15        DEPUTY COMMISSIONER MCBEAN:  Okay.  What

16   happened there?

17        INMATE TATUM:  That was what 16 years ago.

18        DEPUTY COMMISSIONER MCBEAN:  1989.

19        INMATE TATUM:  About that.  I don't have no

20   comment on that, but I will stipulate for the

21   record that I didn't say those things that he

22   claimed I said.

23        DEPUTY COMMISSIONER MCBEAN:  Well, he was

24   found guilty of this 115.

25        INMATE TATUM:  That's true.

26        DEPUTY COMMISSIONER MCBEAN:  I mean, you

27   know, it is in the Central File and you don't

1  have to speak about it, it's your opportunity to

2  provide any clarification if you want to -- hold

3  on.

4      **INMATE TATUM:**  All right.

5      **DEPUTY COMMISSIONER MCBEAN:**  It's your

6  opportunity to provide clarification if you want

7  to, and if you don't want to, that's okay.

8      **INMATE TATUM:**  Okay.  And I choose not to.

9      **DEPUTY COMMISSIONER MCBEAN:**  You don't want

10 to comment on it?

11     **INMATE TATUM:**  No.

12     **DEPUTY COMMISSIONER MCBEAN:**  Okay.  You

13 have one on 4/24, '89 -- and I know these were a

14 while ago, but I just -- are you going to

15 comment on any of them?

16     **INMATE TATUM:**  No.

17     **DEPUTY COMMISSIONER MCBEAN:**  No?

18     **INMATE TATUM:**  No.

19     **DEPUTY COMMISSIONER MCBEAN:**  All right.

20 4/29, '89 is for disobeying orders.  He's told

21 to go to class and you became argumentative and

22 wanted to go to smoke.  7/21/86 for possession

23 of a TV that you shouldn't of had.  5/25/86 for

24 destruction of state property.  In this 115 --

25 in the steamline, in the dining room, the 115

26 indicates you broke the glass of the steamline

27 because you did not want the potatoes that were

1  being served, and staff heard the glass
2  breaking.  And 5/24/85, disobeying orders, you
3  were housed in cell D 212, refused to stop in
4  the north quarter for clothed body search.
5  Tatum stated, "Fuck you."  I gave direct order
6  for him to stop, and ordered him on the wall.
7  Tatum stated, "You put me on the wall, punk."
8  Back up was called, and he was searched.  And
9  then (indiscernible), another 115 for disobeying
10 orders.  In the culinary, you were told to leave
11 the area.  Instead of leaving, Tatum tried to
12 walk around me.  I blocked his path by stepping
13 in front of him and again addressed him to
14 leave.  Tatum refused.  At that time, I ordered
15 Tatum to place his hands on the wall and submit
16 to a clothed body search.  He refused.  I placed
17 my hands on Tatum's arms, turning him towards
18 the wall.  Tatum made several attempts to turn
19 from the wall and other staff had to come and
20 assist.  You also have four 128s.  The last one
21 being, 11/15/90 for disobeying orders.
22 11/12/89, became loud and abusive in class.
23 7/27/89 for absences.  12/5/88, unproductive
24 behavior in class.  And 8/11/83, following a
25 stabbing assault in the weight lifting area of
26 the main yard, you were found to be without any
27 ID.  Now, the file indicates that you are a

33

1  member of the Crips Gang.  Los Angeles Crips per

2  the CDC 812 and the Probation Officer's Report,

3  and are you still affiliated with the Crips?

4      **INMATE TATUM:**  No.

5      **DEPUTY COMMISSIONER MCBEAN:**  Okay.  How

6  long have you disassociated yourself from the

7  Crips?

8      **INMATE TATUM:**  It's many, many years prior

9  to me -- this life commitment.

10      **DEPUTY COMMISSIONER MCBEAN:**  Okay.  So you

11  were not involved in the Crips at the time of

12  the life crime?

13      **INMATE TATUM:**  Right.

14      **DEPUTY COMMISSIONER MCBEAN:**  Okay.  And you

15  don't have any 115s that would indicate that you

16  are continuing to affiliate with them.  So

17  that's the good news.

18      **INMATE TATUM:**  That's correct.  And no

19  arrests for affiliation or being a Crip member

20  or whatever.

21      **DEPUTY COMMISSIONER MCBEAN:**  You mean since

22  your crime?

23      **INMATE TATUM:**  Prior to and since I've been

24  incarcerated, as well.

25      **DEPUTY COMMISSIONER MCBEAN:**  Well, unless

26  the life crime was involving his Crip activity,

27  but we're not really certain about that.  All

35

1    rules violations from '84 to '89.  Since he has

2    not been involved in any physical violence

3    during his entire incarceration, it's felt he

4    would pose a less-than-average risk for violence

5    when compared to this Level Two inmate

6    population.  And I guess it's using that

7    analysis then, that reaches the conclusion as

8    well that violence potential is estimated to be

9    no higher than average in the community.  And

10   that's my Dr. William Gamard.  Okay.  Is there

11   anything else that you'd like to address that we

12   have missed in terms of your institutional

13   adjustment or accomplishments during your

14   incarceration?

15        **INMATE TATUM:**  That about sums it up right

16   there.

17        **DEPUTY COMMISSIONER MCBEAN:**  Okay.

18   Anything you'd like to add, Counsel?

19        **ATTORNEY RUTLEDGE:**  No.

20        **DEPUTY COMMISSIONER MCBEAN:**  Okay.  Return

21   to the Chair.

22        **PRESIDING COMMISSIONER FISHER:**  Okay.

23   You've been disciplinary free for a long time?

24        **INMATE TATUM:**  Yes.

25        **PRESIDING COMMISSIONER FISHER:**  What do you

26   attribute that to?  How do you do that?

27        **INMATE TATUM:**  Maturing, you know, growing

1    up.  You have to be accountable and responsible
2    for your actions.  Here I was -- here I am in
3    prison with a life sentence, and that kind of
4    behavior and conduct is -- won't cut it.  It's
5    just growing up.

6    **PRESIDING COMMISSIONER FISHER:**  It's just
7    not a good idea?

8    **INMATE TATUM:**  Yeah, exactly.

9    **PRESIDING COMMISSIONER FISHER:**  So it
10   sounds like back in the '80s, when you first
11   came to prison, were you just angry at the
12   world?  Because that's what it sounds like when
13   she reads what you were doing.

14   **INMATE TATUM:**  It could of been.  I believe
15   so.  It could of been.

16   **PRESIDING COMMISSIONER FISHER:**  I was
17   reading -- I was kind of flipping through some
18   of your prior decisions back then and in 1997
19   one of the Commissioners suggested to you that
20   you needed to get a handle on your anger
21   problems.  What was going -- because that even -
22   - that was several years after your last 115.

23   **INMATE TATUM:**  He had asked a question --
24   it was Gillis (phonetic), Commissioner Gillis.
25   He had asked a question, and I was responding to
26   the question, and I guess he took it as me
27   being, you know, over-assertive, or aggressive

1   in the way I was expressing myself.

2        **PRESIDING COMMISSIONER FISHER:**   Okay.

3        **INMATE TATUM:**   And he just leaned back in

4   his chair, and you need to get a handle on that

5   anger.   And that's my recollection of that.

6        **PRESIDING COMMISSIONER FISHER:**   And what

7   happened last year with Commissioner Moore

8   because you had had him before --

9        **INMATE TATUM:**   Right.

10       **PRESIDING COMMISSIONER FISHER:**   -- on your

11  Panel.   And there was some discussion at the end

12  of your hearing between you and him.   What was

13  going on with that?

14       **INMATE TATUM:**   That's Commissioner Moore.

15  Commissioner Moore being Commissioner Moore.

16  That's all I can say to that.

17       **DEPUTY COMMISSIONER MCBEAN:**   I didn't

18  understand that.

19       **INMATE TATUM:**   (indiscernible).

20       **DEPUTY COMMISSIONER MCBEAN:**   The question

21  was, what happened, and you want to talk about

22  your responsibility or what you did, not just

23  him because he's not here.

24       **INMATE TATUM:**   (indiscernible).

25       **PRESIDING COMMISSIONER FISHER:**   There was

26  something that he said that you wanted -- let's

27  see here.   That you wanted to -- he said it in

1    his decision, I think, or as he was reading the
2    decision that you wanted to respond to.  Is that
3    correct?  As I recall, he was talking about the
4    115 where the teacher -- the one that she read
5    that involved all the language.

6    **INMATE TATUM:**  Right.  Right.

7    **PRESIDING COMMISSIONER FISHER:**  And you
8    said that you wanted to respond to it and he
9    said no?

10    **INMATE TATUM:**  Right.  Right.  That's what
11    it was.

12    **PRESIDING COMMISSIONER FISHER:**  But you
13    kind of didn't take no as an answer?

14    **INMATE TATUM:**  It's at the decision phase,
15    you know, as my recollection -- it was brought
16    up during the hearing, so in the decision phase,
17    the crime being the primary reason and reason
18    for the denying, you know, is the 115 for added
19    weight, and I just ask him could I rebuttal, and
20    this is during the decision phase.  And
21    Commissioner Moore, being arrogant and
22    Commissioner Moore that he is, is no, you can't.
23    There's no rebuttal.  So that's what that was.

24    **PRESIDING COMMISSIONER FISHER:**  Right.
25    Okay.  I just wanted to give you an opportunity
26    to a address that because it's part of the
27    record.

39

1       **INMATE TATUM:**  That's what it was.

2       **PRESIDING COMMISSIONER FISHER:**  I don't

3   have any other questions.  Do you have anything?

4   Any questions?

5       **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  I have

6   a question.  The two arrests that the inmate had

7   in '80 and '81.  Those were both domestic

8   violence batteries.  Is that correct?

9       **INMATE TATUM:**  Yes.

10      **PRESIDING COMMISSIONER FISHER:**  Okay.

11  Remember to answer to me.

12      **INMATE TATUM:**  Yes.

13      **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  I'm

14  sorry.

15      **PRESIDING COMMISSIONER FISHER:**  I was

16  talking to him.  Go ahead.

17      **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  And

18  somewhere in here, I read, and I don't see it

19  ever mentioned again, that his father went to

20  prison and that his son also went to prison.  Is

21  that correct?

22      **PRESIDING COMMISSIONER FISHER:**  He

23  mentioned today that his son is in prison.  Did

24  your dad go to prison?

25      **INMATE TATUM:**  Yes.

26      **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  And

27  why did his father go to prison?

1          **INMATE TATUM:**   I can't recall.   I was a kid
2     when he went.

3          **PRESIDING COMMISSIONER FISHER:**   Okay.

4          **DEPUTY DISTRICT ATTORNEY DELAGARZA:**   Did he
5     say why his son went to prison?

6          **PRESIDING COMMISSIONER FISHER:**   I don't
7     think I asked it.

8          **INMATE TATUM:**   No.

9          **PRESIDING COMMISSIONER FISHER:**   Why is your
10    son in prison?

11         **INMATE TATUM:**   I believe robbery.

12         **PRESIDING COMMISSIONER FISHER:**   Anything
13    else?

14         **DEPUTY DISTRICT ATTORNEY DELAGARZA:**   Yes.
15    Going back to one of the reports, or all the
16    reports, at one point the Commissioners
17    requested that he get a Cat T.   Did the inmate
18    ever do that?

19         **INMATE TATUM:**   No, I didn't.

20         **DEPUTY DISTRICT ATTORNEY DELAGARZA:**   Also,
21    in, I think, the last hearing or the hearing
22    before last, they suggested that he do
23    programming with respect to the fact that the
24    victims in this case were women and the concern
25    was that he had sexual aggression issues.   Did
26    he ever do any self-help or any kind of --
27    anything on that?

41

1       **INMATE TATUM:**   Excuse me (indiscernible).
2       **PRESIDING COMMISSIONER FISHER:**   You need
3  the respond to the Panel.
4       **INMATE TATUM:**   Okay.   Okay.   You said --
5  you -- that you read that in some transcripts of
6  last year's hearing?
7       **PRESIDING COMMISSIONER FISHER:**   Wait until
8  the Board asks the question.   You have to
9  directly address.   (indiscernible).
10      **INMATE TATUM:**   Yes (indiscernible).
11      **DEPUTY COMMISSIONER MCBEAN:**   Hold on.   Is
12  it in the transcript of the hearing or was it in
13  the transcript of the decision?
14      **DEPUTY DISTRICT ATTORNEY DELAGARZA:**
15  (indiscernible) in the report I read that --
16  where it indicated what the inmate was told to
17  do and I'm trying to find where it was.
18      **ATTORNEY RUTLEDGE:**   Did the Board note the
19  appeal that was granted after last year's
20  decision regarding that he was -- the therapy
21  issue?
22      **PRESIDING COMMISSIONER FISHER:**   Did they
23  instruct him to get therapy?
24      **ATTORNEY RUTLEDGE:**   Yes.   And it's even
25  noted in reports.   I mean, there's an appellant
26  decision that's granted in part by the Board,
27  where it says that he's already been like

42

1   cleared of having to participate in therapy or,
2   so we would --

3       **PRESIDING COMMISSIONER FISHER:**  I didn't --
4   I don't see that here, but I do know that --

5       **ATTORNEY RUTLEDGE:**  I have it right here,
6   if you would like to review it?

7       **PRESIDING COMMISSIONER FISHER:**  That's
8   fine.  I'll tell you this just so you know that
9   I know that almost out of habit, some of the
10  prior Commissioners would say therapy.  We're
11  all aware of the fact that you don't get therapy
12  unless you're CCCMS or EOP.

13      **INMATE TATUM:**  Okay.

14      **PRESIDING COMMISSIONER FISHER:**  So then
15  instructing you to therapy --

16      **DEPUTY COMMISSIONER MCBEAN:**  I think
17  therapy is available.  I would like to see that
18  when you're done with that.

19      **PRESIDING COMMISSIONER FISHER:**  Yeah.

20      **INMATE TATUM:**  And back to the
21  representative -- she said that she read it
22  somewhere.  I mean, what document is this --

23      **PRESIDING COMMISSIONER FISHER:**  Just calm
24  down.  We're -- we're not going to just leave it
25  on the record unsolved.

26      **INMATE TATUM:**  Okay.

27      **PRESIDING COMMISSIONER FISHER:**  What --

43

1     **DEPUTY COMMISSIONER MCBEAN:**  Well, it is a

2     good question though, even if it hasn't been

3     posed in the past.  And I know you're not

4     interested in talking about the crime today.

5     **INMATE TATUM:**  Right.

6     **DEPUTY COMMISSIONER MCBEAN:**  I do notice

7     that in terms of your self-help, the main thing

8     you've done is AA, and there was the sexual

9     component of the crime.  Have you tried to do

10    anything at all in terms of self-help on any

11    sexual issues?

12    **INMATE TATUM:**  No because I -- what is the

13    conviction?  What is the conviction?

14    **DEPUTY COMMISSIONER MCBEAN:**  Concerning the

15    facts of the crime.

16    **INMATE TATUM:**  Okay.  But what about the

17    conviction?

18    **DEPUTY COMMISSIONER MCBEAN:**  I'm asking the

19    question.

20    **INMATE TATUM:**  (indiscernible) what was the

21    conviction?  I wasn't convicted of no sexual

22    crime.

23    **PRESIDING COMMISSIONER FISHER:**  Mr. Tatum.

24    **INMATE TATUM:**  (indiscernible).

25    **PRESIDING COMMISSIONER FISHER:**  Mr. Tatum

26    (indiscernible) let me give you some advice.

27    You're doing the same thing right now that

44

1   you've been doing in the other hearings that has

2   been getting you into trouble.  If we're trying

3   to go --

4       **INMATE TATUM:**  Get to what -- what are you

5   trying to get to Ms. Commissioner?

6       **PRESIDING COMMISSIONER FISHER:**  All right.

7   Get him out of here, please.

8       **INMATE TATUM:**  Can I have my chronos?  Give

9   me my chronos.

10      **PRESIDING COMMISSIONER FISHER:**  I'll give

11  them to you later.  I'll give it to your

12  attorney at the end of your hearing.  Just for

13  the record, I am having the officer remove Mr.

14  Tatum from the room.  He is not cooperating.

15  He's being combative and he's argumentative, and

16  we don't need to have him here.

17      **ATTORNEY RUTLEDGE:**  Can I lodge an

18  objection -- not to that.  But I would just

19  object to the Deputy Commissioner's previous

20  questions regarding the facts of the crime

21  because we don't --

22      **PRESIDING COMMISSIONER FISHER:**  Let me flip

23  so that we can have it on there.

24      Off the record.

25      **DEPUTY COMMISSIONER MCBEAN:**  Okay.  We're

26  all right.  We're on Side Two.

27      **PRESIDING COMMISSIONER FISHER:**  Okay.  Go

1    ahead.

2        **ATTORNEY RUTLEDGE:** Just to the -- on

3    behalf of Mr. Tatum, I want to lodge an

4    objection specifically -- not to the anger

5    management issues, but specifically to the

6    sexual issues. Being that Mr. Tatum does not

7    have any prior convictions of any sex acts and

8    that if the Board wants to point to a trial

9    transcript where there was some kind of

10   testimony, that would be different. But we

11   would object on that there is no conviction or

12   trial transcript indicating that information.

13       **DEPUTY DISTRICT ATTORNEY DELAGARZA:** There

14   was a preliminary hearing on this case, and I

15   will give you copies of that next hearing.

16       **PRESIDING COMMISSIONER FISHER:** Okay. That

17   would be great. That would be good to have.

18   Thank you. All right. And based on the fact

19   that -- you know, I don't even know how to

20   respond to that. I mean, we don't have trial

21   testimony, but we do have the Probation

22   Officer's Report that does have statements of

23   the victims that say that they were told to

24   remove their clothing.

25       **DEPUTY DISTRICT ATTORNEY DELAGARZA:** Also,

26   there were statements from codefendants who

27   indicated that -- that it was the inmate. I

46

1   believe it was Mr. Fernandez, that was one of

2   their names.  Mr. Fernandez indicated -- and

3   that's in the Probation Officer's Report that it

4   was the inmate who --

5        **ATTORNEY RUTLEDGE:**  I would say --

6        **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  --

7   that's consistent with what the victim said.

8        **ATTORNEY RUTLEDGE:**  I would say that it was

9   a codefendant -- I wouldn't object to bringing

10   up the statement of the victims, but as far as

11   the codefendant, I would say there might be a

12   reliability issue there.

13        **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  There

14   isn't a reliability issue when it's being used

15   to corroborate the victims, and if it was just

16   solely the codefendant, I would say you had a

17   valid argument, but when it's two victims who

18   both indicate it's the inmate and then it's

19   corroborated by a codefendant, I don't think is

20   a reliability issue at all.

21        **PRESIDING COMMISSIONER FISHER:**  All right.

22   And I agree with that.  If it were just the

23   codefendant, it would be a different issue.  But

24   it's the two victims, and so that it does do is

25   corroborate the fact that he was indeed the one.

26   And I think that under the circumstances with

27   the victim's statements -- although I do want --

47

1    I'd love to have the trial transcripts.  I think

2    that would be very helpful for this particular

3    inmate's hearing.  I think that it's not

4    inappropriate to ask him to at least probe those

5    areas while he's incarcerated.  I mean he's done

6    other stuff too.  There's no reason he can't do

7    this also.  He wasn't convicted obviously of

8    kidnap for rape, but --

9        **DEPUTY DISTRICT ATTORNEY DELAGARZA:**

10   (indiscernible).

11       **PRESIDING COMMISSIONER FISHER:**  Okay.  And

12   it does, in fact, go to the elements of the

13   crime and what actually happened.

14       **ATTORNEY RUTLEDGE:**  Right.

15       **PRESIDING COMMISSIONER FISHER:**  So whether

16   he was convicted of it or not, if the victims

17   say he was doing it, then it doesn't hurt him to

18   at least consider that this might be an issue

19   that he should explore.

20       **ATTORNEY RUTLEDGE:**  Okay.

21       **DEPUTY COMMISSIONER MCBEAN:**  And I might

22   address, even the institution had an arrest

23   suffix on him, which is only as a result of

24   concerns about sex crimes or activity, so from a

25   custodial level --

26       **PRESIDING COMMISSIONER FISHER:**  Okay.  Did

27   we cover everything?  Can we go to close?

48

1      **DEPUTY COMMISSIONER MCBEAN:**  I think so.
2      **PRESIDING COMMISSIONER FISHER:**  You had
3   finished, I think.

4      **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  Yeah.
5      **PRESIDING COMMISSIONER FISHER:**  Okay.  All
6   right.  Ms. Delagarza, why don't you go ahead
7   and close.

8      **DEPUTY COMMISSIONER MCBEAN:**  Will you --
9   were you able to find that comment?

10      **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  No.
11   I'm going through right now.  I saw it in one of
12   those --

13      **DEPUTY COMMISSIONER MCBEAN:**  Was it a Board
14   Report where they're telling -- or they were
15   saying what the Panel said or was it in a prior
16   transcript?

17      **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  It was
18   not a transcript, it was a report, you know, so
19   I know it was a prior hearing.  And I'm trying
20   to find -- it was just something where it said
21   something about -- looking into the sexual
22   component of the crime.

23      **PRESIDING COMMISSIONER FISHER:**  Okay.

24      **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  The
25   inmate makes the best argument of why he is not
26   suitable for parole.  Basically, this man still
27   has a tremendous violence potential that is just

49

```
1   below the surface, as was indicated throughout
2   this hearing.  And going through past hearings,
3   it appears to be a common thread throughout this
4   inmate's incarceration.  What's very troubling
5   about this particular inmate is the, not only
6   the violence that was exhibited, but the
7   potential for additional violence, and that I'm
8   talking about the fact that the two women would
9   have been raped were it not for the fact that
10  the police actually stopped them before they
11  could initiate the crime.  And this was not a
12  robbery as the inmate would like this Panel to
13  believe.  If you go through the facts of this
14  particular case, the victims had already been
15  robbed.  After they were robbed, they forced
16  into a van, and at that point, they were told to
17  disrobe.  So it wasn't a situation where they
18  needed to be taken some place for the purposes
19  of robbery.  They were taken some place, they
20  were robbed, and they were forced into a van
21  with, I believe, four other individuals and
22  there was no reason for doing that other than
23  what was actually stated and that was, they were
24  told to disrobe and the inmate said he was going
25  to fuck them.  So with respect to that, we have
26  the fact that these victims were particularly
27  vulnerable.  What's also interesting about this
```

1  inmate, is that he has two battery/assault
2  arrests. Again, the victim in those particular
3  cases was a woman, so we have that whole issue
4  of his. He seems to be targeting women as
5  victims. And going throughout his CDC 115s,
6  even though their not that recent, again, what
7  it shows is that this man has a serious violence
8  potential. He has serious anger management
9  issues, and until those are resolved and until
10 the issues relating to the sexual component in
11 this particular case are resolved favorably for
12 the inmate, he will continue to pose a threat.
13 He will not be able to do that until he admits
14 that and does something with respect to having
15 insight into that aspect of the crime. Thank
16 you.

17 **PRESIDING COMMISSIONER FISHER:** Okay.
18 Thank you. Before you start, Ms. Rutledge, let
19 me put a couple of things on the record. First
20 of all, regarding his appeal. I want to make
21 sure that we respond to what he talked about.
22 And the appeal, it does say that the Board
23 apparently indicated that he -- let's see. They
24 told him to -- someone made the comment that he
25 needed more therapy before he could be found
26 suitable for parole, apparently. And it says,
27 prisoner contends that the Panel lacked

1    sufficient evidence that he needs therapy.
2    Appeal granted.  It says a review of the Mental
3    Health Evaluation finds that there are no
4    recommendations for therapy treatment in the
5    prisoner's case.  Therefore, the wording and
6    therapy will be stricken from Page 508, Line
7    Seven of the decision.  And that's all it says
8    related to that issue.  Also, I have found, and
9    I am continuing to look, that I have found at
10   least one Commissioner that was, Commissioner
11   Lawlend (phonetic), in 2001, who in the decision
12   was talking to him about anger management.  And
13   says it looks like a problem with your anger
14   management or issues with women and she is
15   suggesting that he look into that issue and
16   what's available out there for him.  And that's
17   in the middle of a conversation, but that's just
18   the specific sentence that I found in her
19   decision.  I looked at that, and I'm continuing
20   to look at anything else that might be related
21   to that.  So if you'd like to go ahead and
22   close.
23       **ATTORNEY RUTLEDGE:**  Thank you.  I would
24   just note on the issue of anger management, that
25   there is a recent chrono date, August 5th, where
26   he is currently involved in an anger management
27   program.  It says that with these strategies,

52

1    **INMATE TATUM** is now capable of understanding his
2    anger, controlling his emotions. He is
3    commended for his efforts to become a productive
4    citizen, so it looks like he's -- and that was
5    done by Superintendent Charlie D Walker. So it
6    looks like he is addressing that issue. And I
7    think -- I want to say that when (indiscernible)
8    she said that he would want us to believe, but
9    he hasn't talked about the facts of the crime.
10   I don't think -- we don't really know whether or
11   not he's -- he has said he has accepted the
12   facts as the Board read them, so I don't think
13   he is trying to mislead the Panel on facts of
14   the crime. I'm just going through his
15   suitability factors. He actually prepared a
16   statement, which I'm glad he did now that he's
17   not in the room. But I'll simply read from it
18   on his behalf.
19       **PRESIDING COMMISSIONER FISHER:** Thank you.
20       **ATTORNEY RUTLEDGE:** He has not had any
21   disciplinary write ups in 16 -- 15 or 16 years.
22   He has done a number of things while he's been
23   incarcerated that the Chair fully covered
24   regarding his -- he finished up a voc trade of
25   small engine repair. He's been working in the
26   furniture factory since '02. He's got good
27   chronos for that. Also, for sewing, he's been

53

1    active in the institution musically playing with
2    the institutional band.  So I think he is
3    programming, and he did completely his GED in
4    1991, and he has served 23 years.  I would note,
5    too, that he was cooperative with police at the
6    time of his arrest, which is noted in his file.
7    He has firm parole plans to reside with his
8    parents as indicated in letters provided by his
9    fiancée.  They have looked into him getting
10   additional training.  He does want to go to
11   truck driver school, but it notes in a Board
12   Report that has skills under the assessment of
13   the Board Report dated November 2004, it says
14   Tatum should have successful parole because he
15   has marketable skills and letters of support for
16   residence and employment.  So he does have
17   something to go home to and firm realistic plans
18   regarding employment.  And he also prepared a
19   response to the 3042 notice.  He says that in
20   1982, the DA offered him a plea deal, which all
21   parties agreed to the terms of the plea
22   agreement.  It was him to plead guilty to two
23   counts of kidnap, both to run concurrently, and
24   the idea the sentence was life with parole.  Now
25   having served 23 years, the DA continues to
26   oppose parole primarily on the circumstances
27   surrounding the commitment offense.  That will

1   never change.  He indicates the plea agreement
2   was life without parole not life without -- was
3   life with parole, not life without.  Having
4   exceeded the statutory time prescribed by law
5   for the commitment offense by six years, and it
6   also -- with the records showing that he is
7   remorseful and rehabilitated and having been
8   duly punished for the crime.  So I guess he's
9   responding to the DA's 3042 notice.

10   **DEPUTY COMMISSIONER MCBEAN:**  Let me respond
11   to that on record.  The Board is not bound by
12   any plea agreements that were made by the
13   District Attorney's office.  The Board is
14   charged under the law to determine suitability
15   based on the inmate's factors of suitability
16   versus his factors of unsuitability.  And what
17   he agreed to with the District Attorney's office
18   as far as what his sentence would be, was
19   between the inmate and the District Attorney.
20   If he is going to be found suitable for parole
21   and released from prison, he has to meet the
22   requirement of suitability and satisfy the Board
23   and then the governor that he's indeed
24   rehabilitated and suitable for parole.  Go
25   ahead.

26   **ATTORNEY RUTLEDGE:**  Okay.  What he's been
27   doing -- some other details about his post-

1    conviction programming. He's been a member of
2    AA for 18 years, or at least he provided chronos
3    to the Board going as far as back as '89. That
4    we have a record of, I believe.

5    **DEPUTY COMMISSIONER MCBEAN:**  NA/AA is --
6    actually it looks like it started in '90 and
7    looks like he started doing some videos in '89,
8    so, yeah.

9    **ATTORNEY RUTLEDGE:**  Okay. And it looks
10   like in '88 he made a video on the effects of
11   drugs and alcohol abuse while at DVI where they
12   were reaching out to community children. In
13   '98, he indicates that he completed a parenting
14   class. And '99, I think he covered that he
15   volunteered for the music group. He's been
16   working for four years in the furniture factory.
17   He's also -- he indicates in '97, completed two
18   sessions of life skills therapy with staff
19   psychologist Dr. Bateman and Dr. Terini. He
20   says he completed a three-hour video session,
21   anger management. And just reiterating the
22   psych evaluation, the recent one, assessment of
23   dangerousness if released in the community, his
24   violence potential would be no higher than the
25   average citizen in the community. And Mr.
26   Tatum, in closing, would like to say that he is
27   a first termer. The record reflects his sincere

 1   remorse for the victims of the crime.  He does

 2   today accept the facts of the crime as read by

 3   the Board.  He has in previous reports expressed

 4   and taken full responsibility and accountability

 5   for his actions in the commission of this crime.

 6   And that's documented in several places.  He has

 7   worked really hard to program.  And he has -- he

 8   did talk to the Board how he's -- why he hadn't

 9   had any write ups in the last 16 years.  He says

10   it's a matter of him maturing and understanding

11   what's acceptable behavior and what's not.  And

12   he says he has shown -- she's wanting the Board

13   to recognize that he has tried very hard while

14   he's been in confinement to really turn things

15   around, and that he's really willing to work

16   hard at living a law-abiding life, and he

17   requests a grant of parole today.  Thank you.

18         **PRESIDING COMMISSIONER FISHER:**  Thank you.

19   We will go to recess.

20                        **R E C E S S**

21                         --o0o--

22

23

24

25

26

27

1    **CALIFORNIA BOARD OF PAROLE HEARINGS.**

2    **D E C I S I O N**

3    **DEPUTY COMMISSIONER MCBEAN:**  Back on

4    record.

5    **PRESIDING COMMISSIONER FISHER:**  Thank you.

6    I want to note for the record that everyone who

7    was previously in the room and identified

8    themselves have returned to the room, with the

9    exception of Mr. Tatum.  And as was noted on the

10    record earlier, I asked the officers to remove

11    Mr. Tatum after he became quite combative and

12    argumentative during his hearing.  The Panel has

13    reviewed all of the information received from

14    the public and relied on the following

15    circumstances in concluding that Mr. Tatum is

16    not yet suitable for parole and would pose an

17    unreasonable risk of danger to society or a

18    threat to public safety if released from prison.

19    This is going to be a two-year denial.

20    Certainly the commitment offense was one of the

21    things we considered.  This commitment offense

22    was a very serious crime.  It was a very long

23    time ago and has been said many times before at

24    many different hearings, the offense will never

25    change.  However, in light of other areas that

26    I'm going to be covering, other issues that

27    **WILLIE TATUM C-55580 DECISION PAGE 1 9/15/05**

1  we're U to be discussing, the commitment offense
2  is certainly still very viable reason as part of
3  this denial.  This was a kidnap for robbery of
4  Susan Becker and Peggy Simon.  This was an
5  offense that was carried out in a very callous
6  manner.  Obviously, there were multiple victims,
7  and the victims were abused during this offense
8  because they were robbed, and then they were
9  forced into a van with apparently four men, Mr.
10 Tatum being one of them.  And Mr. Tatum,
11 according to the victims and corroborated by one
12 of his crime partners, told them to take off
13 their clothes because he was going to fuck them.
14 Whether or not a hand was laid on them, that was
15 abusive.  Those women were terrified.  There's
16 no doubt about it.  This was a horrible crime.
17 It was a crime where these young women had
18 absolutely no ability to protect themselves.
19 They were outnumbered, and they were quite
20 clearly going to be sexually abused had not the
21 police already been called and proceeded on
22 their behalf before they were raped.  The
23 prisoner does have a prior criminal history, and
24 he does have unstable social history.  He has --
25 he has a history of law enforcement contact
26 related to domestic violence issues in
27 **WILLIE TATUM C-55580 DECISION PAGE 2 9/15/05**

59

1    particular.   And in the context with law

2    enforcement that were listed under his prior

3    criminal history, there was no disposition or

4    else they were dismissed, but he's indicated to

5    us today that there were fights with the wife,

6    and he indicated to the probation officer in

7    discussing this arrest that he had hit her.

8    Also, notably she stabbed him.  He also has an

9    unstable social history related to the fact that

10   he was between the ages of 13 and 15, by his own

11   account a member of the Crips.  He started

12   smoking marijuana at the age of 14.  He was

13   involved in using other drugs and also in the

14   use of alcohol.  He said that at the time of the

15   crime, or at the time being incarcerated, he

16   didn't believe he was an alcoholic, but looking

17   back, he believe now that he was.  He dropped

18   out of school in the 11th grade.  He also

19   fathered a child with a woman he was not married

20   to.   He's been programming while he's been

21   incarcerated.  He completed his GED in 1991.  He

22   has vocations.  He does seem to have a

23   marketable skill, and he has participated in

24   some self-help over the years.  He's been

25   involved in substance abuse programming since

26   about 1989.  However, he certainly has not

27   **WILLIE TATUM C-55580 DECISION PAGE 3 9/15/05**

1  successfully participated in beneficial self-
2  help as was indicated by his behavior in the
3  hearing today. He's had six 115 disciplinary
4  reports during his incarceration. The last one
5  was in 1989. He's had four 128(a) counseling
6  chronos. The last one, 1990. The psychological
7  evaluation is dated -- let's see here. It's
8  dated 8/12/03. It's authored Dr. Gamard, and it
9  says it's felt that he would pose a less-than-
10 average risk for violence when compared to the
11 Level Two inmate population, and if released to
12 the community, would be estimated to be no
13 higher than the average citizen in the
14 community. After today's hearing, I want to
15 note for the record that I respectfully disagree
16 with Dr. Gamard's evaluation. He does have
17 parole plans. He would live with his mother and
18 her husband, his stepfather. He does have a
19 fiancée who also indicated her support.
20 Although, once again, I want to note for the
21 record he's not divorced from his wife yet, and
22 stated today that he would take of those matters
23 when he's released on parole. The Hearing Panel
24 notes that in response to 3042 notices, the
25 District Attorney of Los Angeles County had a
26 representative at the hearing today who spoke in
27 **WILLIE TATUM C-55580 DECISION PAGE 4 9/15/05**

1   opposition to a finding of suitability at this
2   time.   The Panel finds that the prisoner needs
3   to continue to participate in self-help in order
4   to understand and cope with stress in a
5   nondestructive manner, specifically also, in
6   order to continue to address his anger issue
7   ands his inability to control his temper, as
8   once again was evidenced today at this hearing.
9   In lieu of his history and his continued
10  negative behavior, there's no indication that he
11  would behave differently if paroled.  We want to
12  commend him for the work that he's been doing.
13  He's been disciplinary free since 1989, and
14  that's a long time, and he has been programming.
15  However, currently the positive aspects of
16  behavior do not outweigh the factors of
17  unsuitability.  In a separate decision, the
18  Hearing Panel finds that it's not reasonable to
19  expect that parole would be granted at the
20  hearing during the following two years.
21  Specific reasons for this finding are as
22  follows:  Once again, first of all, the
23  commitment offense.  This was the kidnapping of
24  two women by several men.  There Tatum was
25  aggressive in this crime.  He was identified by
26  both women as well as one of his crime partners
27  **WILLIE TATUM C-55580 DECISION PAGE 5 9/15/05**

62

1    as being the one who told them to take their
2    clothes off, that they were going to get fucked.
3    And that kind of behavior toward women is
4    concerning in light of the combative history
5    that he had with his wife.  Certainly, the fact
6    that the Commissioners today were women did not
7    escape our notice either.  In fact, all of the
8    people at the table with Mr. Tatum today were
9    women, and he was extremely combative and
10   extremely angry.  Almost from the moment that he
11   walked in the door.  He from the time that he
12   walked in and we started to talk to him, he had
13   visible attitude about him that made it clear
14   that he wasn't pleased about the hearing, that
15   he wasn't particularly interested in what
16   anybody in the room had to say.  And that he
17   wasn't real interested in being cooperative.  He
18   did settle down for a while and started
19   answering questions, but he very quickly became
20   angry and inappropriate when questions before
21   asked about his insight into his own behavior.
22   I want to note for the record that it's my
23   feeling about this hearing that Mr. Tatum was
24   given every opportunity to respond to questions
25   in an appropriate manner, and then instead of is
26   simply answering our questions and even possibly
27   **WILLIE TATUM C-55580 DECISION PAGE 6 9/15/05**

61

1    opposition to a finding of suitability at this

2    time.   The Panel finds that the prisoner needs

3    to continue to participate in self-help in order

4    to understand and cope with stress in a

5    nondestructive manner, specifically also, in

6    order to continue to address his anger issue

7    ands his inability to control his temper, as

8    once again was evidenced today at this hearing.

9    In lieu of his history and his continued

10   negative behavior, there's no indication that he

11   would behave differently if paroled.   We want to

12   commend him for the work that he's been doing.

13   He's been disciplinary free since 1989, and

14   that's a long time, and he has been programming.

15   However, currently the positive aspects of

16   behavior do not outweigh the factors of

17   unsuitability.   In a separate decision, the

18   Hearing Panel finds that it's not reasonable to

19   expect that parole would be granted at the

20   hearing during the following two years.

21   Specific reasons for this finding are as

22   follows:   Once again, first of all, the

23   commitment offense.   This was the kidnapping of

24   two women by several men.   There Tatum was

25   aggressive in this crime.   He was identified by

26   both women as well as one of his crime partners

27   **WILLIE TATUM C-55580 DECISION PAGE 5 9/15/05**

1    as being the one who told them to take their
2    clothes off, that they were going to get fucked.
3    And that kind of behavior toward women is
4    concerning in light of the combative history
5    that he had with his wife. Certainly, the fact
6    that the Commissioners today were women did not
7    escape our notice either. In fact, all of the
8    people at the table with Mr. Tatum today were
9    women, and he was extremely combative and
10   extremely angry. Almost from the moment that he
11   walked in the door. He from the time that he
12   walked in and we started to talk to him, he had
13   visible attitude about him that made it clear
14   that he wasn't pleased about the hearing, that
15   he wasn't particularly interested in what
16   anybody in the room had to say. And that he
17   wasn't real interested in being cooperative.  He
18   did settle down for a while and started
19   answering questions, but he very quickly became
20   angry and inappropriate when questions before
21   asked about his insight into his own behavior.
22   I want to note for the record that it's my
23   feeling about this hearing that Mr. Tatum was
24   given every opportunity to respond to questions
25   in an appropriate manner, and then instead of is
26   simply answering our questions and even possibly
27   **WILLIE TATUM C-55580 DECISION PAGE 6 9/15/05**

1    saying, you know, I've already talked about this

2    or I'm troubled by the fact that this question

3    keeps coming up and here is why, instead what he

4    did was, he became very angry and very

5    combative, and I think that it's important that

6    Mr. Tatum really reflect on that because there

7    seems a real history of that in dealing with the

8    Commissioners on the Board of Prison Terms.  And

9    that completes the reading of the decision.  Do

10   you have any comments, Commissioner?

11        **DEPUTY COMMISSIONER MCBEAN:**  No further

12   comments.

13        **PRESIDING COMMISSIONER FISHER:**  Thank you.

14   That completes the hearing.

15                    **--oOo--**

16

17

18

19

20

21

22

23   **PAROLE DENIED TWO YEARS**

24   **THIS DECISION WILL BE FINAL ON:_____**

25   **YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT**

26   **DATE, THE DECISION IS MODIFIED.**

27   **WILLIE TATUM C-55580 DECISION PAGE 7 9/15/05**

# EXHIBIT B

Name _____ _____ Date ___

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES
### PROBATION OFFICERS REPORT

BEST AVAILABLE COPY

REPORT SEQUENCE NO. 1

THE PEOPLE OF THE STATE OF CALIFORNIA,
Plaintiff

vs.

WILLIE EARN TATUM, JR.

Defendant

| DEPT. | ATTY. | JUDGE |
|---|---|---|
| EAST "E" | UHALLEY | MILLER |
| HEARING | C.I.I. NO. | COURT CASE NO. |
| 7-22-82 | A05076239 | A-528706 |
| DPO | AREA OFFICE | |
| G. JOHNSON | PV | |
| ADDRESS (IF IN CUSTODY, EXPECTED ADDRESS WHEN RELEASED) | | PRIOR. NO. |
| 821 GREENBERRY DRIVE | | X - 917299 |
| LA PUENTE, CALIF. | (918-6217) | |

TRUE NAME

SAME

CHARGED WITH THE CRIME(S) OF

209(B) PC (KIDNAPPING FOR PURPOSE OF ROBBERY), CTS. I, II;
211 PC (ROBBERY), CTS. III, IV
220 PC (ASSAULT WITH INTENT TO COMMIT RAPE), CT. V;

CONVICTED OF THE CRIME(S) OF

PRE TRIAL

| RT. (MISA) CT. JUN 7? | DAYS IN JAIL THIS CASE |
|---|---|
| | 62 |

[X] Pre-conviction invest: (131.3 C.C.P.)    [ ] Drug/Diversion invest. (1000.1 (a) P.C.)

COMPANION CASES
STEVEN GARRINGER, JOSEPH JACKSON,
MIKE FERNANDEZ, DONALD WILLIAMS,

DISPOSITIONS
PRE-TRIAL HEARING, DEPARTMENT EAST
"E" 7-22-82, ALL DEFENDANTS

### PERSONAL HISTORY

| AGE | BIRTHDATE | RACE | FORMAL EDUCATION | AGE LEFT SCHOOL |
|---|---|---|---|---|
| 24 | 7-11-58 | BLACK | 11TH GRADE | 17 |

| MARITAL STATUS | HOME INCLUDES | NO. OF DEPENDENTS |
|---|---|---|
| SEPARATED | MOTHER, STEPFATHER, 2 BROTHERS | 0 |

| OCCUPATION | INCOME PER MONTH | WHERE EMPLOYED |
|---|---|---|
| NONE | NONE | UNEMPLOYED |

| HEALTH | CAME TO STATE | CAME TO COUNTY | BRANCH MILITARY SERVICE | KIND OF DISCHARGE |
|---|---|---|---|---|
| FAIR | BORN | BORN | NONE | N/A |

XXXXXXXXXXX

1   CHARGED WITH THE CRIMES OF:    (CONTINUED)

2   245(A) PC (ASSAULT WITH A DEADLY WEAPON), CT. VIII.

3   ENHANCEMENTS:   USE OF FIREARM PER 12022.5 PC AND 1203.06 PC, CTS. I-V;

4                   PRINCIPAL ARMED WITH FIREARM PER 12022(B) PC, CTS. I-V;

5                   USE OF FIREARM PER 12022.5 PC, CT. VIII ONLY.

                    (AS SUPPLIED BY DEFENDANT.)

7   DEFENDANT IS THE ONLY CHILD BORN TO WILLIE AND CORINNA

I certify that this image is a true copy per master certification on this fiche.

Name Martha Duke    Date 12-3-82

I certify that this image is a true copy per master certification on this fiche.

Name Bennie D Hanson    Date 12-3-82

BEST AVAILABLE COPY

1  TATUM IN LOS ANGELES, CALIFORNIA, HOWEVER, RAISED PRIMARILY IN THE

2  LA PUENTE AREA.  HIS PARENTS WERE NEVER MARRIED AND SEPARATED A

3  SHORT TIME FOLLOWING DEFENDANT'S BIRTH.  DEFENDANT'S MOTHER MARRIED

4  DOUGLAS HOLLIS, A MECHANIC, IN 1960.  THEY REMAIN LIVING TOGETHER

5  AT THE ABOVE ADDRESS ON GREENBERRY IN LA PUENTE.  THE FAMILY HAS

6  RESIDED AT THIS PARTICULAR ADDRESS FOR THE PAST 10 YEARS.

7            THE DEFENDANT LAST ATTENDED LA PUENTE HIGH SCHOOL

8  TO THE 11TH GRADE, QUITTING SCHOOL ENTIRELY AT THE AGE OF 17.

9  DEFENDANT FELL BEHIND IN HIS CREDITS AND DECIDED SIMPLY TO QUIT

10  SCHOOL.  HE HAS HAD NO FURTHER SUBSEQUENT FORMAL EDUCATION.

11            DURING HIGH SCHOOL DEFENDANT LIVED FOR APPROXIMATELY

12  NINE MONTHS WITH HIS WIFE, MALIEAU GRAY.  AFTERWARD THEY KEPT

13  SEPARATE RESIDENCES.  HOWEVER, BECAUSE OF PRESSURE FROM THEIR ONLY

14  CHILD, WHO IS PRESENTLY SEVEN YEARS OLD, THEY DECIDED TO BECOME

15  MARRIED ON MAY 31, 1980.  LAST YEAR IN SEPTEMBER, 1981, DEFENDANT'S

16  WIFE STABBED THE DEFENDANT DURING AN ARGUMENT AND HE SUSTAINED

17  SERIOUS INJURIES.  DEFENDANT HAS NO IDEA AS TO HER PRESENT WHEREABOUTS.

18            AS INDICATED ABOVE, DEFENDANT SUSTAINED SERIOUS

19  INJURIES AS THE RESULT OF BEING STABBED BY HIS WIFE AND WAS

20  HOSPITALIZED FOR A COUPLE OF WEEKS.  HE STILL SUFFERS FROM COMPLICATIONS

21  SUSTAINED IN THE STABBING.  HIS WIFE WAS ARRESTED FOR STABBING HIM,

22  BUT CHARGES WERE LATER DISMISSED WHEN IT WAS DETERMINED THAT DEFENDANT

23  HAD HIT HER THE DAY BEFORE IN AN ARGUMENT.

-2-



I certify that this image is a true copy per master certification on this fiche.
Name _____ Date 12-3-82

I certify that this image is a true copy per master certification on this fiche.
Name _____ Date 12-3-82

BEST AVAILABLE COPY

1         DEFENDANT IS NOT A MEMBER OF ANY PARTICULAR ORGANIZATION

2 AND IN HIS SPARE TIME ENJOYS PLAYING MUSIC AND HORSEBACK RIDING.

3         DEFENDANT WAS EXTREMELY VAGUE IN DESCRIBING HIS

4 PREVIOUS EMPLOYMENT HISTORY. HE HAS MOST PRIMARILY BEEN UNEMPLOYED

5 FOR THE LAST YEAR, ONLY DOING TEMPORARY WORK. HE LAST WORKED FOR

6 ANOTHER COMPANY IN APRIL, 1981. IN THE PAST HE HAS WORKED AS A

7 WELDER AND FORKLIFT DRIVER, INDICATING THAT HIS LONGEST PERIOD OF

8 EMPLOYMENT LASTED FOR A PERIOD OF NINE MONTHS.

9         FINANCIAL SITUATION:

10         DEFENDANT REPORTS NO DEBTS OR ASSETS.

11         GANG ACTIVITY:    *CRIPS*

12         BETWEEN THE AGES OF OF 13 AND 15, DEFENDANT

13 ACKNOWLEDGES THAT HE WAS AN ACTIVE MEMBER OF THE CRYPTS GANG IN LOS

14 ANGELES. HIS STREET NAME AT THE TIME WAS "STILL BILL".

15         SUBSTANCE USE:

16         AT THE AGE OF 14, THE DEFENDANT FIRST BEGAN SMOKING

17 MARIJUANA AND CONTINUED TO USE IT UNTIL THE PRESENT OFFENSE. DEFENDANT

18 BEGAN USING PHENCYCLIDINE (PCP) IN 1975 AND ESTIMATES THAT HE HAS

19 USED IT OVER 40 TIMES. HE LAST USED PHENCYCLIDINE (PCP) ON THE DAY

20 OF HIS ARREST FOR THE PRESENT OFFENSE. HE HAS ALSO TRIED COCAINE

21 BUT DENIES EVER EXPERIMENTING WITH ANY OTHER FORM OF DRUGS AND

22 INDICATES THAT HE NEVER USED THE METHOD OF INJECTION FOR DRUG

23 USAGE. DEFENDANT WILL OCCASIONALLY DRINK ALCOHOL BUT DOES NOT

-3-

I certify that this image is a true copy per master certification on this fiche.
Name _Martha Plata_ Date 12-3-82

I certify that this image is a true copy per master certification on this fiche.
Name _Bennett Hansen_ Date 12-3-85

BEST AVAILABLE COPY

1   CONSIDER THIS TO BE A PROBLEM.

2   PRIOR RECORD:

3               SOURCES OF INFORMATION:

4               LASO, CII, DEFENDANT'S STATEMENT.

5               JUVENILE HISTORY:

6                   DEFENDANT VOLUNTEERS THE INFORMATION THAT AS A

7   JUVENILE HE WAS ONLY ARRESTED ON ONE OCCASION. THIS OCCURRED AT

8   THE AGE OF 16 WHEN HE WAS ARRESTED BY THE SHERIFF'S DEPARTMENT

9   FOR ASSAULT WITH INTENT TO COMMIT GREAT BODILY INJURY. HE EXPLAINS

10  THAT HE BECAME INVOLVED IN A FIGHT AND BROKE THE VICTIM'S JAW. HE

11  WAS PLACED ON SIX MONTHS PROBATION AND HIS FATHER HAD TO PAY

12  RESTITUTION AMOUNTING TO $3000.

13              ADULT HISTORY:

14  9-19-80         WEST COVINA PD - 242 PC (BATTERY) - NO DISPOSITION
15              SHOWN.

16      (DEFENDANT BELIEVES THIS INVOLVED A FIGHT WITH HIS WIFE
        WHEN HE HIT HER ONCE. SHE SCREAMED LOUDLY AND THE POLICE
17      WERE CALLED. THEY SUBSEQUENTLY DECIDED NOT TO FILE AND
        TOLD DEFENDANT NOT TO HIT HIS WIFE ANYMORE.)

18  5-1-81          LASO - 496.1 PC (RECEIVING STOLEN PROPERTY) -
19              CITRUS MUNICIPAL COURT CASE #M-204128 - ON 5-6-81,
                PLEADED GUILTY 653(K) PC (POSSESSION OF SWITCHBLADE
20              KNIFE).

21      (DEFENDANT EXPLAINS THAT HIS FATHER HAD GIVEN HIM A KNIFE
        AND THAT HE KEPT IT ON HIS PERSON, USUALLY JUST TO CLEAN HIS
22      FINGER NAILS. HE WAS STOPPED BY THE POLICE FOR NO PARTICULAR
        REASON, AND THEY FOUND THE KNIFE. HE RECALLS DOING SIX DAYS
23      IN COUNTY JAIL AND RECEIVING TIME SERVED.)

-4-

I certify that this image is a true copy per master certification on this fiche.
Name _Martha Vins_ Date 12-3-82

I certify that this image is a true copy per master certification on this fiche.
Name _Lonnie B. Hanson_ Date 12-3-82

BEST AVAILABLE COPY

1  6-13-81        LASO - 242 PC (BATTERY) - NO DISPOSITION SHOWN.

2               (DEFENDANT BELIEVES THIS INVOLVED ANOTHER FIGHT WITH HIS
               WIFE.  THE DISTRICT ATTORNEY WAS TIRED OF HER COMPLAINING
3              AND DECIDED NOT TO FILE ANY CHARGES.)

4  5-21-82        LA VERNE PD - KIDNAPPING FOR PURPOSE OF ROBBERY,
               ROBBERY, GRAND THEFT AUTO, ASSAULT WITH INTENT TO
5              COMMIT RAPE, ASSAULT WITH DEADLY WEAPON.

6               (THIS REFERS TO THE PRESENT OFFENSE.)

7  PRESENT OFFENSE:

8                   DEFENDANT AND CODEFENDANTS STEVEN GARRINGER, JOSEPH

9  JACKSON, MIKE FERNANDEZ, AND DONALD WILLIAMS WERE ARRESTED ON MAY

10  21, 1982, BY LA VERNE POLICE OFFICERS AND BOOKED ON CHARGES OF

11  KIDNAPPING FOR PURPOSE OF ROBBERY, ROBBERY, ASSAULT WITH INTENT

12  TO COMMIT RAPE, GRAND THEFT AUTO, ASSAULT WITH A DEADLY WEAPON.

13  DEFENDANT SUBSEQUENTLY APPEARED IN POMONA SUPERIOR COURT WHEN IN

14  INFORMATION #A-528706 HE WAS FORMALLY CHARGED WITH 209(B) PENAL

15  CODE (KIDNAPPING FOR PURPOSE OF ROBBERY), COUNTS I, II; 211 PENAL

16  CODE (ROBBERY), COUNTS III, IV; 220 PENAL CODE (ASSAULT WITH INTENT

17  TO COMMIT RAPE), COUNT V; AND 245(A) PENAL CODE (ASSAULT WITH A

18  DEADLY WEAPON), COUNT VIII.  AS ENHANCEMENTS, IT WAS ALLEGED THAT

19  DEFENDANT USED A FIREARM PURSUANT TO 12022.5 PENAL CODE AND 1203.06

20  IN COUNTS I THROUGH V, A PRINCIPAL WAS ARMED DURING THE COMMISSION

21  OF THE OFFENSE PURSUANT TO 12022(B) PENAL CODE, COUNTS I THROUGH V;

22  AND USE OF FIREARM PURSUANT TO 12022.5 PENAL CODE IN COUNT VIII

23  ONLY.  IN THE SAME INFORMATION, CODEFENDANTS GARRINGER, JACKSON,

-5-

BEST AVAILABLE COPY

1  AND FERNANDEZ WERE CHARGED WITH COUNTS I THROUGH V. ENHANCEMENT
2  AGAINST JACKSON ALLEGED THAT HE USED A DEADLY WEAPON PURSUANT TO
3  12022(B) PENAL CODE. CODEFENDANT WILLIAMS WAS ADDITIONALLY CHARGED
4  WITH 487(3) PENAL CODE (GRAND THEFT AUTO), COUNT VI, AND 10851
5  VEHICLE CODE (AUTO THEFT), COUNT VII. ALL FIVE DEFENDANTS APPEARED
6  IN DEPARTMENT EAST "E" ON JUNE 23, 1982, AT WHICH TIME THE COURT
7  ORDERED PRE-TRIAL PROBATION REPORTS PURSUANT TO 131.3 CODE OF CIVIL
8  PROCEDURE AND CONTINUED THE MATTER FOR HEARING TO JULY 22, 1982.
9  DEFENDANT WAS REMANDED AND WILL HAVE SPENT A TOTAL OF 62 DAYS IN
10  CUSTODY AT THE TIME OF THIS HEARING.
11        BASED ON DISTRICT ATTORNEY'S FILE, PRELIMINARY
12  TRANSCRIPT, AND PROBATION OFFICER'S INVESTIGATION, DETAILS OF THE
13  OFFENSE APPEAR TO BE BRIEFLY AS FOLLOWS:
14        ON MAY 21, 1982, VICTIM SUSAN BECKER AND HER COUSIN,
15  PEGGY SIMON, WHO WERE RETURNING HOME FROM A RESTAURANT AT APPROXIMATELY
16  2:00 A.M. HAD JUST ARRIVED IN FRONT OF THEIR HOUSE LOCATED ON
17  BIRDIE DRIVE IN LA VERNE WHEN A VAN CUT THEM OFF AND FORCED THEM
18  TO STOP. AT THIS TIME, TATUM AND JACKSON GOT OUT OF THEIR VAN
19  AND APPROACHED THE VICTIMS' CAR. TATUM, HOLDING A LOADED REVOLVER,
20  FORCED HIS WAY INTO THE PASSENGER'S SIDE OF THE CAR. JACKSON
21  THREATENED THE VICTIMS WITH THE KNIFE AND ALSO GOT INTO THE VICTIMS'
22  CAR. THE VICTIMS SCREAMED, WHICH ALERTED BECKER'S BROTHER AND
23  BOYFRIEND. WHEN THEY CAME TO INVESTIGATE, TATUM POINTED THE REVOLVER

-6-

I certify that this image is a true copy per master certification on this fiche.

me _Martha Vine_ Date _12-3-82_

I certify that this image ... copy per master certification on this fiche.

Name _Enrico Hanson_ Date _12 3 82_

BEST AVAILABLE COPY

1   AT THEM AND TOLD THEM TO GET BACK. THEY COMPLIED WITH THIS DEMAND,

2   AT WHICH TIME VICTIMS WERE FORCED TO DRIVE AWAY FROM THE LOCATION.

3   TATUM ORDERED SUSAN BECKER TO FOLLOW THE VAN IN FRONT OF HER. THEY

4   DROVE A SHORT DISTANCE, DURING WHICH TIME TATUM AND JACKSON ROBBED

5   THE VICTIMS OF THEIR JEWELRY. THEY THEN HAD THE VICTIMS STOP THEIR

6   CAR, AND THEY TRANSFERRED THEM INTO THE VAN.

7           INSIDE THE VAN, TATUM ORDERED THE VICTIMS TO REMOVE

8   THEIR CLOTHING. FERNANDEZ ATTEMPTED TO UNBUTTON PEGGY SIMON'S

9   PANTS BUT WAS TOLD TO WAIT UNTIL THEY GOT ON THE FREEWAY. IN THE

10   MEANTIME, POLICE HAD BEEN CONTACTED AND THE VAN IDENTIFIED. THE

11   VAN WAS SPOTTED, AND A CHASE ENSUED. THE CHASE LASTED A SHORT TIME

12   AND ENDED WITH THE VAN CRASHING INTO A TREE. THE FIVE DEFENDANTS

13   THEN ATTEMPTED TO ESCAPE. TATUM AND GARRINGER WERE ARRESTED

14   IMMEDIATELY AT THE SCENE. SEVERAL HOURS LATER, DEFENDANTS WILLIAMS

15   AND JACKSON WERE ARRESTED NEAR THE AREA WHERE THE VAN CRASHED.

16   LATER THAT SAME DAY, THE FIFTH DEFENDANT, FERNANDEZ, WAS ARRESTED

17   AT HOME ON THE BASIS OF A RAMEY WARRANT.

18           THE VICTIMS WERE VISIBLY SHAKEN BUT PHYSICALLY

19   UNHURT. THE JEWELRY WAS FOUND IN POSSESSION OF TATUM AND GARRINGER.

20   THIS PROPERTY WAS RECOVERED. TATUM TOLD THE POLICE WHERE HE HAD

21   THROWN THE GUN, WHICH WAS RECOVERED ALONG WITH THE KNIFE USED BY

22   JACKSON.

          TATUM TALKED FREELY ABOUT THE OFFENSE AND ABOUT HIS

780592G - PROB 5A - PS 2-82

I certify that this image is a true copy per master certification on this fiche.
Name: Martha Parker   Date 12-3-82

I certify that this image is a true copy per master certification on this fiche.
Name: Bonnie D. Hanson   Date 12-3-82

BEST AVAILABLE COPY

1   INVOLVEMENT IN IT.  HE INDICATED THAT JACKSON AND GARRINGER WERE
2   NEIGHBORS OF HIS.  HE ADMITTED THAT HE WAS THE ONE WHO HAD USED
3   THE GUN AND INDICATED THAT DONALD WILLIAMS WAS THE PERSON DRIVING
4   THE VAN.  HE THEN ADMITTED TAKING JEWELRY FROM THE VICTIMS AND
5   USING A GUN.  HE THREATENED THEM.  HE DENIED THAT HE ORDERED THE
6   VICTIMS TO TAKE OFF THEIR CLOTHES.  HE ADMITTED THAT THEY HAD COME
7   TO THE AREA THAT NIGHT TO COMMIT A ROBBERY.  HE INDICATED THAT
8   THEY HAD ALL TALKED ABOUT DOING A ROBBERY, BUT THEY DID NOT PLAN IT.
9           WILLIAMS REFUSED TO TALK TO THE POLICE FOLLOWING
10  HIS ARREST.
11          GARRINGER ALSO REFUSED TO TALK TO THE POLICE.
12          JACKSON INDICATED THAT HE WAS OVER VISITING A FRIEND
13  THAT EVENING, THAT HE HAD ARRIVED IN THE GLENDORA AREA BY
14  HITCHHIKING.  HE WAS "KICKING BACK" IN THE BUSHES WHEN HE WAS
15  ARRESTED.  HE DENIED ANY KNOWLEDGE OF THE OFFENSE.  DURING BOOKING,
16  JACKSON PROVIDED A FALSE NAME AND INDICATED THAT HE WAS 17 YEARS
17  OLD.
18          FERNANDEZ LATER TALKED TO THE POLICE.  HE INDICATED
19  THAT HE WAS SIMPLY RIDING IN THE VAN WHEN TATUM AND JACKSON SUDDENLY
20  JUMPED OUT AND KIDNAPPED THE GIRLS.  HE INDICATED THAT TATUM USED
21  A GUN AND JACKSON A KNIFE.  WHEN THE VICTIMS WERE PLACED IN THE
22  VAN, TATUM INDICATED THAT HE WANTED TO "FUCK THEM".  TATUM TOLD
23  HIM (FERNANDEZ) TO TAKE OFF THEIR CLOTHES.  FERNANDEZ ADMITTED

-8-

I certify that this image is a true copy per master card on this fiche.

Name Martha Olua  Date 12-3-82

I certify that this is the same copy per master certification on this fiche.

Name Ernest Hansen  Date 12-3-82

BEST AVAILABLE COPY

HOLDING ONE OF THE GIRLS AND ALSO ADMITTED THAT HE ATTEMPTED TO
UNDO THE VICTIM'S PANTS BECAUSE HE WAS SCARED OF THE OTHER GUYS
WHO WERE HOLDING THE GUN AND THE KNIFE.

INVESTIGATION LATER DETERMINED THAT THE VAN USED
BY THE DEFENDANTS IN THE CRIME HAD BEEN STOLEN FROM THE WHITTIER
AREA A FEW HOURS BEFORE THE KIDNAP AND ROBBERY OF THE VICTIMS.
WILLIAM BOZUNG, OWNER OF THE VOLKSWAGON VAN, LATER TOLD POLICE HE
HAD PARKED THE VAN IN HIS DRIVEWAY ON MAY 20, 1982, AT APPROXIMATELY
9:30 P.M. HE DID NOT REALIZE IT HAD BEEN STOLEN UNTIL HE RECEIVED
A CALL FROM THE LA VERNE POLICE DEPARTMENT THE FOLLOWING MORNING.

DEFENDANT'S STATEMENT:

DEFENDANT INDICATED THAT HE WOULD RATHER WAIT UNTIL
HE GOT A CHANCE TO DISCUSS THE MATTER WITH HIS ATTORNEY BEFORE HE
GAVE A STATEMENT RELATIVE TO THE PRESENT OFFENSE.

VICTIM:

PROBATION OFFICER HAS BEEN UNABLE TO CONTACT ANY
OF THE THREE VICTIMS. A MESSAGE HAS BEEN LEFT WITH SUSAN BECKER'S
ANSWERING SERVICE TO CONTACT THE PROBATION DEPARTMENT; HOWEVER,
TO DATE, THERE HAS BEEN NO RESPONSE.

ACCORDING TO THE PRELIMINARY TRANSCRIPT, THE OWNER
OF THE VAN TESTIFIED THAT HE HAD OBTAINED ESTIMATES OF DAMAGE TO
HIS CAR WHICH AMOUNTED TO APPROXIMATELY $1200. HE REPORTED THAT
THE STEREO CASSETTE RECORDER HAD BEEN RIPPED OUT OF THE DASHBOARD

-9-

76C692G – PROB. 5A – PS 2-82



BEST AVAILABLE COPY

1   AND THAT THERE WERE SEVERAL ITEMS STILL MISSING.

2   INTERESTED PARTIES:

3           DETECTIVE GANO, LA VERNE POLICE DEPARTMENT (596-1913),

4   INDICATED THAT WHEN THE VAN CRASHED, VICTIM BECKER SUSTAINED A

5   SLIGHT LACERATION TO HER NOSE AND LIP. IT WAS DEFINITELY DETERMINED

6   THAT TATUM WAS THE ONE WHO HAD USED THE GUN AND ISSUED THE ORDERS.

7   JACKSON WAS THE PERSON WHO HAD USED THE KNIFE. FERNANDEZ, AT THE

8   ARREST, SEEMED TO DISPLAY A VERY HOSTILE ATTITUDE AND DURING THE

9   COURT PROCEDURE WOULD STARE AT THE VICTIMS. AS FAR AS HE COULD

10  DETERMINE, NONE OF THE DEFENDANTS WERE UNDER THE INFLUENCE OF DRUGS

11  OR ALCOHOL. VICTIMS HAD NEVER SEEN THE DEFENDANTS BEFORE THEY

12  WERE KIDNAPPED AND ROBBED. HE BELIEVES THAT ALL FIVE DEFENDANTS

13  SHOULD GO TO STATE PRISON.

14  EVALUATION:

15          IT IS INDEED FORTUNATE THAT WITNESSES WERE ABLE TO

16  IDENTIFY THE VAN USED BY THE DEFENDANTS IN THE PRESENT OFFENSE AND

17  AS A RESULT, THEY WERE CAPTURED BEFORE ANY FURTHER HARM COULD COME

18  TO THE FEMALE VICTIMS. AVAILABLE INFORMATION TENDS TO SUGGEST

19  THAT ALL DEFENDANTS WENT TO THE LOCATION WITH THE EXPRESSED PURPOSE

20  OF COMMITTING A ROBBERY. IT IS ALSO POSSIBLE THAT FEMALE VICTIMS

21  WERE CHOSEN WITH THE ADDITIONAL PURPOSE OF RAPE. PROBATION OFFICER

22  WILL CONCEDE THAT THIS PARTICULAR STATEMENT IS MERELY SPECULATION

23  BASED ON OTHER STATEMENTS ATTRIBUTED TO TATUM REGARDING THE REMOVAL

-10-

76C692G — PROB. 5A — PS 2-82

BEST AVAILABLE COPY

OF THE VICTIMS' CLOTHING, AS WELL AS FERNANDEZ'S ATTEMPT TO ACTUALLY
REMOVE ONE OF THE FEMALE VICTIMS PANTS. OF THE FIVE DEFENDANTS,
THIS DEFENDANT APPEARED TO PLAY THE PRIMARY ROLE IN THE COMMISSION
OF THIS OFFENSE AND IS THE PERSON WHO USED THE LOADED GUN TO
THREATEN THE VICTIMS. HE ALSO APPEARED TO BE THE ONE INDIVIDUAL
WHO WAS GIVING MOST OF THE ORDERS, CERTAINLY, THIS PARTICULAR
INCIDENT MUST HAVE BEEN A TERRIFYING EXPERIENCE FOR THE TWO FEMALE
VICTIMS. DEFENDANT'S BEHAVIOR IN THE PRESENT OFFENSE MARKS HIM AS
A VERY DANGEROUS INDIVIDUAL AND ONE WHO SHOULD BE REMOVED FROM THE
COMMUNITY. IF CONVICTED AS CHARGED, HE WOULD NOT BE LEGALLY ELIGIBLE
FOR PROBATION; AND DUE TO THE AGGRAVATED NATURE OF THE CHARGES
THEMSELVES, IT IS BELIEVED THAT HE WOULD NOT CONSTITUTE A SUITABLE
SUBJECT FOR SUCH CONSIDERATION.

SENTENCING CONSIDERATIONS:

IF CONVICTED OF THE CHARGES, DEFENDANT WOULD NOT BE
LEGALLY ELIGIBLE FOR PROBATION.

CIRCUMSTANCES IN AGGRAVATION:

1. THE CRIME INVOLVED GREAT VIOLENCE AND THE
THREAT OF GREAT BODILY HARM.

2. DEFENDANT USED A FIREARM DURING THE COMMISSION
OF THE OFFENSE. IN ADDITION, CODEFENDANT USED A DEADLY WEAPON IN
THE COMMISSION OF THE OFFENSE.

3. THE CRIME INVOLVED MULTIPLE VICTIMS.

-11-

76C692G — PROB. 5A — PS 2-82

BEST AVAILABLE COPY

4.   THE OFFENSE WAS PREMEDITATED.

5.   DEFENDANT HAS ENGAGED IN VIOLENT CONDUCT WHICH INDICATES HE IS A SERIOUS DANGER TO SOCIETY.

CIRCUMSTANCES IN MITIGATION:

NONE.

AS ENHANCEMENTS, IT HAS BEEN ALLEGED THAT DEFENDANT USED A FIREARM PURSUANT TO 12022.5 PENAL CODE AND 1203.06 PENAL CODE. IN ADDITION, A PRINCIPAL IN THE OFFENSE WAS ARMED WITH A FIREARM PURSUANT TO 12022(B) PENAL CODE.

UPON CONVICTION, DEFENDANT SHOULD BE COMMITTED TO STATE PRISON WITH THE HIGH-BASED TERM APPLIED. THIS OFFENSE WOULD NOT APPEAR TO QUALIFY AS A CRIME OF VIOLENCE AS DEFINED WITHIN GOVERNMENT CODE SECTION 13960.

RECOMMENDATION:

IF CONVICTED AS CHARGED, IT IS RECOMMENDED THAT

-12-

76C692G — PROB. 5A — PS 2-82



BEST AVAILABLE COPY

PROBATION BE DENIED.

RESPECTFULLY SUBMITTED,

KENNETH E. KIRKPATRICK
CHIEF PROBATION OFFICER

BY
GREG JOHNSON, DEPUTY
POMONA VALLEY AREA OFFICE
PHONE:   623-6811 EXT. 438

READ AND APPROVED
KENNETH L. FORNEY, SDPO

I HAVE READ AND CONSIDERED
THE FOREGOING REPORT OF THE
PROBATION OFFICER.

(DICTATED 7-15-82)
(TYPED   7-15-82)
GJ:KRS (6)

-13-

JUDGE OF THE SUPERIOR COURT

76C692G — PROB. 5A — PS 2 82

# EXHIBIT C

UPDATED FICHE

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT EAST E                    HON. LOREN MILLER, JR., JUDGE


THE PEOPLE OF THE STATE OF CALIFORNIA, )
                                       )
                            Plaintiff, )
                                       )      No.  A 528706
        vs.                            )
                                       )      STATE PRISON
WILLIE EARN TATUM, JR.,                )
                                       )
                            Defendant. )
───────────────────────────────────────)


POMONA, CALIFORNIA, WEDNESDAY, OCTOBER 27, 1982,

          Upon the above date, the defendant being present

in court and represented by counsel, CHARLES UHALLEY, the

People being represented by HARVEY WM. HARPER, Deputy District

Attorney of Los Angeles County, the following proceedings

were held:

          (Morgan von Saxel, Official Reporter,

          CSR No. 1242.)


     THE COURT:  In the matter of Willie Earn Tatum.

     MR. UHALLEY:  Mr. Tatum is in custody.  We are ready

1  to proceed on that matter.

2  THE COURT:  All right, in this matter it is my

3  understanding that Mr. Tatum has withdrawn his previously

4  entered plea and entered a plea to two counts of 209(b), that

5  is kidnapping for the purpose of robbery.

6  Is that correct?

7  MR. UHALLEY:  Yes, Your Honor.

8  THE COURT:  This is the time and place for sentencing.

9  Is there any legal cause why sentence should not now be

10  imposed?

11  MR. UHALLEY:  No, Your Honor.

12  THE COURT:  Would you like to be heard, Mr. Uhalley?

13  MR. UHALLEY:  Yes, Your Honor, just briefly.

14  I hope that the Court would take into consideration

15  in sentencing Mr. Tatum this morning that throughout these

16  proceedings, from the time of his arrest, which was immediately

17  after the incident, that he was cooperative with the police;

18  that he has admitted his responsibility in the matter; has

19  stood willing to cooperate with the district attorney in the

20  resolution of the case as to the matter, and that while there

21  was a great potential for danger to the victims in this case

22  there was no or little harm inflicted upon them.

23  I would also like the Court to take into

24  consideration that Mr. Tatum has a limited criminal -- prior

25  criminal record.  I would hope that the Court would consi-

26  the possibility of giving the sentences of the t-

27  by law to be concurrent  and that the Court would stay the use

28  allegation.

2

1     THE COURT:  Mr. Harper.

2     MR. HARPER:  Thank you, Your Honor.

3          This was a particularly dangerous case and only

4     because of the cool headedness and quick thinking of the victims'

5     relatives were they able to get a good description and a

6     license number of the vehicle and contact the police who

7     fortunately were close enough by to apprehend Mr. Tatum and

8     his companions in this kidnapping.

9          These two young women are extremely lucky that

10    they were not seriously injured or killed, particularly

11    dangerous offense, Your Honor.

12         Mr. Tatum was given some consideration in his

13    plea with a dismissal of additional counts.  The People would

14    recommend that the sentence be life without parole and that

15    the Court, in fact, impose the two years consecutive for the

16    use of a firearm in the commission of this kidnapping.

17    THE COURT:  Well, it is life —

18    MR. UHALLEY:  It would be life with parole, Your Honor.

19    THE COURT:  — that is punishment.

20         All right, as to Count I let the record reflect

21    I have read and considered the pre-plea report; I have read

22    and considered the supplemental report.

23         Probation is denied.

24         The defendant is committed to the Department of

25    Corrections for the term prescribed by law, which is life

26    imprisonment.

27         With respect to the allegation that the defendant

28    used a firearm in the commission of said offense the Court is

3

1   going to impose an additional two years. I will stay that

2   two years; that stay will become permanent when he has served

3   his sentence on Count I.

4           With respect to Count II, probation is denied.

5           The defendant is committed to the Department of

6   Corrections for the term prescribed by law.

7           That is life imprisonment with the possibility of

8   parole.

9           With respect to the use allegation, in that the

10  Court is going to impose an additional two years. I will stay

11  that until he has served his sentence in Count I.

12          Counts I and II may run concurrently.

13          The defendant is entitled to 161 days credit for

14  the time he has actually been in custody, plus 81 days credit

15  for good time-work time, for a total of 242 days credit toward

16  his sentence.

17          He is remanded to the custody of the Sheriff to

18  be taken forthwith to the Department of Corrections and therein

19  to serve his sentence.

20          MR. UHALLEY:  Thank you, Your Honor.

21          (The proceedings were concluded.)

22

23

24

25

26

27

28

4

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT EAST E                    HON. LOREN MILLER, JR., JUDGE

THE PEOPLE OF THE STATE OF CALIFORNIA, )
                              )
                    Plaintiff, )
                              ) No.  A 528706
          vs.                 )
                              ) REPORTER'S CERTIFICATE
WILLIE EARN TATUM, JR.,       )
                              )
                    Defendant. )

STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF LOS ANGELES)

          I, MORGAN von SAXEL, Official Reporter of the Superior

Court of the State of California, for the County of Los

Angeles, do hereby certify that the foregoing is a true and

correct transcript of the proceedings held at the time of

pronouncing sentence, that the views and recommendations of

the court, if any, are contained therein, pursuant to

Section 1203.01 of the Penal Code.

          Dated this 5th day of November, 1982.

                    /S/   MORGAN von SAXEL   , CSR NO. 1242
                              Official Reporter

5

EXHIBIT D

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**DEPT 100**

| Date: | APRIL 10, 2007 | | | |
|---|---|---|---|---|
| Honorable: | STEVEN R. VAN SICKLEN | Judge | J. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

| | (Parties and Counsel checked if present) | |
|---|---|---|
| BH 004120 In re, WILLIE E. TATUM, JR., Petitioner, On Habeas Corpus | Counsel for Petitioner: Counsel for Respondent: | |

Nature of Proceedings: ORDER RE: WRIT OF HABEAS CORPUS

The Court has read and considered petitioner's Writ of Habeas Corpus filed on June 29, 2006. Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings (" Board") in parole matters, the Court concludes that the record contains "some evidence" to support the Board's finding that petitioner is unsuitable for parole (See Cal. Code Reg. Tit. 15, §2402; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 667 (hereafter *Rosenkrantz*).)

Petitioner was received into custody on November 2, 1982 after being convicted of two counts of kidnapping and robbery with the use of a deadly weapon. Petitioner received a term of seven years to life with a minimum eligible parole date of February 28, 1989. The record reflects that on May 21, 1982, the petitioner and four other men kidnapped two female victims at 2:00 a.m. when petitioner, armed with a loaded revolver, forced his way into the victims' car. A co-defendant threatened the victims with a knife. The victims were forced to drive a short distance and were robbed of their jewelry. The victims were then ordered to enter a van where the remaining co-defendants waited. Petitioner demanded that the women take off their clothes and threatened to sexually assault them. The police, who had been contacted by the victims' friend, then identified the van. Petitioner was arrested after a brief chase.

The record reflects that the Board found petitioner unsuitable for parole after a parole consideration hearing held September 15, 2005. Petitioner was denied parole for two years. The Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision on several factors, including his commitment offense.

The Court finds that there is some evidence to support the Board's finding that multiple victims were attacked in the same incident (Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(A).) The Board also found that the offense was carried out in "a very callous manner" (Reporter's Transcript, 9/15/05, p 58). There is some evidence to support the finding that the offense was carried out in manner that demonstrates an exceptionally callous disregard for human suffering (Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(D).) An "exceptionally callous disregard for human suffering" means the offense in question must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of that offense. (*In re Scott* (2004) 119 Cal. App.4th 871, at 891). Here, the two female victims were outnumbered by five male attackers. The victims were ordered to take off their clothes and threatened with sexual assault.

1

Minutes Entered
04-10-07
County Clerk

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| Date: | APRIL 10, 2007 | | | |
|---|---|---|---|---|
| Honorable: | STEVEN R. VAN SICKLEN | Judge | J. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

BH 004120

In re,

WILLIE E. TATUM, JR.,

Counsel for Petitioner:

Petitioner,

Counsel for Respondent:

On Habeas Corpus

The record reflects that the Board relied on additional factors in denying parole, and there is some evidence to support that decision. There is some evidence that petitioner is unsuitable for parole due to his "history of unstable or tumultuous relationships with others." (Cal. Code Regs., tit. 15, §2402, subd. (c)(3).) The record reflects that the petitioner "has a history of law enforcement contact related to domestic violence issues" (RT, pp.58-59). In determining suitability, the Board may consider "all relevant, reliable information available" (Cal. Code Regs., tit. 15, §2402, subd. (b).) The record shows that petitioner's behavior at the parole suitability hearing was uncooperative and combative (RT, 44). There is some evidence to support the Board's finding that petitioner could benefit from continuing to participate in self-help to "address his anger issues and his inability to control his temper" (Id, p. 61) based on his conduct at the parole suitability hearing. Although the Board commended petitioner for the positive aspects of his behavior, they found that his positive behavior did not outweigh the factors of unsuitability.

Petition for writ of habeas corpus is denied.

The court order is signed and filed this date. The clerk is directed to give notice.

A true copy of said order is sent via U.S. Mail to the following parties :

Willie E. Tatum, Jr.
C-55580
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

Department of Justice
Office of the Attorney General of the State of California
Gregory J. Marcot, Deputy Attorney General
110 West A. Street, Suite 1100
San Diego, CA 92101

2

| Minutes Entered |
|---|
| 04-10-07 |
| County Clerk |

**PROOF OF SERVICE BY MAIL**
**BY PERSON IN STATE CUSTODY**
(C.C.P. §§ 1013(A), 2015,5)

I, *WiLLiE EARN TATum JR.*                      , declare:

I am over 18 years of age and I am party to this action.  I am a
resident of CORRECTIONAL TRAINING FACILITY prison, in the County
of Monterrey, State of California.  My prison address is:

*Willie E Tatum Jr.*, CDCR #: *C-55580*
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: *EAST DORM 90/LOW*
SOLEDAD, CA  93960-0689.

On *January 29, 2008*      , I served the attached:
*(1) writ of Habeas Corpus, with Exhibits A,B,C,D.*

on the parties herein by placing true and correct copies
thereof, enclosed in a sealed envelope (verified by prison
staff), with postage thereon fully paid, in the United States
Mail in a deposit box so provided at the above-named institution
in which I am presently confined.  The envelope was addressed as
follows: *United States District Court for The Northern*
*District of California, 450 Golden Gate Avenue,*
*Box 36060, San Francisco, Ca. 94102*

I declare under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.
Executed on *January 29, 2008*

*Willie E Tatum Jr.*
_____
Declarant

Willie E. Tatum IX. C-535 842

P.O. Box 689 C.T.F. East Dorm 90/row

Soledad, Ca. 93960

REC

JAN 3

RICHARD W. W
CLERK, U.S. DISTRI
NORTHERN DISTRICT OF

Pro se

United States District

Northern District of

450 Golden Gate

San Francisco, C


$ 04.60⁰
MAILED FROM ZIP CODE 9396

EIVED

008

ING
OURT
IFORNIA

Court for The

California

Avenue, BOX 36060

. 94102