1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | JULIE L. GARLAND
Senior Assistant Attorney General
4 | JESSICA N. BLONIEN
Supervising Deputy Attorney General
5 | AMBER N. WIPFLER, State Bar No. 238484
Deputy Attorney General
6 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 | Telephone: (415) 703-5721
Fax: (415) 703-5843
8 | Email: Amber.Wipfler@doj.ca.gov

9 | Attorneys for Respondent Warden B. Curry

10

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14

15 | **WILLIE E. TATUM,**

16 | Petitioner,

17 | v.

18 | **BEN CURRY, Warden,**

19 | Respondent.

20

C 08-0814 TEH

**ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**

Judge: The Honorable Thelton E. Henderson

21    As an answer to the February 5, 2008 petition for writ of habeas corpus filed by state inmate

22 Willie Tatum, Respondent Warden Ben Curry admits, denies, and alleges the following:

23    1.    On October 27, 1982, Tatum was convicted of two counts of kidnaping for the purpose

24 of robbery. (Pet., p. 2.) He is currently serving a sentence of life with the possibility of parole.

25 (*Id.*)

26    2.    On June 29, 2006, Tatum filed a petition for writ of habeas corpus in the Superior

27 Court of Los Angeles County, alleging that the Board of Parole Hearings unlawfully denied him

28 parole at his 2005 parole consideration hearing. (Ex. 1, Super. Ct. Pet.) The superior court

Ans. to OSC; Mem. of P. & A.

*Tatum v. Curry*
C 08-0814 TEH

1   denied the petition, finding that some evidence supported the Board's decision to deny parole.

2   (Ex. 2, Super. Ct. Order at 2-3.)

3       3.   On July 13, 2007, Tatum raised the same claim in the California Court of Appeal.  (Ex.

4   3, Ct. App. Pet.)  The Court of Appeal also denied the petition, finding that the record "amply

5   satisfies the applicable 'some evidence' standard."  (Ex. 4, Ct. App. Order.)

6       4.   On October 10, 2007, Tatum raised the same claim in a petition for review to the

7   California Supreme Court.  (Ex. 5, Sup. Ct. Pet.)  The Supreme Court summarily denied his

8   petition.  (Ex. 6, Sup. Ct. Docket Sheet.)

9       5.   Respondent admits that Tatum exhausted his state court remedies regarding the claim

10  that the Board's 2005 parole denial violated his federal due process rights.  Respondent denies

11  that Tatum has exhausted his claims to the extent that they are interpreted more broadly to

12  encompass any systematic issues beyond this claim.

13      6.   Respondent admits that the petition is timely under 28 U.S.C. § 2244(d)(1), and that

14  the petition is not subject to any other procedural bar.

15      7.   Respondent denies that the state court denials of habeas corpus relief were contrary to,

16  or involved an unreasonable application of, clearly established United States Supreme Court law,

17  or that the denials were based on an unreasonable interpretation of facts in light of the evidence

18  presented.  Tatum therefore fails to make a case for relief under the Anti-Terrorism and Effective

19  Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.

20      8.   Respondent denies that Tatum has a federally protected liberty interest in parole;

21  hence, he fails to assert a basis for federal jurisdiction.  The Supreme Court has not clarified the

22  methodology for determining whether a  state has created a federally protected liberty interest in

23  parole.  *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979); *Bd. of*

24  *Pardons v. Allen*, 482 U.S. 369, 374 (1987) (no federal liberty interest without an expectation of

25  early release); *Sandin v. Connor*, 515 U.S. 472, 484 (1995) (due process limited to freedom from

26  restraint which imposes "atypical and significant hardship on inmates in relation to ordinary

27  incidents of prison life."); *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005) (*Sandin* abrogated

28  *Greenholtz*'s methodology for establishing a liberty interest).  California's parole statute under

Ans. to OSC; Mem. of P. & A.                                              *Tatum v. Curry*
                                                                          C 08-0814 TEH

1   the *Sandin* analysis does not impose an "atypical or significant hardship" because a parole denial

2   does not alter an inmate's sentence, impose a new condition of confinement, or otherwise restrict

3   his liberty while he serves his sentence.  Accordingly, Respondent asserts that Tatum does not

4   have a federal liberty interest in parole.  Respondent acknowledges that in *Sass v. California*

5   *Board of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), the Ninth Circuit held that California's

6   parole state creates a federal liberty interest in parole under *Greenholtz*'s mandatory-language

7   analysis, but preserves the argument.

8       9.   Respondent affirmatively alleges that even if Tatum has a federal liberty interest in

9   parole, he received all due process to which he is entitled under clearly established federal law

10  because he was provided with an opportunity to be heard and a statement of reasons for the

11  Board's decision.  *Greenholtz*, 442 U.S. at 16.

12      10.  Respondent denies that the some-evidence test is clearly established federal law in the

13  parole context.

14      11.  Respondent affirmatively alleges that the record contains some evidence to support the

15  Board's decision that Tatum poses an unreasonable risk of danger to the public.  This evidence

16  includes the egregious nature of Tatum's crime and Tatum's inappropriate and combative

17  behavior during his parole consideration hearing.

18      12.  Respondent denies that the Board failed to consider factors tending to indicate Tatum's

19  parole suitability under the applicable state regulations.  *See* Cal. Code Regs., tit. 15, § 2281.

20  Respondent affirmatively alleges that the Board considered all relevant, reliable information

21  before it in making a parole decision.

22      13.  Respondent denies that the Board is precluded from considering the circumstances of a

23  prisoner's commitment offense when determining parole suitability.

24      14.  Respondent denies that the Board's 2005 parole denial violated Tatum's federal due

25  process rights.

26      15.  Respondent denies that an evidentiary hearing is necessary in this matter, as the claims

27  presented can be resolved on the existing state court record.  *Baja v. Ducharme*, 187 F.3d 1075,

28  1078 (9th Cir. 1999).

Ans. to OSC; Mem. of P. & A.

*Tatum v. Curry*
C 08-0814 TEH

1        16.   Respondent denies that Tatum is entitled to the setting of a parole date or immediate

2   release from confinement.  Any remedy is limited to the process which is due, which is a new

3   Board hearing comporting with due process.  *See Benny v. U.S. Parole Comm'n*, 295 F.3d 977,

4   984-85 (9th Cir. 2002) (a liberty interest in parole is limited by the Board's exercise of discretion,

5   and a due process error does not entitled an inmate to a favorable parole decision).

6        17.   Respondent affirmatively alleges that Tatum fails to state or establish any grounds for

7   habeas corpus relief.

8        18.   Except as expressly admitted in this answer, Respondent denies the allegations of the

9   petition.

10                    **MEMORANDUM OF POINTS AND AUTHORITES**

11                              **INTRODUCTION**

12        Under AEDPA, a federal court may not grant a writ of habeas corpus unless the state court's

13   adjudication was either (1) "contrary to, or involved an unreasonable application of, clearly

14   established Federal law, as determined by the Supreme Court of the United States;" or (2) "based

15   on an unreasonable determination of the facts in light of the evidence presented at the State Court

16   proceeding."  28 U.S.C. § 2254(d)(1-2).  Here, Tatum claims that the Board's 2005 parole denial

17   violated his due process rights.  However, Tatum merely alleges a disagreement with the Board's

18   analysis, and fails to establish that the state court decisions denying his due process claims were

19   contrary to, or an unreasonable application of, clearly established federal law as determined by

20   the United States Supreme Court, or were based on an unreasonable determination of the facts.

21   As such, Tatum does not provide any grounds for federal habeas relief, and the petition must be

22   denied.

23   / / /

24   / / /

25   / / /

26

27

28

Ans. to OSC; Mem. of P. & A.                                                    *Tatum v. Curry*
                                                                                C 08-0814 TEH

1

**ARGUMENT**

2

**THE STATE COURTS' DENIALS OF PETITIONER'S HABEAS CLAIMS WERE NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

3

4

5    When, as here, the California Supreme Court denies a petition for review without comment,

6    the federal court must look to the last reasoned decision as the basis for the state court's

7    judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-804 (1991). Here, the last reasoned decision

8    is the California Court of Appeal's September 26, 2007 judgment that some evidence supported

9    the Board's parole denial. (Ex. 6.) Because nothing in the record indicates that this decision was

10   either contrary to, or an unreasonable application of, clearly established federal law, or based on

11   an unreasonable interpretation of the facts, the provisions of AEDPA mandate that Tatum's claim

12   for habeas relief be denied. 28 U.S.C. §2254(d)(1-2).

13   **A.    Tatum Fails to Demonstrate That the State Court Decisions Were Contrary to Clearly Established Supreme Court Law.**

14

15   The first standard of AEDPA is that a state court habeas decision may not be overturned

16   unless it is contrary to, or involves an unreasonable interpretation of, clearly established federal

17   law. "Clearly established federal law" refers to "the holdings, as opposed to the dicta, of [the

18   United States Supreme] Court's decisions as of the time of the relevant state-court decision."

19   *Williams (Terry) v. Taylor*, 529 U.S. 362, 412 (2000). As such, for purposes of AEDPA, "[w]hat

20   matters are the holdings of the Supreme Court, not the holdings of lower federal courts." *Plumlee*

21   *v. Masto*, 512 F.3d 1204, 1210 (9th Cir. 2008).

22   The only case in which the Supreme Court has addressed the process due in state parole

23   proceedings is *Greenholtz*, 442 U.S. 1. In *Greenholtz*, the Supreme Court held that due process

24   is satisfied when the state provides an inmate with an opportunity to be heard and a statement of

25   the reasons for the parole decision. *Id.* at 16. "The Constitution does not require more." *Id.*[1]

26

_____

27   1. The Supreme Court has cited *Greenholtz* approvingly for the proposition that the "level of process due for inmates being considered for release on parole includes an opportunity t be heard and notice of any adverse decision" and noted that although *Sandin* abrogated *Greenholtz*'s

28

Ans. to OSC; Mem. of P. & A.                                                              *Tatum v. Curry*
                                                                                          C 08-0814 TEH

1   Thus, as a matter of clearly established federal law, a challenge to a parole decision will fail if the

2   inmate has received the protections required under *Greenholtz. See Maynard v. Cartwright*, 486

3   U.S. 356, 361-62 (1998); *Austin*, 545 U.S. 209, (2005).  Because Tatum received both of these

4   protections, and does not argue otherwise, he received all process due under clearly established

5   Supreme Court law.

6        Tatum alleges that in order to comport with federal due process, the Board's decision must

7   be supported by some evidence that he poses a continuing danger to society.  However, there is

8   no clearly established federal law applying this standard to parole decisions.  The Supreme Court

9   has held that under AEDPA, a test announced in one context is not clearly established federal law

10  when applied to another context. *Wright v. Van Patten*, ___ U.S. ___, 128 S. Ct. 743, 746-47

11  (2008); *Schriro v. Landrigan*, ___ U.S. ___, 127 S. Ct. 1933 (2007); *Carey v. Musladin*, ___

12  U.S. ___, 127 S. Ct. 649, 652-54 (2006); *see also Plumlee*, 512 F.3d at 1210; *Stenson v.*

13  *Lambert*, 504 F.3d 873, 881 (9th Cir. 2007); *Foote v. Del Papa*, 492 F.3d 1026, 1029-30 (9th

14  Cir. 2007); *Crater v. Galaza*, 491 F.3d 119, 1126, n. 8 (9th Cir. 2007); *Nguyen v. Garcia*, 477

15  F.3d 716, 718, 727 (9th Cir. 2007).  The Supreme Court developed the some-evidence standard

16  in the context of a prison disciplinary hearing, which is fundamentally different situation than a

17  parole proceeding.[2/] *Superintendent v. Hill*, 472 U.S. 445, 457 (1985).  Because, under AEDPA,

18  the tests and standards developed by the Supreme Court in one context cannot be transferred to

19  distinguishable  factual circumstances, it is not appropriate to apply the some-evidence standard

20  of judicial review to parole decisions.

21

22  _____

    methodology for establishing the liberty interest, *Greenholtz* remained "instructive for [its]
23  discussion of the appropriate level of procedural safeguards." *Austin*, 545 U.S. at 229.

24       2. In *Greenholtz*, 442 U.S. at 14, the Supreme Court specifically distinguished a parole
    consideration hearing from a prison disciplinary hearing, stating that "[p]rocedures designed to elicit
25  specific facts, such as those required in *Morrissey*, *Gagnon*, and *Wolff* are not necessarily
    appropriate" in the parole determination context, as a parole hearing is a unique, non-adversarial
26  proceeding that is by its very nature subjective. *See Morrissey* 408 U.S. 471 (1972) (establishing
    process due in parole revocation hearings); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (establishing
27  process due in probation revocation hearings); *Wolff v. McDonnell*, 418 U.S. 539 (1974)
    (establishing process due in prison disciplinary hearings).
28
    Ans. to OSC; Mem. of P. & A.                                          *Tatum v. Curry*
                                                                          C 08-0814 TEH

1    Thus, the application of the some-evidence standard to parole decisions is improper under

2  AEDPA, and is currently under review by an en banc panel of the Ninth Circuit in *Hayward v.*

3  *Marshall*, 527 F.3d 797 (9th Cir. 2008).  See, *e.g.*, *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir.

4  2007); *Sass*, 461 F.3d at 1128; *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2005) (some evidence

5  standard is "clearly established federal law" in the parole context).  Circuit courts may not import

6  a federal standard used for one set of circumstances into an entirely different set of circumstances

7  under the guise of "clearly established federal law."  Moreover, AEDPA does not permit relief

8  based on circuit caselaw.  *Crater*, 491 F.3d at 1123, 1126 ( U.S. C. § 2254(d)(1) renders decision

9  by lower courts non-dispositive for habeas appeals); *Earp v. Ornoski*, 431 F.3d 1158, 1182 (9th

10 Cir. 2005) ("Circuit court precedent is relevant only to the extent it clarifies what constitutes

11 clearly established law . . . Circuit precedent derived from an extension of a Supreme Court

12 decision is not clearly established federal law as determined by the Supreme Court"); *Duhaime v.*

13 *Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000).  Therefore, the Ninth Circuit's use of the

14 some-evidence standard in the parole context is not clearly established federal law and is not

15 binding on this Court.

16    Similarly, Tatum's additional claim that the Board's reliance on the immutable factor of

17 his commitment offense violates due process finds no support in Supreme Court precedent.

18 Although the Ninth Circuit has suggested that this might amount to an additional due process

19 claim, *Biggs*, 334 F.3d at 917, no clearly established federal law provides that the Board cannot

20 base a parole denial on the factors of an inmate's commitment offense or criminal history.

21 Moreover, the Supreme Court has never held that after a certain period of time, a criminal's past

22 behavior is no longer predicative of his future actions.

23    In sum, the only clearly established federal law setting forth the process due in the parole

24 context is in *Greenholtz*.  Tatum does not allege that he failed to receive these protections.  Thus,

25 he has not shown that the state court decisions denying habeas relief were contrary to clearly

26 established federal law.

27 / / /

28 / / /

Ans. to OSC; Mem. of P. & A.                                              *Tatum v. Curry*
                                                                          C 08-0814 TEH

**B. Tatum Fails to Demonstrate that the State Courts Unreasonably Applied Clearly Established Federal Law**

Habeas relief may be granted based on AEDPA's unreasonable-application clause only where the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the fact of the particular state case. *Williams*, 529 U.S. at 406. The petitioner must do more than merely establish that the state court was wrong or erroneous. *Id.* at 410; *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Respondent recognizes that the Ninth Circuit applies the some-evidence standard as clearly established federal law, but even accepting that premise, Tatum is not entitled to federal habeas relief. The some-evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, it is satisfied if there is "*any* evidence in the record that could support the conclusion made by the [initial decision-maker]." *Hill*, 472 U.S. at 455-57 (emphasis added); *see also Sass*, 461 F.3d at 1129 ("*Hill's* some evidence standard is minimal").

Here, the California Court of Appeal properly found that some evidence, including the egregious nature of Tatum's commitment offense and the "other factors cited by the Board" (Tatum's history of assaultive behavior and his argumentative behavior during the 2005 parole hearing) supported the Board's decision to deny parole. (Ex. 4; Pet. Ex. A, 2005 Parole Consideration Hearing, at 61-62.) The record amply supports the appellate court's decision. (Pet. Ex. A.). Thus, Tatum fails to establish that the state court's unreasonably applied the some-evidence standard, and his claim should be denied.

**C. Tatum Fails to Demonstrate that the State Court Decisions Were Based on an Unreasonable Determination of the Facts.**

The second standard under AEDPA is that a state court habeas decision must be based on a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th Cir. 2005). Tatum fails to do so, as some evidence in the record supports the Board's finding. Furthermore, he does not provide

Ans. to OSC; Mem. of P. & A.

*Tatum v. Curry*
C 08-0814 TEH

1   any evidence to show that the Board's determination of parole suitability violated federal due

2   process. Tatum may disagree with the Board's analysis, but that is not sufficient to prove that the

3   state courts' decisions to deny habeas relief were objectively unreasonable. Thus, because Tatum

4   fails to show that the state courts' factual determinations were unreasonable under AEDPA

5   standards, the petition must be denied.

6                                   **CONCLUSION**

7          Tatum has not demonstrated that the state court decisions denying habeas relief were

8   contrary to, or an unreasonable application of, United State Supreme Court authority, or based on

9   an unreasonable determination of the facts. The petition should be denied accordingly.

10          Dated:  August 28, 2008

11                                          Respectfully submitted,

12                                          EDMUND G. BROWN JR.
                                            Attorney General of the State of California

13                                          DANE R. GILLETTE
                                            Chief Assistant Attorney General

14

15                                          JULIE L. GARLAND
                                            Senior Assistant Attorney General

16                                          JESSICA N. BLONIEN
                                            Supervising Deputy Attorney General

17

18

19

20                                          AMBER N. WIFFLER
                                            Deputy Attorney General
                                            Attorneys for Respondent Warden B. Curry

21

22   20137681.wpd
23   SF2008200213

24

25

26

27

28

Ans. to OSC; Mem. of P. & A.                                          *Tatum v. Curry*
                                                                      C 08-0814 TEH

9

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Tatum v. Curry**

No.:    **C 08-0814 TEH**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **September 2, 2008**, I served the attached

**ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES w/Exhibits 1 through 6**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Willie E. Tatum (C-55580)
Correctional Training Facility
East Dorm 90/Low
P.O. Box 689
Soledad, CA 93960-0686
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **September 2, 2008**, at San Francisco, California.

| M. Luna | M. Luna |
|---------|---------|
| Declarant | Signature |

20138562.wpd

# EXHIBIT 1 (Part 1 of 2)

Name  Willie E. Tatum Jr.

Address P.O.Box 689 C.T.F.

East Dorm 90 Low

Soledad, Ca. 93960

CDC or ID Number  C-55580

**FILED**
Los Angeles Superior Court

JUN 29 2006

John A. Clarke, Executive Officer/Clerk

By _____ , Deputy

Superior Court of California

For the County of Los Angeles
*(Court)*

---

| | |
|---|---|
| Willie E. Tatum Jr. | |
| Petitioner | **PETITION FOR WRIT OF HABEAS CORPUS** |
| vs. | No. _____ |
| Ben Curry, (Warden) | *(To be supplied by the Clerk of the Court)* |
| Respondent | |

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

---

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

---

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

**This petition concerns:**

- [ ] A conviction
- [X] Parole
- [ ] A sentence
- [ ] Credits
- [ ] Jail or prison conditions
- [ ] Prison discipline
- [ ] Other (specify): _____

1. Your name:  Willie E. Tatum Jr.

2. Where are you incarcerated?  C.T.F. Soledad State Prison

3. Why are you in custody?  [X] Criminal Conviction   [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      (1982) Conviction for two(2),counts of Kidnap/Robbery concurrent

      with the use of deadly weapon

   b. Penal or other code sections:  P.C.209(b) P.C.211

   c. Name and location of sentencing or committing court:  County of Los Angeles, Pomona

      Superior Court Department East "E"

   d. Case number:  528706

   e. Date convicted or committed:  10/27/82

   f. Date sentenced:  10/27/82

   g. Length of sentence:  7,years to Life with Possibility of Parole

   h. When do you expect to be released?  Unknown

   i. Were you represented by counsel in the trial court?  [X] Yes.   [ ] No.  If yes, state the attorney's name and address:

      Charles Uhalley, Public Defender,for the County of Los Angeles

      _____

4. What was the LAST plea you entered? *(check one)*

   [ ] Not guilty   [X] Guilty   [ ] Noio Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [ ] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

GROUND (1)

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

SEE ATTACHED

_____

_____

_____

_____

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

SEE ATTACHED

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

_____

_____

_____

_____

7. **Ground 2 or Ground** _____ *(if applicable):*

_____

_____

_____

a.  Supporting facts:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b.  Supporting cases, rules, or other authority:

_____

_____

_____

_____

_____

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☒ No.    If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

_____

b. Result: _____     c. Date of decision: _____

d. Case number or citation of opinion, if known: _____

e. Issues raised: (1) _____

   (2) _____

   (3) _____

f. Were you represented by counsel on appeal?  ☐ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.    If yes, give the following information:

a. Result: _____     b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised: (1) _____

   (2) _____

   (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

_____

_____

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

Petitioner   did   not   appeal   this   decision   through   the

Administrative   remedy   because   the   Board   of   Parole   Hearings   has

eliminated   the   (BPH)   Appeals   unit   and   no   longer   allows   for   the

filing   of   Administrative   appeals   on   (BPH)   denial   of   Parole   for,

Indeterminately   sentenced   Prisoners   such   as   myself

_____

_____

_____

b. Did you seek the highest level of administrative review available?  ☒ Yes.  ☐ No.
   *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  ☐ Yes. If yes, continue with number 13.  ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____ N/A _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

       (b) _____

    (4) Result *(Attach order or explain why unavailable)*: _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

       (b) _____

    (4) Result *(Attach order or explain why unavailable)*: _____

    (5) Date of decision: _____

  c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

          N/A

_____

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No.  If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☒ No.  If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

          N/A

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: June 26, 2006

▶ *Willie Ee Tatum Jr.*
(SIGNATURE OF PETITIONER)

GROUND(1)

"THE BOARD OF PAROLE HEARINGS(hereinafter),THE "BOARD" VIOLATED PETITIONER'S DUE PROCESS RIGHT'S BY HAVING PETITIONER REMOVED FROM PETITIONER'S PAROLE CONSIDERATION HEARING,DEPRIVING PETITIONER OF THE RIGHT'S TO BE HEARD AN ASK QUESTIONS,AND TO SPEAK ON MY OWN BEHALF,VIOLATING THE FIFTH AND FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION"

On September 15th,2005 Willie E. Tatum Jr.(herinafter),Petitioner went before the board for Petitioner's Twelfth(12th),Parole consideration hearing,The hearing was conducted by Commissioner Susan Fisher,Deputy Commissioner D.H.Mcbean,Deputy District Attorney for the County of Los Angeles Alexis Delagraza,Katera Rutledg Attorney for Petitioner,and Petitioner were all present.

"THE FOLLOWING COLLOGUY IS WHAT LED TO PETITIONER'S REMOVAL FROM THE HEARING"

[DISTRICT ATTORNEY DELAGRAZA]:"I think the last hearing or the hearing before last,they suggested that [Petitioner],Do programing with respect to the fact that the victims of [Petitioner's],crime were women and the concern was that he had sexual aggression issues,did he ever do any self-help or any kind of anything on that"]

[Petitioner]:"Excuse me,you said that you read that in some transcripts of last years hearing"]

[Commissioner Fisher]:"Wait until the board ask the questions"]

Pursuant to California Penal Code section §3041.5.,and California Code of Regulations section §2247 Petitioner is afforded the right to ask an answer questions and to speak on my own behalf an as Petitioner exercised these rights to ask questions and to speak on my own behalf regarding the unsupported claim made by District Attorney Delagraza,Petitioner was deprived of these rights to do so by Commissioner Fisher(See Estelle v. McGuire,502 U.S. 62,65,112, S.ct. 475 (1991) States in Pertinent Part:"Violation of State Mandated Procedures Constitute Federal Due Process Violation")

[Deputy Commissioner D.H.Mcbean]:"Hold on is it in the transcripts of the hearing or was it in the transcripts of the decision."

[District Attorney Delagraza]:"In the report I read that where it indicated what the inmate was told to do I'm trying to find where it was."

Following the question ask by Deputy Commissioner D.H.Mcbean to District Attorney Delagraza regarding her stated claim Petitioner's Attorney [Katera Rutledge] started conversation regarding an appeal that was granted to Petitioner concerning a therapy issue an after this matter was discuss by the Commissioners and Petitioner's Attorney the conversation returned back to the stated claim made by District Attorney Delagraza

GROUND FOR RELIEF (3)

GROUND(1)

[Petitioner]:"And back to the representative,[The District Attorney],"She said that she read it somewhere I mean,what document is this"]

[Commissioner Fisher]:"Just clam down we're not going to just leave it on record unsolved"]

Petitioner was denied the right again to ask questions regarding to the statement made by District Attorney Delagraza and deprived of the right to be heard by Commissioner Fisher,(Jancsek v. Oregon Bd. of Parole 833 F.3d 1389,1390(9th Cir.1987) The court held that;"The Prisoner must be provided with the notice of the hearing,"An opportunity to be heard"citing Greenholtz v. Inmates of Nebraska Penal,442 U.S. at 16,(1979);See also Morrissey v. Brewer,408 U.S. 471,481(1972),For Petitioner was provided with notice of the hearing,But denied the opportunity to heard.

[Deputy Commissioner D.H.Mcbean]:"Well,it is a good question though,even if it hasn't been posed in the past,and i know you're not interested in talking about the crime today"]

[Petitioner]:"Right"]

[Deputy Commissioner D.H.Mcbean]:"I do notice that in terms of self-help,the only thing you've done is AA, and there was the sexual component of the crime,have you tried to do anything at all in terms of self-help on any sexual issues"]

[Petitioner]:"No because I,what was the conviction?, What is the conviction?]

[Deputy Commissioner D.H.Mcbean]:"Concerning the facts of the crime"]

[Petitioner]:"Okay,but what about the conviction"]

GROUND(1)

[Deputy Commissioner D.H.Mcbean]:"I'm asking the questions"]

[Petitioner]:"What was the conviction,I wasn't convicted of no sexual crime"]

[Commissioner Fisher]:"Mr.Tatum let me give you some advice you're doing the same thing right now that you've been doing in other hearings that have been getting you into trouble,if we're trying to go"]

[Petitioner]:"Get to what -what are you trying to get to Ms. Comm -issioner"]

[Commissioner Fisher]:"All right get him out of here please"]

[petitioner]:"Can I have my chrono's,give me my chrono's"]

[Commissioner FIsher]:"I'll give them to you later,I'll give it to your Attorney at the end of your hearing,Just for the record,I'm having the officer remove Mr.Tatum from the room,he is not cooperating,He's being combative,and He's argumentative,and we don't need to have him here"]

(SEE EXHIBIT (A) Hearing Transcripts(hereinafter)"HT" starting at Pg.40,Lns.20-27, on through to Pg.44,Lns.1-6)

Furthermore,The unsupported claim made by District Attorney Delagraza did in fact remained on record unsolved,For she did not and could not produce this "Report" as evidence at the hearing to support her stated claim regarding this sexual aggression issue that was fabricated by her,For no such "Report" even exist,For the Board don't issue any reports for any recommendations or suggested programing that the Board may recommend,it would be found in the decision section of a Board transcript after Parole is denied,For an example of this procedure(SEE EXHIBIT (A)"HT" at Decision at Pg.61,Lns.2-5);(SEE ALSO EXHIBIT (A)"HT"at Pg.41,Lns.4-17, Pg.48,Lns.8-22)

## GROUND(1)

Overmore, Petitioner procedural right's were violated by the Board Commissioners and the District Attorney for at the outset of the hearing Petitioner invoke the right not to admit to or discuss the crime Pursuant to California Penal Code section §5011(b),and California Code of Regulations section §2236,(SEE EXHIBIT (A)"HT" at Pg.4,Lns.2-14, Pg.7,Lns.5-11);"Violation of state mandated procedures constitute Federal Due Process Violation",(See Estelle v. Mcguire,502 U.S. 62,65,112 S.ct. 475 (1991)

Moreover circumstances surrounding the crime in which Petitioner wasn't convicted of still remains as elements of the offense an again Petitioner chose not to discuss the crime,but the unsupported stated claim made by District Attorney Delagraza and the continuing pressing questions ask by Deputy Commissioner D.H.Mcbean regarding the unsupported claim are questions concerning the crime(SEE EXHIBIT (A)"HT" at Pg.40,Lns.20-27, Pg.43,Lns.1-22);"Violation of state mandated procedures constitute a Federal Due Process Violation only if the Violation causes a Fundamentally unfair result",;(See Estelle v. Mcguire,502 U.S. 62,65,112 S.ct. 475,116)

The unfair result Petitioner was removed from the hearing and was deprived of the right's to ask an answer questions and to be heard regarding the unsupported claim which are circumstances surrounding the crime for which Petitioner wasn't convicted of and chose not to discuss at the hearing violation of Due Process,For Petitioner was denied Parole because Petitioner refuse not to discuss the offense which is Petitioner's right Pursuant to mandated statute and Regulations,;(SEE EXHIBIT (A)"HT"at Pg.57,Lns.21-27, Pg.58,Lns.1-3)

GROUND(1)

Commissioner Fisher's stated reasons for having Petitioner removed from the hearing is unsupported by the record in pertinent part the three reasons for having Petitioner removed from the hearing was as stated by Commissioner Fisher,[Commissioner Fisher]:"He is not cooperating","He's being combative","And he's argumentative"]

Reason (1),Petitioner was not cooperating,for this reason is unfounded an unsupported in view of the record up to Petitioner being removed from the hearing,Respectfully the hearing went off course when District Attorney Delagraza stated her claim on record and Deputy Commissioner D.H.Mcbean was in full support of this unsupported claim and continued to ask pressing questions regarding this claim,an as Petitioner exercised my right's to question the validity of the stated claim and questions,for i was told by,[Commissioner Fisher]:"To wait until the Board ask the questions"],Violating Petitioner's Right's to ask questions and the right to be heard an as Petitioner continued to exercise my right's to ask questions to be heard and to speak on my own behalf an in doing so Petitioner was viewed by Commissioner Fisher as not being cooperating,"The Prisoner must be provided with notice of the hearing,"an opportunity to be heard",(See Jancsek v. Oregon Bd. of Parole,833 F.2d 1390 (9th Cir.1987);citing Greenholtz,442 U.S. at 16)

For Petitioner was provided with notice of the hearing,But was denied the right  to be heard and to ask questions regarding the unsupported claim stated into the record by the Commissioners and the District Attorney,for Petitioner was just simply questioning the validity of the stated claims and questions an in doing so in the opinion of Commissioner Fisher,Petitioner was not cooperating,for the record is unsupported of this finding

GROUND FOR RELIEF

GROUND(1)

Moreover,Pursuant to California Code of Regulations section §2030 subdv.(d),(1)"Hearing Procedures",states in pertinent part:

"The hearing officer shall ensure throughout the hearing that unnecessary,irrelevant or cumulative oral testimony and statements are excluded"

Cal.Code of Regulations section §2030(d),(2),"Role of the Prosecutor,states in part:

"In making comments,supporting documents in the file should be cited'

Commissioner Fisher was the hearing officer in charge of Petitioner's Parole hearing held on 9/15/05,and for the allowance by Commissioner Fisher of the unsupported claim and questions stated an ask by District Attorney Delagraza and Deputy Commissioner D.H.Mcbean in which these statements and questions were in regards to self-help programing concerning sexual aggression issues were unnecessary,irrelevant and cumulative,For this conduct and behavior are violations of Petitioner's Procedural Due Process right's ,Petitioner conviction in (1982) ,was for kidnap/Robbery,Respectfully there's no need for any self-help programing concerning this matter as mention by the Commissioners as well as the District Attorney,for no such programing even exist,an as Petitioner point out earlier District Atttorney Delagraza claim regarding this made up issue was unsupported by the record and she did not produce any evidence at the hearing to support this fabricated claim,For this kind of behavior and conduct is a violation of procedural Due Process rights(See Estelle v. Mcguire,502 U.S. 62,65,112 S.ct. 475,116 L.Ed.2d 385(1991),;(See also Gee v. Brown (1975),14 Cal.3d. 571,573 [122 Cal. Rptr.231,536 P.2d 1017]

(7)

GROUND(1)

The second reason for having Petitioner removed from the hearing
was also unsupported of the record,The reason stated
by,[Commissioner Fisher]:"He's being combative"],In view of the
record this reason is unfounded for at no point during the
hearing and leading up to Petitioner being removed from the
hearing did Petitioner take on a position of combativeness for
Petitioner's life wasn't in any danger and there was no need or
eagerness on Petitioner's behalf to take on such a position ready
and willingly to physically fight anyone in the Board room for
there were two,(2),Correctional Officers inside the Board room
for security an at no point did it take any physical actions on
the part of the officers are no mechanical restraints to have
Petitioner removed from the hearing,for the record is unsupported
of Commissioner Fisher's claim that Petitioner was combative and
needed to be removed from the hearing (See Exhibit (A)"HT"
starting at Pg.40,Lns.20-27,on through to Pg.44,Lns.1-6),"The
"Some Evidence",standard is satisfied if there is any reliable
evidence in the record that could support the conclusions
reached"See Powell v. Gomez,33 F.3d 39,40 (9th Cir.1994),citing
Superintendent v. Hill,472 U.S. 445,455,456,;Cato v. Rushen,824
F.2d. 703,705 (9th Cir.1987),For there is no evidence in an of
the record showing that Petitioner was combative and needed to be
removed from the hearing violation of Due Process of law

GROUND FOR RELIEF (9)

GROUND(1)

The third reason for having Petitioner removed from the hearing
was unsupported of the record,[Commissioner Fisher]:"He's
argumentative and we don't need to have him here"],The
conversation between Deputy Commissioner D.H.Mcbean and
Petitioner was in regards to the unsupported stated claim made by
District Attorney Delagraza,The continuing pressing questions
regarding this claim ask by Deputy Commissioner D.H.Mcbean is
what led to Petitioner being removed from the hearing and viewed
by Commissioner Fisher as Petitioner being argumentative,For
Petitioner invoke the right not to admit to or discuss the crime
at the outset of the hearing to reiterate circumstances
surrounding the offense in which Petitioner wasn't convicted of
still remain as elements of the crime,The stated unsupported an
unsloved claim made by District Attorney Delagraza and questions
ask by Deputy Commissioner D.H.Mcbean regarding this claim are
questions and statements pertaining to the crime violating Due
Process of law,(SEE California Penal Code section §5011(b),and
Calfornia Code of Regulations section §2236);"Violation of state
mandated procedures constitute a Federal Due Process violation
only if the violation causes a fundamentally unfair result",(See
Estelle v. Mcguire,502 U.S. 62,65,112 S.ct. 475,116),Respectfully
Petitioner's right's were being violated and Petitioner's State
appointed Attorney sat by and did not contest the violations of
the Board Commissioners and the District Attorney behavior and
conduct an at that moment Petitioner exercised the right's to
speak on my own behalf and the right to be heard as my right's
were being violated,But Petitioner was deprived of these right's
to speak and to be heard,See Jancsek v. Oregon Bd.of Parole,833
F.2d at 1390),For there was no evidence in an of the record that
Petitioner was argumentative and needed to be removed from the
hearing(SEE EXHIBIT (A)"HT" at Pg.43,Lns.1-27, Pg.44,Lns.1-6)

GROUND(1)

Moreover in Commissioner Fisher's Decision to deny Parole she admitted that questions were ask to Petitioner about Petitioner's alleged behavior in the commission of the crime,[Commissioner Fisher]:"He did settle down for a while and started answering questions,but he very quickly became angry and inappropriate,when questions before ask about his insight into his own behavior", An in her Decision to deny Parole her view of Petitioner is different from the stated reasons for having Petitioner removed from the hearing for she now views Petitioner as becoming "Angry and Inappropriate"(SEE EXHIBIT (A)"HT" The Decision at Pg.62,Lns.17-21)

Further the stated words of Commissioner Fisher,in Pertinent part:[Commissioner Fisher]:"When questions before ask about Petitioner's own insight into his own behavior",For this hearing held on 9/15/05 was Petitioner's Twelfth(12th) hearing and from my initial hearing held back in February(1987) up and til my eighth(8th) hearing held back in June(1998),Petitioner discussed the crime in my first eight hearings an in my last four(4) hearing I've chosen not to discuss the crime which is my right by mandated law an in this hearing held on 9/15/05 I invoke my right not to discuss the crime an in her own expressed word's,[Commissioner Fisher]:"When questions before ask about Petitioner's insight into Petitioner's own behavior regarding the crime",For she is speaking of prior Board hearings when Petitioner spoke about the crime,for this is an admission by Commissioner Fisher of violating Petitioner's Procedural right's an abuse of discretion(See Gee v. Brown,14 Cal.3d 571,573,[122 Cal.Rptr.231,536 P.2d 1017](See California Penal Code section §5011(b),and California Code of Regulations section §2236)

GROUND(1)

The Procedures in which Petitioner's Parole hearing was being held under for the Commissioners along with the District Attorney conduct was that of deprivation an abuse of discretion,an arbitrariness violating the Fifth and Fourteenth Amendment of the U.S. Constitution,"The presence of a large measure of discretion in a Parole system does not alter the fundamental Due Process limitation against capricious decisionmaking a Legislative grant of discretion dose not amount to a license for arbitrary behavior",(See Gee v. Brown (1975) 14 Cal.3d 571,573,[122 Cal.Rptr.231,536 P.2d 1017)


The Fourteenth Amendment prohibit State actions that deprives a person of life,liberty,or property without Due Process of law,for the procedures attendant to at Petitioner's Parole hearing held on 9/15/05 were not Constitutionally sufficient,(See Kentucky Dep't of Corrections v. Thompson,490 U.S. 454,459-60,109 S.ct.1904,104 (1989);(See also McQuillion v. Duncan (McQuillion 1),306 F.3d 895,900 (9th Cir.2002)

GROUND (2)

6. GROUNDS FOR RELIEF

Ground 2. State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

SEE ATTACHED

_____

_____

_____

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where).* *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

SEE ATTACHED

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

_____

_____

_____

_____

GROUND(2)

"THE BOARD OF PAROLE HEARINGS (hereinafter), THE "BOARD CONTINUE TO ILLEGALLY USE PENAL CODE SECTION §3041 (b) [THE EXCEPTION] TO FIND PETITIONER UNSUITABLE FOR PAROLE RELYING ON UNCHANGING FACTORS,THE DECISION WAS ARBITRARY AND CAPRICIOUS VIOLATION OF STATE AND FEDERAL DUE PROCESS RIGHTS,THERE IS NOT A MODICUM OF EVIDENCE THAT PETITIONER IS A CURRENT, THREAT, OR DANGER TO SOCIETY OR UNSUITABLE FOR PAROLE"

On September 15th,2005,Petitioner Willie E. Tatum Jr.(hereinafter) "Petitioner" went before the Board for Petitioner's Twelfth (12th) Parole suitability consideration hearing,Petitioner minimum eligible Parole date was February 28th,(1987)

The consequent result of this Board hearing was an erroneous and unlawful finding of unsuitability an a release date was not granted,Petitioner was given a two (2),year denial and Petitioner did not appeal this decision through the Administrative remedy because the Board of Parole Hearings has eliminated the (BPH) Appeals unit and no longer allows for the filing of Administrative appeals on (BPH) denials of Parole for Indeterminately sentenced Prisoners such as myself.

### "FACTS"

Petitioner is in custody Pursuant to a (1982) Los Angeles County conviction for two (2),counts of Kidnap/Robbery concurrent with the use of a fire-arm,Petitioner was sentenced to State Prison for the term of Seven (7)years to life,which is life with the possibility of Parole,(SEE EXHIBIT (A) 2005 Hearing Transcripts (hereinafter)"HT"at Pg.1,Lns.2-17/Pg.8,Lns.11-27/Pg.9,Lns.1-8)

GROUND(2)

Presiding Commissioner of the hearing was Susan Fisher, Deputy Commissioner D.H.Mcbean, Deputy District Attorney for the County of Los Angeles Alexies Delagraza, Katera Rutledge Attorney for Petitioner and Petitioner were all present.

Petitioner was denied Parole for the Twelfth (12th) time and the decision to deny Parole and the express reasons stated by Commissoner Fisher was as stated:[Commissioner Fisher]:Reason (1),"The Panel has reviewed all information received from the Public and relied on the following circumstances that Mr.Tatum is not yet suitable for Parole and would pose an unreasonable risk of danger to society or a threat to the Public if release from Prison"

Reason (2)[Commissioner Fisher]:"However in light of other areas that I'm going to be covering, other issues,"That we're U to be discussing the commitment offense is certainly still very viable reason as part of this denial"

Reason (3)[Commissioner Fisher]:"This was an offense that was carried out in a very callous manner, obviously there were multiple victims and the victims were abused during this offense"

Reason (4)[Commissioner Fisher]:"The Prisoner dose have a prior criminal history,and he dose have an unstable social history"

Reason (5)[Commissioner Fisher]:"However he certainly has not successfully participated in beneficial self-help programing"

(SEE EXHIBIT (A) "HT" DECISION Starting at Pg.57, on through to Pg.63)

GROUND(2)

The first reason stated for denial of Parole was that Petitioner,"Poses an unreasonable Risk,Danger,and Threat to the Public if release from Prison." For this finding is without any supportive evidence in an of the record that Petitioner is a current threat,danger,and risk to society.

If the Board's decision is supported by "Some Evidence," The requirements of Due Process are satisfied,Biggs,334 F.3d at 915;Jancsek,833 F.2d 1389(adopting the "Some Evidence" standard by the U.S. Supreme Court in Superintendent v. Hill,472 U.S. 445,456,105 S.ct. 2768,86 L.Ed.2d 356(1985)

For there was no evidence in the record to support the Board's decision that Petitioner poses a current risk,danger,and threat to the Public if release from Prison for this finding was contrary to the evidence that was presented and read into the record by Deputy Commisssioner D.H.Mcbean in regards to Petitioner's current "Assessment of Dangerousness" Evaluation Report prepared by C.T.F. Staff Psychologist Dr.William Gamard [Deputy Commissioner D.H.Mcbean]:"It goes through the crime here quite a long time It does indicate that you [Petitioner] are terribly remorseful for committing the crime In terms of an Assessment of Dangerousnes, states,"That if release to the Community violence potential is estimated to be no higher than the average citizen in the Community" The evidence relied on by the Board must bear some indicia of reliability and be supported by evidence in the record to support the conclusion reached there is no evidence within the record to support the decision that Petitioner is a current threat,risk,and danger to the Public(SEE Powell v. Gomez,33 F.3d 39,40 (9th Cir.1994) (SEE ALSO EXHIBIT (A)"HT" at Pg.34,Lns.17-27, Pg.35,Lns.1-14)

GROUND(2)

Further California Penal Code section §3041(b),and California Code of Regulations title 15. section § 2402(a),and 2281(a) demands that the Board set a release date unless Petitioner currently presents a risk of danger to the Public, For the requirements of Due Process were not met because the evidence relied upon by Commissioner Fisher and the decision that Petitioner still remains a danger and threat to society bears no indicia of reliability;SEE Jancsek,833, F.2d at 1390;ALSO Perveler v. Estelle,974 F.2d 1132,1134(9th Cir.1992) "Violation of State mandated procedures constitute a Federal Due Process violation only if the violation causes a fundamentally unfair result";SEE Estelle v. Mcguire,502 U.S. 62,65 112 S.ct.475,116 L.Ed.2d 385 (1991)

The unfair result Petitioner was denied Parole on evidence that didn't bear any indicia of reliability showing are proving that Petitioner is a current threat or danger to society violating the Fifth and Fourteenth Amendment of the U.S. Constitution;SEE Superintendent v. Hill,472 U.S. 445,455-56,105 S.ct.2768, 86 L.Ed.2d 356 (1985)

The second reason stated for denial of Parole was as stated:"We're U [Petitioner] be discussing the commitment offense is certainly still very viable reason as part of this denial"

GROUND(2)

For at the outset of the hearing Commissioner Fisher stated into the record;[Commissioner Fisher]:"I do want to remind that you're not required to admit or discuss the offense,but the Panel accepts the finding of the court to be true an also at the outset of the hearing Petitioner invoke the right not to admit to or discuss the offense(SEE EXHIBIT (A)"HT" at Pg.4,Lns.10-14, Pg.7,Lns.5-11)

Pursuant to California Penal Code section §5011)b),and California Code of Regulations title 15. section §2236 states in Pertinent Part:"A life Prisoner is afforded the right not to admit to or discuss the offense an in diong so it shall not be held against the Prisoner "Violation of State mandated procedures constitute a Federal Due process violation only of the violation causes a fundamentally unfair result;SEE Estelle v.Mcguire,502 U.S.62,65,112 S.ct.475,116 L.Ed.2d 385 (1991)

The unfair result the second reason stated by Commissioner Fisher to deny Parole was the refusal by Petitioner to not admit to or discuss the offense and by doing so it was indeed held against Petitioner as one of the reasons for denial of Parole violation of Due Process(SEE EXHIBIT (A)"HT" at Decision Pg.57,Lns.21-26, Pg.58,Lns.1-3)

The third stated reason for denial of Parole was as stated,"This offense was carried out in a very callous manner, there were multiple victims, the victims were abused during the offense"

GROUND(2)

At the outset of the hearing,Commissioner Fisher stated into the record,[Commissioner Fisher]:"I want to remind you that you're not required to admit or discuss the offense,But the panel accepts the finding of the court to be true"] (SEE EXHIBIT (A)"HT"at Pg.4,Lns.10-14)

The facts and circumstances surrounding the offense was read from the Probation Officer's Report for there wasn't a trial Petitioner plead guilty to the offense from a plea agreement and Commissioner Fisher read from this Probation Report,for "No"where within the report did the Probation officer express or stated that the victims of this offense were abused during the commission of this crime,for the recharacterization of the facts of the offense is an abuse of discretion on behalf of Commissioner Fisher,for the Probation Officer's Report is contrary to Commissioner Fisher's version of the facts of the crime,the Probation Officer stated,[Probation Officer]:"The victims were visibly shaken,But physically unhurt"],Petitioner admits that the crime was a serious act against the victims and society and the conviction was just but in the commission of the offense the victims did not suffer nor were they hurt or abused in the commission of the offense as Commission Fisher stated in her decision to deny Parole,(SEE EXHIBIT (B) Page.7,Lns.18-22 of the (1982) Probation Officer's Report),;"The large measure of discretion in a Parole system dose not alter the fundamental Due Process limitation against capricious decision making, a Legislative grant of discretion dose not amount to a license for arbitrary behavior";(See Gee v. Brown (1975) 14 Cal.3d 571,573,[122 Cal.Reptr. 231,536])

GROUND (2)

Furthermore the facts and circumstances surrounding the offense will forever remain as they were in (2003) The United States District Court for the Eastern District of California (Petitioner) Mike Yellen v. Diane Butler case no.# S-01-2398 MCE GGH P, The court held; "That the fact that continuous reliance on the unchanging circumstances transforms an offense for which California law provides eligibility for Parole into a de facto life imprisonment without the possibility of Parole. The court went on to further express that "What is it about the circumstances of Yellen crime which will ever change? The answer is nothing Petitioner Yellen has no hope for ever obtaining Parole Yellen liberty interest should not be determined by such an arbitrary, remote possibility"

Petitioner Yellen in (1983) was convicted of two (2) counts of Kidnap/Robbery just as Petitioner in the instant case before the court was also convicted of the same crime in (1982), For Petitioner continues to experience denial of Parole for the crime and circumstances surrounding the offense Petitioner has gone before the Board Twelve (12) times an in all Twelve Board hearings the Twelfth hearing at issue the primary reason for denial of Parole has been and continue to be the commitment offense, and circumstances surrounding the crime unchanging factors and circumstances "A continued reliance on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitation goals espoused by the Prison system and could result in a Due Process violation" 2003 9th Cir.) Biggs, supra, 334 F.3d at 917)

GROUND(2)

The fourth stated reason for denial of Parole was as stated,"The Prisoner dose have a prior criminal history an a unstable social history"

Petitioner's criminal history is minimal in (1974) Petitioner was sixteen (16) years of age Petitioner was involved in a mutual fight in which the guy that i was fighting with received a broken jaw Petitioner was placed on six (6) months probation and my Father paid for medical bills and restitution Petitioner successfully completed probation and was arrest free for seven (7) years

Seven (7) years later in (1980-81) as an adult Petitioner was arrested for battery involving domestic disputes with my wife an in both cases they were Prosecutor's rejects an in (1981) Petitioner was arrested for receiving stolen property for i had on my person when stop by the Police a switchblade knife for this is the complete minimal criminal history of Petitioner,social history of Petitioner Petitioner worked as a welder and forklift driver in society (SEE EXHIBIT (A)"HT"at Pg.10,Lns.5-27, Pg.11,Lns.1-27, Pg.12,Lns.1-6)

The Board's continued use of charge crimes that did not result in convictions but are stated an express in the decision to deny Parole violates Cal.Penal Code section §3041(b),which allows denial of Parole for past or current convicted offenses and Petitioner's minimal criminal history do not fall within the exception to Cal.Penal Code section §3041(b) for the continual denial of Parole and charged crimes that did not result in convictions is a violation of Due Process an abuse of discretion

Case 3:08-cv-00814-TEH   Document 4-2   Filed 09/02/2008   Page 28 of 53

GROUND(2)

The fifth and final stated reason for denial of Parole was as stated,"However,he certainly has not successfully participated in beneficial self-help programing"

For this stated reason for denial of Parole is unsupported by the record the documented evidence and the discussion during the hearing regarding Petitioner's self-help and therapy programing during Petitioner's confinement is contrary to Commissioner Fisher's conclusion that Petitioner has not successfully participated in beneficial self-help programing (SEE EXHIBIT (A) "HT" STARTING AT Pg.26,Lns.15-27, on through to Pg.29,Lns.1-5 ; Pg.51,Lns.23-27, Pg.52,Lns.1-5,;Pg.54,Lns.26-27 on through to Pg.56,Lns.1-19)

The Board's use of this reason for denial of Parole is an abuse of discretion an a direct violation of Due Process Cal.Code of Regulations title 15.section §2281(b),and 2402(b),and Cal. Penal Code section §3041(b),and Cal.Penal Code section §3042 subd.(f),(3) states in pertinent part:"All relevant information available to the Panel shall be considered in determinig suitability for Parole";"Violation of State mandated procedures constitute a Federal Due Process violation only if the violation causes a fundamentally unfair result;SEE Estelle v.Mcguire,502 U.S. 62,65,112 S.ct.475,116 L.Ed.2d 385 (1991)

The unfair result Petitioner was denied Parole for this reason and the record of the hearing is devoid of evidence showing that Petitioner has not successfully participated in beneficial self-help programing

GROUND(2)

Moreover the (9th Cir.2003) IN <u>Biggs</u> addressed the Board's
illegal usage of needed therapy and other illegal reasons to
justify a highly illegal denial of Parole the court concluded:
"The record in this case and the transcripts of <u>Bigg's</u> hearing
before the Board clearly show that many of the conclusions and
factors relied on by the Board were devoid of evidentiary basis";
(Biggs,supra,334 F.3d.at Pg.915);An in Petitioner's hearing as
well the transcripts of the 2005 hearing and the conclusions and
factors relied on by the Board to deny Parole were also devoid
of evidentiary basis

GROUND(2)

In Mcquillion v. Duncan,306 F.3d 895(9th Cir.2002) an again in Biggs v. Terhune,334 F.3d 910(9thCir.2003),This court fully analyzed the California law governing Parole for life Prisoners, Relying on the United States Supreme court precedent in Greenholtz v. Inmates of Nebraska,442 U.S. 1 (1979),and Board of Pardons v. Allen,482 U.S. 369 (1987)

The (9th Cir.2002) an in (2003) in Mcquillion and Biggs found that California life Prisoners have a liberty interest in Parole that is protected by the Federal Due Process of law

The court in Biggs,supra, addressed the Board's continued illegal usage of the crime and/or prior history to justify a denial of Parole the court held:

> "a continued reliance on an unchanging factor, the
> circumstances of the offense and conduct prior to
> imprisonment, runs contrary to the rehabilitative
> goals espoused by the Prison system and could
> result in a due process violation"(Biggs,supra,334
> F.3d at 917)

Petitioner has now had Twelve (12) ,Board hearings and the twelfth (12th),hearing was held on September 15th,2005,Petitioner submits that the recent denial of Parole rest solely on the commitment offense and therefore violates both State and Federal Due Process of law

GROUND FOR RELIEF    (12)

GROUND(2)

Petitioner unlike Petitioner <u>Biggs</u> who was convicted of first degree murder and challenged the denial of Parole following his first Parole hearing, Petitioner in the instant case is challenging the denial of my Twelfth (12th), Parole hearing which resulted in denial of Parole for the Twelfth(12th),time the Board relying on the commitment offense and prior conduct to deny Parole violation by the Board of continued usage of unchanging factors and circumstances surrounding the crime to deny Parole<u>(SEE Biggs,(9th Cir.2003);Biggs,supra,334 F.3d at 917)</u>

The United States District court for the Eastern District of California in (2003)Petitioner <u>Mike Yellen v. Diane Butler case no.# S-01-2398 MCE GGH P,</u>an in (2005)Petitioner <u>Khalifah E.D.Saif'ullah v. Tom Carey case no.# CIV SO22 664 MCEDADP</u> Both Petitioners were convicted of Kidnap/Robbery just as Petitioner is in the case before the court,the District court adopted and cited the (9th Cir.) court in <u>Biggs</u> when held:

> "The Board's sole supported reliance on the gravity
> of the offense and conduct prior to imprisonment to
> justify denial of Parole can be initially justified
> as fulfilling the requirements set forth by State
> law,over time however should <u>Biggs</u> continue to
> demonstrate exemplary behavior and evidence of
> rehabilitation,denying him a Parole date simply
> because of the nature of his offense and prior
> conduct would raise serious questions involving his
> liberty intrest in Parole"(id)

GROUND(2)

Petitioner's initial Parole Hearing was held on february (28th,1987), at which time Parole was denied justifying and fulfilling the requirements set forth by State law as the (9th Cir.),court in BIGGS have express that,"Parole can be initially denied justifying and fulfilling the requirements set forth by State law" The initial justification to deny Parole back in (1987) continues to be repeated by the Board to deny Parole to Petitioner an in Petitioner's case Twelve (12), times over the Board's continuing reliance on the offense and prior conduct to deny Parole violates Petitioner's Due Process and liberty interest in Parole(SEE Biggs,supra,334 F.3d at Pg. 16)

For the past Eighteen (18), years Petitioner has been discipinary free of any (CDC) 115 write ups, thus demonstrating behavior an evidence of rehabilitation as the (9th Cir.),court in Biggs spoke of, for the Board continues to ignore this evidence thats before the Board showing Petitioner's exemplary behavior an evidence of rehabilitation and programing achievements gained over the years during Petitioner's confinement evidence showing that Petitioner is rehabilitated an is no current,danger or threat to society nevertheless the Board ignores this evidence and continue to rely on the commitment offense and prior conduct to imprisonment to justify continual denial of Parole

Just as in Biggs the record and the transcripts of Petitioner's September 15th,2005 Parole hearing and the conclusions and factors relied on by the Board to continue to deny Parole were deviod of evidentiary basis,(SEE Biggs,supra,334 F.3d at Pg.915)(SEE ALSO Jancsek,833 F.2d 1389,adopting the "Some Evidence standard the Supreme court in Superintendent v. Hill,472 U.S. 445,456,105 S.ct.2768,86 L.Ed.2d 356(1985)

GROUND(2)

Further there is no evidence that Petitioner's crime was
particularly egregious for the continual denial of
Parole,Petitioner's understanding and perpective of the crime is
compelled by the Board's own proportionality matrixs,the matrixs
scale and ratings of the more common and routine variations of
Kidnap/Robbery appear to be codifications of when a crime of this
nature can be more egregious than average,Petitioner submits that
my crime falls squarely in the matrixs [Category] of (1),(a),of
the California Code of Regulations "CCR" title 15. section §2283
(C),for Kidnap/Robbery time served (8,10,12,)years,Petitioner has
now served Twenty Four (24,yrs.) of confinement thus far and with
post-conviction credits applied Four(4),months for each year
served,Petitioner has now served (384),months=Thirty(32),years of
confinement and for the most egregious case of Kidnap/Robbery
time served is (13,15,17,),years when the victim injurie's
required extensive treatment and the victim was seriously
disabled,and for these are not the circumstatnces surrounding
Petitioner's crime and Petitioner has exceeded in time served the
entire listed matrixs for Kidnap/Robbery,and second degree
Murder matrixs time served(19,20,21,),years for Petitioner is
currently serving First degree Murder time and for no one was
Killed or hurt in the commission of Petitioner's offense
(SEE EXHIBIT (C) California Code of Regulations "CCR" title 15.
section §2283 (C), matrixs for Kidnap/Robbery)

GROUND(2)

The Board's numerous an unlawful conclusions to continue to deny
Parole is not supported by any evidence within the record of
Petitioner's September 15th,2005 Parole hearing,and that violates
the process due to Petitioner under both State and Federal
Constitutions of the United States Fifth and Fourteenth
Amendment,The Board's decision cannot be shielded by the "some
evidence" standard the only appropriate standard is independent
review.

## CONCLUSION

The Board's decision was arbitrary and capricious and Petitioner
did not receive a fair an impartial hearing nor will i ever.
Petitioner prays that the court order Petitioner discharged
and/or released from confinement,or at the very least direct
the Board to grant a Parole date to Petitioner.

## PRAYER FOR REILEF

1.Issue an order to show cause

2.Appoint Counsel

3.Conduct an evidentiary hearing

4.Order Petitioner taken back before the Board for a finding of
suitability within thirty(30) days,or order Petitioner released
forthwith

5.Any other relief that the court deems fair,just an appropriate

Petitioner Pro se

*Willie E Tatum Jr.*
*June 26, 2006*

**EXHIBIT A**

1

```
 1                P R O C E E D I N G S
 2        DEPUTY COMMISSIONER MCBEAN:  Okay.  We're
 3   on record.
 4        PRESIDING COMMISSIONER FISHER:   Okay.
 5   Thank you.  This is going to be a Subsequent
 6   Parole Consideration Hearing for Willie Tatum
 7   CDC Number C-55580.  Today's date is 9/15/05 and
 8   we're located at the Correctional Training
 9   Facility.  Inmate was received on 11/2/82 from
10   Los Angeles County.  The life term began on
11   11/2/82 and the minimum eligible parole date is
12   2/28/89.  The controlling offense for which the
13   inmate has been committed is kidnapping and
14   robbery.  Case number A-528706, Count One, Penal
15   Code Section 209(b).  Inmate received a term of
16   life.  Once again the minimum eligible parole
17   date is 2/28/89.  And Mr. Tatum, we're going to
18   be tape recording, so for the purpose of voice
19   identification, for the transcriber, we're each
20   going say our first and last name and spell our
21   last name.  I'm going to start with myself, but
22   when I get around to you, I need your CDC number
23   as well.  All right?
24        INMATE TATUM:  All right.
25        PRESIDING COMMISSIONER FISHER:   I'm going
26   to start with myself and go to my left.  Susan
27   Fisher, F-I-S-H-E-R, Commissioner.
```

2

1    **DEPUTY COMMISSIONER MCBEAN:**  My name is DH

2   McBean, M-C-B-E-A-N, Deputy Commissioner.

3    **DEPUTY DISTRICT ATTORNEY DELAGARZA:**  Alexis

4   Delagarza, D-E-L-A-G-A-R-Z-A, Deputy District

5   Attorney, Los Angeles County.

6    **ATTORNEY RUTLEDGE:**  Tara E. Rutledge, R-U-

7   T-L-E-D-G-E, Attorney for Mr. Tatum.

8    **INMATE TATUM:**  Willie Tatum, T-A-T-U-M, C-

9   55580.

10   **PRESIDING COMMISSIONER FISHER:**   Thank you.

11  Ms. Rutledge, did you have a chance to talk to

12  Mr. Tatum about the Americans With Disabilities

13  Act?

14   **ATTORNEY RUTLEDGE:**  Yes.

15   **PRESIDING COMMISSIONER FISHER:**   Okay.  Any

16  accommodations we need to make today?

17   **ATTORNEY RUTLEDGE:**  None.

18   **PRESIDING COMMISSIONER FISHER:**   Okay.  I

19  do want to note for the record that I have the

20  BPT 1073 Form here, and it was signed by Mr.

21  Tatum.  It was dated by his counselor 11 --

22  well, it just says 11/4.  It doesn't have an

23  actual date on it, but it was signed by Mr.

24  Tatum.

25   **INMATE TATUM:**  Who was the counselor?

26   **PRESIDING COMMISSIONER FISHER:**   Rubio.

27   **INMATE TATUM:**  Sometime last year.

3

1    PRESIDING COMMISSIONER FISHER:    Okay.    It

2  does state that you didn't have any disabilities

3  at that time, and that's still correct?

4    INMATE TATUM:    Yes.    Correct.

5    PRESIDING COMMISSIONER FISHER:    Now.    Are

6  those reading glasses?

7    INMATE TATUM:    Yes.

8    PRESIDING COMMISSIONER FISHER:    Did you do

9  an Olson Review?

10    INMATE TATUM:    Yes.

11    PRESIDING COMMISSIONER FISHER:    And did

12  you have your glasses available?

13    INMATE TATUM:    Yes.

14    PRESIDING COMMISSIONER FISHER:    Okay.

15  Great.    Thank you.    All right.    This hearing is

16  being conducted pursuant to Penal Code Section

17  3041 and 3042 and the Rules and Regulations of

18  the Board of Prison Terms that govern parole

19  consideration hearings for life inmates.    And as

20  you know, Mr. Tatum, the purpose of the hearing

21  today is to consider your commitment offense,

22  your prior criminal and social history, and your

23  behavior and programming since you've been in

24  prison since this offense.    We've had the

25  opportunity to review your file.    I'm going to

26  give you the opportunity to make any corrections

27  that you need to today.    All right?

4

1    INMATE TATUM:  Okay.

2    PRESIDING COMMISSIONER FISHER:    We're

3    going to reach a decision today as to whether or

4    not we find you suitable for parole.  If we do

5    find you suitable, I'll explain to you today

6    what the length of your confinement will be.

7    Before we recess today to deliberate, I'm going

8    to give you the opportunity, as well as the

9    District Attorney the opportunity to make a

10    final statement about your suitability.  I do

11    want you to remind that you're not required to

12    admit or discuss the offense, but that the Panel

13    accepts the findings of the Court to be true.

14    You understand that?

15    INMATE TATUM:  Yes.

16    PRESIDING COMMISSIONER FISHER:    Okay.  The

17    California Code of Regulations states that

18    regardless of time served, a life inmate shall

19    be found unsuitable for and denied parole, if in

20    the judgment of the Panel, he would pose an

21    unreasonable risk of danger to society if

22    released from prison.  (indiscernible).

23    INMATE TATUM:  Yes.  Yes.  Yes.

24    PRESIDING COMMISSIONER FISHER:    Okay.  I

25    still have to make the record.

26    INMATE TATUM:  Yeah.

27    PRESIDING COMMISSIONER FISHER:    You have

5

1    rights related to your hearing that include the

2    right to a timely notice of the hearing, the

3    right to review your Central File, and the right

4    to present relevant documents.  Counsel, have

5    your client's rights been met?

6         ATTORNEY RUTLEDGE:  Yes.

7         PRESIDING COMMISSIONER FISHER:  All right.

8    You also have the right, Mr. Tatum, to an

9    impartial Panel.  Having seen your two Panel

10   members today, do you have any objections to

11   your Panel?

12        INMATE TATUM:  No.

13        PRESIDING COMMISSIONER FISHER:  Counsel,

14   any objections to your Panel?

15        ATTORNEY RUTLEDGE:  No.

16        PRESIDING COMMISSIONER FISHER:  Okay.  I'm

17   going to give you a written copy of our decision

18   today.  It will be a tentative decision, and it

19   will be affective within a 120 days, and then a

20   copy of your decision and a copy of the

21   transcript of your hearing will be sent to you.

22   Are you familiar with the changes that took

23   place last year regarding how you appeal Board

24   decisions?

25        INMATE TATUM:  The 1040 process?

26        PRESIDING COMMISSIONER FISHER:  Right.

27        INMATE TATUM:  That's no longer --

6

1   PRESIDING COMMISSIONER FISHER:   Right.

2   INMATE TATUM:   -- around.

3   PRESIDING COMMISSIONER FISHER:   All appeals

4   now go directly to the Court.

5   INMATE TATUM:   Right.

6   PRESIDING COMMISSIONER FISHER:   So should

7   you need additional information about that, your

8   correctional counselor would have it and it

9   should also be in the prison library.

10   INMATE TATUM:   Okay.

11   PRESIDING COMMISSIONER FISHER:   Okay.   I

12   passed the exhibit sheet, Ms. Delagarza, do you

13   have everything?

14   DEPUTY DISTRICT ATTORNEY DELAGARZA:   I do.

15   Thank you.

16   PRESIDING COMMISSIONER FISHER:   Okay.   Ms.

17   Rutledge, do you have everything?

18   ATTORNEY RUTLEDGE:   Yes.

19   PRESIDING COMMISSIONER FISHER:   Is there

20   anything that needs to be submitted?

21   DEPUTY COMMISSIONER MCBEAN:   I think they

22   gave a last -- I checked with Mr. Tatum.   It

23   looks like his last chrono, August 5th, 2000, we

24   received today.

25   PRESIDING COMMISSIONER FISHER:   Okay.

26   Great.

27   DEPUTY DISTRICT ATTORNEY DELAGARZA:   I have

7

1  that.

2      PRESIDING COMMISSIONER FISHER:  All right.

3  Do you have any preliminary objections?

4      ATTORNEY RUTLEDGE:  None.

5      PRESIDING COMMISSIONER FISHER:  And is Mr.

6  Tatum going to be speaking with us today?

7      ATTORNEY RUTLEDGE:  No.

8      PRESIDING COMMISSIONER FISHER:  Okay.  Is

9  he going to speak on any issues at all, or just

10  not about the crime?

11      INMATE TATUM:  Not about the crime.

12      PRESIDING COMMISSIONER FISHER:  Okay.  So

13  when we're going through your social history or

14  your programming or your disciplinaries, will

15  you be talking to us about those?

16      INMATE TATUM:  I may.

17      PRESIDING COMMISSIONER FISHER:  Okay.  All

18  right.  Just in case, I need to --

19      INMATE TATUM:  Right.

20      PRESIDING COMMISSIONER FISHER:  I need to

21  swear you in.  Okay.

22      INMATE TATUM:  Okay.

23      PRESIDING COMMISSIONER FISHER:  Other hand.

24      INMATE TATUM:  All right.

25      PRESIDING COMMISSIONER FISHER:  Do you

26  solemnly swear or affirm that the testimony you

27  give at this hearing will be the truth and

8

1  nothing but the truth?

2      **INMATE TATUM:**  Yep.

3      **PRESIDING COMMISSIONER FISHER:**  All right.

4  Counsel, I'm looking at the most recent summary,

5  which is the November 2 Board Report.  Will that

6  work for you?

7      **ATTORNEY RUTLEDGE:**  That's fine.

8      **PRESIDING COMMISSIONER FISHER:**  All right.

9  Let me see here.  It says under summary of the

10  crime:

11      On May 21, 1982, at about 2:00 A.M, female

12  victim Becker and Simon-- that's Susan Becker

13  and Peggy Simon were forced off the road by the

14  van.  Tatum and Jackson exited the van and

15  approached the victim's car.  The following

16  individuals remained in the van:  Garringer,

17  Fernandez, and Williams.  Tatum was armed with a

18  loaded revolver and forced his way into the

19  passenger side of the victim's vehicle.  Jackson

20  threatened the victims with a knife and also

21  forced his way into the victim's vehicle.  The

22  victims screamed.  Victim Becker's brother and

23  her boyfriend heard the scream and went out to

24  investigate.  Tatum pointed the revolver

25  directly at the man and told them to get back.

26  The two men complied with Tatum's order.  The

27  victims were forced to drive away from their

9

1   location. Tatum ordered Becker to follow the

2   van. They drove a short distance during which

3   Tatum and Jackson robbed the victims of their

4   jewelry. They then ordered the victims out of

5   their car and into the waiting van. Inside the

6   van, Tatum ordered the victims to remove their

7   clothes. Fernandez attempted to unbutton Peggy

8   Simon's pants. He stopped when he was told to

9   wait until they got on the freeway. The police

10  had been contacted by the victim's boyfriend,

11  and the van was identified. The police spotted

12  the van and a chase ensued. The chase lasted a

13  short time. The chase culminated when the van

14  crashed into a tree. The five defendants then

15  attempted to escape by running out of the van.

16  Tatum and Garringer were arrested immediately at

17  the scene. Remaining defendants were arrested

18  later near the scene of the crashed van.

19      And it notes the information was obtained

20  from pages five through eleven of the Probation

21  Officer's Report. Under prisoners version is --

22  is this the one you want me to use, Counsel?

23  The prisoner's version -- or would you prefer a

24  different one? Let's see. What else is here?

25  There's a -- the last psych report is 8/21/03.

26  There's a review of life crime there.

27          INMATE TATUM: The findings from the

10

1   Probation Report and Court.  We'll go with that.

2       **PRESIDING COMMISSIONER FISHER**:  Okay.  The

3   (indiscernible) version.  All right.

4       **INMATE TATUM**:  Yeah.  Go with that.

5       **PRESIDING COMMISSIONER FISHER**:  All right.

6   Let's see here.  Okay.  Let's start -- let's

7   talk about your social history, and I am looking

8   at the Probation Officer's Report for any prior

9   arrests or convictions.  It says -- under

10  juvenile it says dependent (indiscernible) that

11  as a juvenile he was only arrested on one

12  occasion.  It occurred a the age of 16 when he

13  was arrested for assault with intent to commit

14  great bodily injury.  He explains that he became

15  involved in a fight and broke the victim's jaw.

16  He was placed on six months probation and his

17  father had to pay the restitution amounting to

18  $3000.  Is that correct?

19      **INMATE TATUM**:  Yeah, that's correct.

20      **PRESIDING COMMISSIONER FISHER**:  Okay.

21  Under adult history there was an arrest in 1980

22  for battery.  It says no disposition is shown.

23  This defendant believes this involved a fight

24  with his wife when he hit her once.  She

25  screamed loudly and the police were called.

26  They subsequently decided not to file and told

27  defendant to not hit his wife.

11

1    INMATE TATUM:  What year was that?

2    PRESIDING COMMISSIONER FISHER:  It was

3    September of 1980 -- 1980 disposition.

4    INMATE TATUM:  That was prosecutor reject.

5    PRESIDING COMMISSIONER FISHER:  It was

6    prosecutor's reject?

7    INMATE TATUM:  Yeah.

8    DEPUTY DISTRICT ATTORNEY DELAGARZA:  I'm

9    sorry.  I didn't hear -- which one were you

10   talking about?

11   PRESIDING COMMISSIONER FISHER:  The

12   September 1980.  Is that right?  And that does

13   say prosecutor's reject on the CINI(phonetic) in

14   May of '81.  It says that you were arrested for

15   receiving stolen property.  Let's see here.

16   This says that your dad gave you a knife and

17   that you kept it on your person.

18   INMATE TATUM:  Right.

19   PRESIDING COMMISSIONER FISHER:  And it says

20   you were stopped by the police and they found

21   the knife.  And that was -- was it a

22   switchblade?

23   INMATE TATUM:  It was a switchblade knife.

24   PRESIDING COMMISSIONER FISHER:  All right.

25   And there was another one with no disposition

26   known in '81, looks like it was another night.

27   Apparently they charged you with battery, but

12

1   they didn't file charges.  Is that correct?

2        INMATE TATUM:  That's correct.

3        PRESIDING COMMISSIONER FISHER:  All right.

4   And then the last one -- the last one they show

5   is the --

6        INMATE TATUM:  Commitment offense.

7        PRESIDING COMMISSIONER FISHER:  Yeah.

8        INMATE TATUM:  That's it.

9        PRESIDING COMMISSIONER FISHER:  Okay.

10  Good.  All right.  Were you raised by your mom

11  and your stepfather?

12       INMATE TATUM:  Yes, that's correct.

13       PRESIDING COMMISSIONER FISHER:  And it

14  doesn't tell me if you have brothers and

15  sisters.  Do you have any siblings?

16       INMATE TATUM:  I have four brothers.

17       PRESIDING COMMISSIONER FISHER:  Are they

18  all older or all younger?

19       INMATE TATUM:  Three is under me -- is

20  younger than I, and one is older.

21       PRESIDING COMMISSIONER FISHER:  And are you

22  in contact with all of them?

23       INMATE TATUM:  Yes.

24       PRESIDING COMMISSIONER FISHER:  How are

25  they doing?

26       INMATE TATUM:  They're doing good.

27       PRESIDING COMMISSIONER FISHER:  How about

13

1    your mom and her husband.  Are they still alive?

2          INMATE TATUM:  Still alive.

3          PRESIDING COMMISSIONER FISHER:  Still in

4    LA?

5          INMATE TATUM:  In La Quinta, yeah.

6          PRESIDING COMMISSIONER FISHER:  Okay.  And

7    are you in pretty constant contact with them?

8          INMATE TATUM:  Yes.

9          PRESIDING COMMISSIONER FISHER:  Good.

10    Okay.  It says that you were married -- now, I'm

11    looking back at -- this is '03 when the last

12    psych evaluation was.  It says that you were

13    still legally married at the time, but you were

14    also engaged.  You just had never legally

15    divorced from your wife, correct?

16          INMATE TATUM:  That's true, no.

17          PRESIDING COMMISSIONER FISHER:  Has that

18    changed at all?

19          INMATE TATUM:  No.

20          PRESIDING COMMISSIONER FISHER:  Are you

21    still engaged?

22          INMATE TATUM:  Yes, I am.  And depending on

23    being paroled, you know, I take care of all

24    those matters.

25          PRESIDING COMMISSIONER FISHER:  All the

26    logistics?

27          INMATE TATUM:  Right.

14

1       PRESIDING COMMISSIONER FISHER:   Okay.   How

2   did you meet your fiancée?

3       INMATE TATUM:   I met her through a family

4   friend of mine.

5       PRESIDING COMMISSIONER FISHER:   Okay.   And

6   you have a son?

7       INMATE TATUM:   Yes.

8       PRESIDING COMMISSIONER FISHER:   So he must

9   be around 28 now, does that seem right?

10      INMATE TATUM:   About that.

11      PRESIDING COMMISSIONER FISHER:   And what's

12  he do?

13      INMATE TATUM:   He's -- unfortunately he's

14  incarcerated too.

15      PRESIDING COMMISSIONER FISHER:   That's too

16  bad.

17      INMATE TATUM:   Yeah.

18      PRESIDING COMMISSIONER FISHER:   Is it a

19  life term?

20      INMATE TATUM:   Yes, it is.

21      PRESIDING COMMISSIONER FISHER:   That's too

22  bad.   Does he have kids?

23      INMATE TATUM:   No.

24      PRESIDING COMMISSIONER FISHER:   So you're

25  not a grandfather yet?

26      INMATE TATUM:   No.

27      PRESIDING COMMISSIONER FISHER:   Let's see

15

1  here.  It says that -- under substance abuse

2  history, it says you never thought of yourself

3  as an alcoholic, but that now you think looking

4  back that you probably were.  Is that correct?

5      INMATE TATUM:  Is that what it says there?

6      PRESIDING COMMISSIONER FISHER:  That's what

7  it says.  Is that not right?

8      INMATE TATUM:  That is it, yeah.

9      PRESIDING COMMISSIONER FISHER:  Because if

10  it's not right, let's fix it.

11      INMATE TATUM:  That's what it is.

12      PRESIDING COMMISSIONER FISHER:  Okay.  It

13  says according to your records, you've used PCP

14  about 40 times, and that you were drinking and

15  using PCP on the date of the offense.  Is that

16  correct?

17      INMATE TATUM:  Yes, that's correct.

18      PRESIDING COMMISSIONER FISHER:  And that

19  you started smoking pot from about the sage of

20  14.

21      INMATE TATUM:  Yes.

22      PRESIDING COMMISSIONER FISHER:  Okay.

23  Anything else?  Any other kinds of drugs or

24  anything?

25      INMATE TATUM:  That's it right there.

26      PRESIDING COMMISSIONER FISHER:  Okay.  Wow,

27  you got stabbed years ago?

16

1      INMATE TATUM:  Yeah.

2      PRESIDING COMMISSIONER FISHER:  It says

3  that you never fully recovered from it.  Is that

4  true?  You still have problems from it?

5      INMATE TATUM:  I would say so, yeah.  You

6  know, getting older.

7      PRESIDING COMMISSIONER FISHER:  Start --

8  you start to feel things that you didn't feel

9  before.

10      INMATE TATUM:  Right, yeah.

11      PRESIDING COMMISSIONER FISHER:  I can

12  relate to that.

13      INMATE TATUM:  Yeah.

14      PRESIDING COMMISSIONER FISHER:  All right.

15  And anything else about your social history that

16  I haven't asked you about that you think would

17  be important for us to know?

18      INMATE TATUM:  As far as what did I do, as

19  far as work?

20      PRESIDING COMMISSIONER FISHER:  Just in

21  general, just anything about you that you think

22  that we should know about you.

23      INMATE TATUM:  I love music.  I worked when

24  I could.  That's about it.  I like sports.  That

25  kind of stuff.

26      PRESIDING COMMISSIONER FISHER:  Okay.  I

27  just want to make sure that I didn't miss or

17

1    gloss over anything that you thought was

2    important, that we got it covered.  All right.

3    Let's talk about parole plans.  I'm going to

4    tell you what you it says in the file.  And I

5    have some letters in here too, so I'm going to

6    through those.  It says that you would live with

7    your mom and your stepfather.  Is that correct?

8          INMATE TATUM:  Yes, that's correct.

9          PRESIDING COMMISSIONER FISHER:  And it also

10   says that you have skills as a welder, forklift

11   driver, upholsterer, and small engine repair,

12   and that you could work in any of those fields.

13         INMATE TATUM:  That's correct.

14         PRESIDING COMMISSIONER FISHER:  Okay.  I'll

15   tell you what I've got here.  I have -- I have a

16   letter from Dedra Morey (phonetic).

17         INMATE TATUM:  That's my fiancée.

18         PRESIDING COMMISSIONER FISHER:  She says --

19   this letter assures my ongoing full support of

20   Bill Tatum upon his release and during his

21   incarceration.  She says that she's in close

22   contact with your family and she says they agree

23   with me to provide financial, emotional support

24   as needed.  Bill is ready and willing to work

25   and attend school to support himself.  There are

26   many areas Bill has shown an interest in besides

27   the music field, which he studied while in

18

1   prison.  Bill's inquired about computers.  I

2   talked to the Urban League, which will start him

3   in a basic training and job skills program as

4   soon as he's released.  He's looking forward to

5   working with his skills in the church.  It says,

6   I'm currently teaching in the public schools and

7   also at church.  I know Bill will be involved in

8   positive constructive daily activities.  She

9   says that you would also take care of your

10  parents.  That your dad has cancer and your mom

11  has asthma and congestive heart failure.  Is

12  that right?

13        INMATE TATUM:  Yeah, but my father, he

14  passed.  He passed last year -- last year,

15  September.

16        PRESIDING COMMISSIONER FISHER:  I'm sorry.

17        INMATE TATUM:  Yeah.

18        PRESIDING COMMISSIONER FISHER:  This must

19  of been right before that, because this was

20  stamped September of '04.

21        INMATE TATUM:  Right.

22        PRESIDING COMMISSIONER FISHER:  And your

23  stepfather is ill also, I guess.  Asthma and

24  high blood pressure and arthritis is what she

25  says.

26        INMATE TATUM:  Yeah.  They getting up in

27  age.  They up in age.

# EXHIBIT 1 (Part 2 of 2)

19

1          PRESIDING COMMISSIONER FISHER:  Let's see

2     here.  And she talks about what you've done, the

3     certificates that you've gotten, and the fact

4     that she believes that those will certainly help

5     you find work.  And this is another copy of her

6     letter.  And that's all I've gotten in way of

7     support letters.  Is there anything that I

8     should have that I'm missing here?

9          ATTORNEY RUTLEDGE:  No.  I also notice that

10    the C file letters didn't get our file.

11         INMATE TATUM:  Right.  Here's three more

12    letters.

13         PRESIDING COMMISSIONER FISHER:  Okay.  If

14    you'll give those to the Officer.  Thank you.

15    Do you play a musical instrument?

16         INMATE TATUM:  Yes, ma'am.

17         PRESIDING COMMISSIONER FISHER:  Multiple

18    musical instruments?

19         INMATE TATUM:  Yes.

20         PRESIDING COMMISSIONER FISHER:  What do you

21    play?

22         INMATE TATUM:  The piano is my instrument

23    of choice and then base guitar.

24         PRESIDING COMMISSIONER FISHER:  Have you

25    had any opportunity to practice while you've

26    been here?

27         INMATE TATUM:  Yeah.

20

1        **PRESIDING COMMISSIONER FISHER:**  Have you?

2        **INMATE TATUM:**  Yeah.

3        **PRESIDING COMMISSIONER FISHER:**  Good.

4        **INMATE TATUM:**  Yeah.

5        **PRESIDING COMMISSIONER FISHER:**  All right.

6   This is another copy of her letters.  Wow.  She

7   sent a bunch of copies.

8        **INMATE TATUM:**  Yeah.

9        **PRESIDING COMMISSIONER FISHER:**  Okay good.

10  And this is the same letter.

11        **INMATE TATUM:**  Right.

12        **PRESIDING COMMISSIONER FISHER:**  So I'm not

13  going to through that.  We have a letter here --

14  okay.  You're going to have to help pronounce

15  this name.  Is that Morteal (phonetic).

16        **INMATE TATUM:**  Morteal (phonetic).

17        **PRESIDING COMMISSIONER FISHER:**  Morteal

18  (phonetic) Cobbs, and this is your aunt, right?

19        **INMATE TATUM:**  Yes.  My mother's sister.

20        **PRESIDING COMMISSIONER FISHER:**  Okay.  She

21  says, I'm very concerned about the time that he

22  has spent in prison.  She says that I feel that

23  the Board should give him a date to be released.

24  I'm hoping that the Board would consider to let

25  him come back to society.  He's always been a

26  good nephew.  He has good background, grew up in

27  the church, and worked with different

21

1   auxiliaries.  He has a family that loves him and

2   always will.  Okay.  Let's see.  There's an

3   opening here somewhere, but I just not seeing

4   it.  Up here -- yes, it is.  Looks like it's

5   been resealed.

6       INMATE TATUM:  Yeah.  That's coming from

7   the mailroom.

8       PRESIDING COMMISSIONER FISHER:  Okay.  I

9   don't -- I don't want to mess up your letter

10  here.

11      ATTORNEY RUTLEDGE:  Is it open on the side?

12      PRESIDING COMMISSIONER FISHER:  I don't

13  think it is.

14      INMATE TATUM:  Looks like it's taped from

15  the bottom and the top.

16      PRESIDING COMMISSIONER FISHER:  It's taped

17  and I don't want the mess with this letter.  All

18  right.  Being as careful as I can here.  All

19  right.  And they taped it so well that it was

20  taped inside the envelope.  And this is from

21  Debra Sweet-Kelly.

22      INMATE TATUM:  My first cousin.

23      PRESIDING COMMISSIONER FISHER:  Okay.  She

24  says several years, similar correspondence, was

25  sent to you as a persuasive measure for Willie's

26  release.  Again, several years later, I find

27  myself corresponding with you again.  She says

22

1     the prolonged duration of his physical

2     incarceration has caused him to serve and suffer

3     protracted exclusion from the family he duly

4     loves.  She says -- she's mostly talking about

5     your -- about the length of your incarceration.

6     I believe Willie has more than paid his debt and

7     is no longer a risk to humanity.  He deserves a

8     chance to proof himself in society -- I'm sorry,

9     prove to himself in society that he's been

10    rehabilitated and will be an upstanding citizen.

11    Please use Willie's release to proof to society

12    that the prison reform system does work.  Our

13    family loves him dearly and will gladly welcome

14    him with open arms.  As a closely knit family,

15    we will all bond together to keep Willie well

16    within the realm of positive productive.  We are

17    abundantly blessed to have several church

18    ministers and officers who are willing to serve

19    as personal counselors to him in many ways.  All

20    right.  Is there anything else about your parole

21    plans that I haven't asked you about that you

22    think would be important for us to know?

23         INMATE TATUM:  In 2003, I contacted a

24    couple of truck driving schools.  That's what I

25    want to do --

26         PRESIDING COMMISSIONER FISHER:  Okay.

27         INMATE TATUM:  -- when I'm paroled, and one

23

1    school responded back and that's the school

2    there Imperial Trucking.

3         PRESIDING COMMISSIONER FISHER:  Imperial

4    Trucking School and essentially this says,

5    please find the information that you requested.

6    They are currently training clients for the

7    State Department of Rehabilitation, and if you

8    qualify, that they might pay for your course.

9    Okay.  And this gives you all the information

10   related to the school and enrollment and what

11   the classes are and what's required and so and

12   so forth.  That's great.  All right.  And how

13   long does it take?

14        INMATE TATUM:  I would say approximately

15   two years, at the most, maybe less.

16        PRESIDING COMMISSIONER FISHER:  Okay.

17   Anything else that I haven't asked you about?

18        INMATE TATUM:  That's it, I guess.

19        PRESIDING COMMISSIONER FISHER:  Okay.  If

20   you'll turn your attention to Commissioner

21   McBean, she's going to go through your

22   programming.

23        DEPUTY COMMISSIONER MCBEAN:  All right.

24   Mr. Tatum, in this phase of the hearing, we'll

25   be looking at your institutional adjustment.  I

26   read the C files, the Board Report, the psych

27   evaluation.  If I miss anything, I'll give you

24

1    and your attorney an opportunity to address some

2    things.   I see you last appeared before the

3    Board of Prison Terms on 11/19/03.   At that time

4    you were given a one year denial.

5          INMATE TATUM:   Yes.

6          DEPUTY COMMISSIONER MCBEAN:   You were asked

7    to remain disciplinary free and to participate

8    in self-help and therapy as available.   You have

9    a current classification score of -- wait a

10    minute.   Yeah, 19.   Custody level is medium AR.

11    Are you still working for PIA?

12          INMATE TATUM:   Yes, ma'am.   Yes, I am.

13          DEPUTY COMMISSIONER MCBEAN:   All right.

14    And that's in work products?   Is that furniture

15    factory?

16          INMATE TATUM:   Yes.

17          DEPUTY COMMISSIONER MCBEAN:   Did you need a

18    minute with your client?

19          ATTORNEY RUTLEDGE:   No, we clarified it.

20          DEPUTY COMMISSIONER MCBEAN:   Okay.   And it

21    looks like you have been in the furniture

22    factory since about '02?

23          INMATE TATUM:   Yes, that's correct.

24          DEPUTY COMMISSIONER MCBEAN:   And you have

25    above average or exceptional work reports.

26    Doing well.

27          INMATE TATUM:   Yes.

25

1      DEPUTY COMMISSIONER MCBEAN:  Before that

2  were you in PIA sewing?

3      INMATE TATUM:  Yes, I was.

4      DEPUTY COMMISSIONER MCBEAN:  Back in '98

5  through 2000 to 2001 --

6      INMATE TATUM:  Right.

7      DEPUTY COMMISSIONER MCBEAN:  Something like

8  that.

9      INMATE TATUM:  Right.

10     DEPUTY COMMISSIONER MCBEAN:  All right.  So

11 you've been in PIA for quite a while.  Now you -

12 - you dropped out of high school in the 11th

13 grade; is that right?

14     INMATE TATUM:  Yes.

15     DEPUTY COMMISSIONER MCBEAN:  Okay.  And

16 then did you finish your high school or get your

17 GED?

18     INMATE TATUM:  I finished my high school

19 while incarcerated at DVI Tracy in '91.

20     DEPUTY COMMISSIONER MCBEAN:  '91.  Okay.

21 From a vocational standpoint, you have completed

22 one vocational trade, and that's small engine

23 repair in '97.

24     INMATE TATUM:  Yes.

25     DEPUTY COMMISSIONER MCBEAN:  That right?

26     INMATE TATUM:  Yes.

27     DEPUTY COMMISSIONER MCBEAN:  Okay.  Any

26

1    others?  Any other voc trades that you

2    completed?

3        INMATE TATUM:  That's it.

4        DEPUTY COMMISSIONER MCBEAN:  Okay.  The

5    file indicates some use of marijuana, PCP,

6    Benzedrine, amphetamine, cocaine, and alcohol.

7    Is that correct?

8        INMATE TATUM:  Prior to conviction, yes.

9        DEPUTY COMMISSIONER MCBEAN:  Prior to the

10   life crime?

11       INMATE TATUM:  Right.

12       DEPUTY COMMISSIONER MCBEAN:  There's a

13   history of that drug use?

14       INMATE TATUM:  Right.

15       DEPUTY COMMISSIONER MCBEAN:  And from a

16   self-help standpoint, I saw that you

17   participated in AA in '96, and in '03, 4 and 5.

18   Is that right?

19       INMATE TATUM:  Well, from '87, from '87 to

20   now, to 2005.

21       DEPUTY COMMISSIONER MCBEAN:  Well, I

22   couldn't find all those chronos.  I'll look

23   again.  I saw one in '96.

24       INMATE TATUM:  Right.

25       DEPUTY COMMISSIONER MCBEAN:  And that was

26   the first one I saw.  And I saw some in '03, 4

27   and 5.  Did you get chronos along the way giving

27

1    you credit for your participation?

2        **INMATE TATUM:**  Yes.  How many files do you

3    have there, two?

4        **DEPUTY COMMISSIONER MCBEAN:**  Two, yeah.

5        **INMATE TATUM:**  Where they are?

6        **DEPUTY COMMISSIONER MCBEAN:**  I'll have the

7    officer bring them.  Thanks.

8        **DEPUTY COMMISSIONER MCBEAN:**  Okay.  In '96,

9    '97, '95, '94, '92, '89, I wonder is there a

10   third file?

11       **INMATE TATUM:**  Could be.

12       **DEPUTY COMMISSIONER MCBEAN:**  Okay.  I'm

13   going to see in a second.  I'm going to go look

14   to see if there is a third file that we don't

15   have.  All right.  I'm glad to see that you

16   maintained copies of those.  So do you know the

17   steps, Mr. Tatum?

18       **INMATE TATUM:**  I know some of them.

19       **DEPUTY COMMISSIONER MCBEAN:**  Do you find

20   that you use them in your life?

21       **INMATE TATUM:**  Yes.

22       **DEPUTY COMMISSIONER MCBEAN:**  Can you tell

23   me about one or two that you find that you use

24   in your daily life?

25       **INMATE TATUM:**  Step one.

26       **DEPUTY COMMISSIONER MCBEAN:**  What is that?

27       **INMATE TATUM:**  Admit to myself, as well as,

28

1  know that I was powerless over my addiction and
2  my life had become unmanageable.  Step four,
3  make a list of all the -- essentially, a moral
4  inventory of myself, which I do that regularly.
5  And then there's step eight, make a list of all
6  the people who I have harmed and be willing to
7  make an amends to the them, if possible.
8      DEPUTY COMMISSIONER MCBEAN:  Okay.  Did you
9  do those things?
10     INMATE TATUM:  Yes.  I do those things,
11  yeah.
12     DEPUTY COMMISSIONER MCBEAN:  Very good.
13 Okay.  Let's see.  You also did a anger
14 management video in a August of '05, and
15 attended employability -- I think that's video a
16 as well in December of '04.  And in the past
17 have participated in arts and corrections and I
18 saw that you played in the band for variation
19 functions?
20     INMATE TATUM:  Right.
21     DEPUTY COMMISSIONER MCBEAN:  In the
22 institution?
23     INMATE TATUM:  Right, the children's
24 Christmas festival.
25     DEPUTY COMMISSIONER MCBEAN:  Right.  Okay.
26 So you're part of the institution man?
27     INMATE TATUM:  Yes.

29

1    **DEPUTY COMMISSIONER MCBEAN:**  All right.

2  Any other self-help that you've done, especially

3  since your last appearance -- since '03?

4    **INMATE TATUM:**  I've been reading my bible,

5  you know, I use that.  That's self-help for me.

6    **DEPUTY COMMISSIONER MCBEAN:**  Okay.

7    **INMATE TATUM:**  Yeah.

8    **DEPUTY COMMISSIONER MCBEAN:**  Anything else?

9    **INMATE TATUM:**  That's it.

10    **DEPUTY COMMISSIONER MCBEAN:**  That's it?

11    **INMATE TATUM:**  Yeah.

12    **DEPUTY COMMISSIONER MCBEAN:**  Okay.  Let's

13  see.  Let's look at your disciplinary history.

14  You have six CDC 115s, last one being 10/20 of

15  '89.  That was for threatening staff.  That's

16  not a very good one.  It states on October 20th,

17  '89, at approximately 1200 hours, **INMATE TATUM**

18  threatened me, he stated "Any motherfucker that

19  crosses me is going to get taken out.  I'm a

20  gangster ass motherfucker, and I'll take care of

21  the motherfucker my Goddamn self."  Sorry, I

22  have to use that language, but I need to read.

23  He also pointed out that, "This room is full of

24  inmates and the guards can't get in here before

25  they get to you.  These comments were made after

26  I said there wasn't much options left except to

27  write up inmates who continue to eat in the

30

1   classroom after several verbal warnings."  So

2   what would you like to tell us about that one?

3       INMATE TATUM:  Do you have a copy of that

4   115 in there?

5       DEPUTY COMMISSIONER MCBEAN:  It is the

6   Central File.

7       INMATE TATUM:  Is that the copy of the 115?

8       DEPUTY COMMISSIONER MCBEAN:  It's the

9   original.

10      INMATE TATUM:  Is it?

11      DEPUTY COMMISSIONER MCBEAN:  Did you say

12  those things?

13      INMATE TATUM:  No.  I didn't say those

14  things.  No, I didn't.

15      DEPUTY COMMISSIONER MCBEAN:  Okay.  What

16  happened there?

17      INMATE TATUM:  That was what 16 years ago.

18      DEPUTY COMMISSIONER MCBEAN:  1989.

19      INMATE TATUM:  About that.  I don't have no

20  comment on that, but I will stipulate for the

21  record that I didn't say those things that he

22  claimed I said.

23      DEPUTY COMMISSIONER MCBEAN:  Well, he was

24  found guilty of this 115.

25      INMATE TATUM:  That's true.

26      DEPUTY COMMISSIONER MCBEAN:  I mean, you

27  know, it is in the Central File and you don't

31

1   have to speak about it, it's your opportunity to

2   provide any clarification if you want to -- hold

3   on.

4        INMATE TATUM:  All right.

5        DEPUTY COMMISSIONER MCBEAN:  It's your

6   opportunity to provide clarification if you want

7   to, and if you don't want to, that's okay.

8        INMATE TATUM:  Okay.  And I choose not to.

9        DEPUTY COMMISSIONER MCBEAN:  You don't want

10  to comment on it?

11       INMATE TATUM:  No.

12       DEPUTY COMMISSIONER MCBEAN:  Okay.  You

13  have one on 4/24, '89 -- and I know these were a

14  while ago, but I just -- are you going to

15  comment on any of them?

16       INMATE TATUM:  No.

17       DEPUTY COMMISSIONER MCBEAN:  No?

18       INMATE TATUM:  No.

19       DEPUTY COMMISSIONER MCBEAN:  All right.

20  4/29, '89 is for disobeying orders.  He's told

21  to go to class and you became argumentative and

22  wanted to go to smoke.  7/21/86 for possession

23  of a TV that you shouldn't of had.  5/25/86 for

24  destruction of state property.  In this 115 --

25  in the steamline, in the dining room, the 115

26  indicates you broke the glass of the steamline

27  because you did not want the potatoes that were

32

1    being served, and staff heard the glass

2    breaking.  And 5/24/85, disobeying orders, you

3    were housed in cell D 212, refused to stop in

4    the north quarter for clothed body search.

5    Tatum stated, "Fuck you."  I gave direct order

6    for him to stop, and ordered him on the wall.

7    Tatum stated, "You put me on the wall, punk."

8    Back up was called, and he was searched.  And

9    then (indiscernible), another 115 for disobeying

10   orders.  In the culinary, you were told to leave

11   the area.  Instead of leaving, Tatum tried to

12   walk around me.  I blocked his path by stepping

13   in front of him and again addressed him to

14   leave.  Tatum refused.  At that time, I ordered

15   Tatum to place his hands on the wall and submit

16   to a clothed body search.  He refused.  I placed

17   my hands on Tatum's arms, turning him towards

18   the wall.  Tatum made several attempts to turn

19   from the wall and other staff had to come and

20   assist.  You also have four 128s.  The last one

21   being, 11/15/90 for disobeying orders.

22   11/12/89, became loud and abusive in class.

23   7/27/89 for absences.  12/5/88, unproductive

24   behavior in class.  And 8/11/83, following a

25   stabbing assault in the weight lifting area of

26   the main yard, you were found to be without any

27   ID.  Now, the file indicates that you are a

33

1    member of the Crips Gang.  Los Angeles Crips per

2    the CDC 812 and the Probation Officer's Report,

3    and are you still affiliated with the Crips?

4        INMATE TATUM:  No.

5        DEPUTY COMMISSIONER MCBEAN:  Okay.  How

6    long have you disassociated yourself from the

7    Crips?

8        INMATE TATUM:  It's many, many years prior

9    to me -- this life commitment.

10       DEPUTY COMMISSIONER MCBEAN:  Okay.  So you

11   were not involved in the Crips at the time of

12   the life crime?

13       INMATE TATUM:  Right.

14       DEPUTY COMMISSIONER MCBEAN:  Okay.  And you

15   don't have any 115s that would indicate that you

16   are continuing to affiliate with them.  So

17   that's the good news.

18       INMATE TATUM:  That's correct.  And no

19   arrests for affiliation or being a Crip member

20   or whatever.

21       DEPUTY COMMISSIONER MCBEAN:  You mean since

22   your crime?

23       INMATE TATUM:  Prior to and since I've been

24   incarcerated, as well.

25       DEPUTY COMMISSIONER MCBEAN:  Well, unless

26   the life crime was involving his Crip activity,

27   but we're not really certain about that.  All

34

1   right.  Let's look at the psych evaluation,

2   8/21/03.  According to the psych evaluation

3   here, you had indicated you were previously

4   stabbed and that was by your wife?

5        INMATE TATUM:  Yes.

6        DEPUTY COMMISSIONER MCBEAN:  As this says

7   you were stabbed by your wife in the left lung.

8   When was that?

9        INMATE TATUM:  That was -- it was '80, or

10  '81.

11       DEPUTY COMMISSIONER MCBEAN:  Why did she

12  stab you in the left lung?

13       INMATE TATUM:  It was a domestic argument.

14       DEPUTY COMMISSIONER MCBEAN:  Okay.  Was she

15  injured?

16       INMATE TATUM:  Nope.

17       DEPUTY COMMISSIONER MCBEAN:  It goes

18  through the crime here quite a long time.  It

19  does indicate that you are terribly remorseful

20  for committing the crime.  In terms of an

21  assessment of dangerousness, states that if

22  released to the community, violence potential is

23  estimated to be no higher than the average

24  citizen in the community.  It says that since

25  the inmate has not received any 115 violations

26  since 10/20/89, during which he was found guilty

27  for threatening a teacher, he had a total of

35

1    rules violations from '84 to '89.  Since he has

2    not been involved in any physical violence

3    during his entire incarceration, it's felt he

4    would pose a less-than-average risk for violence

5    when compared to this Level Two inmate

6    population.  And I guess it's using that

7    analysis then, that reaches the conclusion as

8    well that violence potential is estimated to be

9    no higher than average in the community.  And

10   that's my Dr. William Gamard.  Okay.  Is there

11   anything else that you'd like to address that we

12   have missed in terms of your institutional

13   adjustment or accomplishments during your

14   incarceration?

15        INMATE TATUM:  That about sums it up right

16   there.

17        DEPUTY COMMISSIONER MCBEAN:  Okay.

18   Anything you'd like to add, Counsel?

19        ATTORNEY RUTLEDGE:  No.

20        DEPUTY COMMISSIONER MCBEAN:  Okay.  Return

21   to the Chair.

22        PRESIDING COMMISSIONER FISHER:  Okay.

23   You've been disciplinary free for a long time?

24        INMATE TATUM:  Yes.

25        PRESIDING COMMISSIONER FISHER:  What do you

26   attribute that to?  How do you do that?

27        INMATE TATUM:  Maturing, you know, growing

36

1    up.  You have to be accountable and responsible

2    for your actions.  Here I was -- here I am in

3    prison with a life sentence, and that kind of

4    behavior and conduct is -- won't cut it.  It's

5    just growing up.

6         PRESIDING COMMISSIONER FISHER:  It's just

7    not a good idea?

8         INMATE TATUM:  Yeah, exactly.

9         PRESIDING COMMISSIONER FISHER:  So it

10   sounds like back in the '80s, when you first

11   came to prison, were you just angry at the

12   world?  Because that's what it sounds like when

13   she reads what you were doing.

14        INMATE TATUM:  It could of been.  I believe

15   so.  It could of been.

16        PRESIDING COMMISSIONER FISHER:  I was

17   reading -- I was kind of flipping through some

18   of your prior decisions back then and in 1997

19   one of the Commissioners suggested to you that

20   you needed to get a handle on your anger

21   problems.  What was going -- because that even -

22   - that was several years after your last 115.

23        INMATE TATUM:  He had asked a question --

24   it was Gillis (phonetic), Commissioner Gillis.

25   He had asked a question, and I was responding to

26   the question, and I guess he took it as me

27   being, you know, over-assertive, or aggressive

37

1  in the way I was expressing myself.

2      PRESIDING COMMISSIONER FISHER:  Okay.

3      INMATE TATUM:  And he just leaned back in

4  his chair, and you need to get a handle on that

5  anger.  And that's my recollection of that.

6      PRESIDING COMMISSIONER FISHER:  And what

7  happened last year with Commissioner Moore

8  because you had had him before --

9      INMATE TATUM:  Right.

10     PRESIDING COMMISSIONER FISHER:  -- on your

11  Panel.  And there was some discussion at the end

12  of your hearing between you and him.  What was

13  going on with that?

14     INMATE TATUM:  That's Commissioner Moore.

15  Commissioner Moore being Commissioner Moore.

16  That's all I can say to that.

17     DEPUTY COMMISSIONER MCBEAN:  I didn't

18  understand that.

19     INMATE TATUM:  (indiscernible).

20     DEPUTY COMMISSIONER MCBEAN:  The question

21  was, what happened, and you want to talk about

22  your responsibility or what you did, not just

23  him because he's not here.

24     INMATE TATUM:  (indiscernible).

25     PRESIDING COMMISSIONER FISHER:  There was

26  something that he said that you wanted -- let's

27  see here.  That you wanted to -- he said it in

38

1    his decision, I think, or as he was reading the

2    decision that you wanted to respond to.  Is that

3    correct?  As I recall, he was talking about the

4    115 where the teacher -- the one that she read

5    that involved all the language.

6         INMATE TATUM:  Right.  Right.

7         PRESIDING COMMISSIONER FISHER:  And you

8    said that you wanted to respond to it and he

9    said no?

10        INMATE TATUM:  Right.  Right.  That's what

11   it was.

12        PRESIDING COMMISSIONER FISHER:  But you

13   kind of didn't take no as an answer?

14        INMATE TATUM:  It's at the decision phase,

15   you know, as my recollection -- it was brought

16   up during the hearing, so in the decision phase,

17   the crime being the primary reason and reason

18   for the denying, you know, is the 115 for added

19   weight, and I just ask him could I rebuttal, and

20   this is during the decision phase.  And

21   Commissioner Moore, being arrogant and

22   Commissioner Moore that he is, is no, you can't.

23   There's no rebuttal.  So that's what that was.

24        PRESIDING COMMISSIONER FISHER:  Right.

25   Okay.  I just wanted to give you an opportunity

26   to a address that because it's part of the

27   record.

39

1        INMATE TATUM:  That's what it was.

2        PRESIDING COMMISSIONER FISHER:  I don't

3   have any other questions.  Do you have anything?

4   Any questions?

5        DEPUTY DISTRICT ATTORNEY DELAGARZA:  I have

6   a question.  The two arrests that the inmate had

7   in '80 and '81.  Those were both domestic

8   violence batteries.  Is that correct?

9        INMATE TATUM:  Yes.

10       PRESIDING COMMISSIONER FISHER:  Okay.

11  Remember to answer to me.

12       INMATE TATUM:  Yes.

13       DEPUTY DISTRICT ATTORNEY DELAGARZA:  I'm

14  sorry.

15       PRESIDING COMMISSIONER FISHER:  I was

16  talking to him.  Go ahead.

17       DEPUTY DISTRICT ATTORNEY DELAGARZA:  And

18  somewhere in here, I read, and I don't see it

19  ever mentioned again, that his father went to

20  prison and that his son also went to prison.  Is

21  that correct?

22       PRESIDING COMMISSIONER FISHER:  He

23  mentioned today that his son is in prison.  Did

24  your dad go to prison?

25       INMATE TATUM:  Yes.

26       DEPUTY DISTRICT ATTORNEY DELAGARZA:  And

27  why did his father go to prison?

40

1      INMATE TATUM:   I can't recall.   I was a kid

2  when he went.

3      PRESIDING COMMISSIONER FISHER:   Okay.

4      DEPUTY DISTRICT ATTORNEY DELAGARZA:   Did he

5  say why his son went to prison?

6      PRESIDING COMMISSIONER FISHER:   I don't

7  think I asked it.

8      INMATE TATUM:   No.

9      PRESIDING COMMISSIONER FISHER:   Why is your

10  son in prison?

11      INMATE TATUM:   I believe robbery.

12      PRESIDING COMMISSIONER FISHER:   Anything

13  else?

14      DEPUTY DISTRICT ATTORNEY DELAGARZA:   Yes.

15  Going back to one of the reports, or all the

16  reports, at one point the Commissioners

17  requested that he get a Cat T.   Did the inmate

18  ever do that?

19      INMATE TATUM:   No, I didn't.

20      DEPUTY DISTRICT ATTORNEY DELAGARZA:   Also,

21  in, I think, the last hearing or the hearing

22  before last, they suggested that he do

23  programming with respect to the fact that the

24  victims in this case were women and the concern

25  was that he had sexual aggression issues.   Did

26  he ever do any self-help or any kind of --

27  anything on that?

41

1    INMATE TATUM:   Excuse me (indiscernible).

2    PRESIDING COMMISSIONER FISHER:   You need

3    the respond to the Panel.

4    INMATE TATUM:   Okay.  Okay.  You said --

5    you -- that you read that in some transcripts of

6    last year's hearing?

7    PRESIDING COMMISSIONER FISHER:   Wait until

8    the Board asks the question.  You have to

9    directly address.  (indiscernible).

10    INMATE TATUM:   Yes (indiscernible).

11    DEPUTY COMMISSIONER MCBEAN:   Hold on.  Is

12    it in the transcript of the hearing or was it in

13    the transcript of the decision?

14    DEPUTY DISTRICT ATTORNEY DELAGARZA:

15    (indiscernible) in the report I read that --

16    where it indicated what the inmate was told to

17    do and I'm trying to find where it was.

18    ATTORNEY RUTLEDGE:   Did the Board note the

19    appeal that was granted after last year's

20    decision regarding that he was -- the therapy

21    issue?

22    PRESIDING COMMISSIONER FISHER:   Did they

23    instruct him to get therapy?

24    ATTORNEY RUTLEDGE:   Yes.  And it's even

25    noted in reports.  I mean, there's an appellant

26    decision that's granted in part by the Board,

27    where it says that he's already been like

42

1   cleared of having to participate in therapy or,

2   so we would --

3       PRESIDING COMMISSIONER FISHER:   I didn't --

4   I don't see that here, but I do know that --

5       ATTORNEY RUTLEDGE:   I have it right here,

6   if you would like to review it?

7       PRESIDING COMMISSIONER FISHER:   That's

8   fine.  I'll tell you this just so you know that

9   I know that almost out of habit, some of the

10  prior Commissioners would say therapy.  We're

11  all aware of the fact that you don't get therapy

12  unless you're CCCMS or EOP.

13      INMATE TATUM:   Okay.

14      PRESIDING COMMISSIONER FISHER:   So then

15  instructing you to therapy --

16      DEPUTY COMMISSIONER MCBEAN:   I think

17  therapy is available.  I would like to see that

18  when you're done with that.

19      PRESIDING COMMISSIONER FISHER:   Yeah.

20      INMATE TATUM:   And back to the

21  representative -- she said that she read it

22  somewhere.  I mean, what document is this --

23      PRESIDING COMMISSIONER FISHER:   Just calm

24  down.  We're -- we're not going to just leave it

25  on the record unsolved.

26      INMATE TATUM:   Okay.

27      PRESIDING COMMISSIONER FISHER:   What --

43

1      DEPUTY COMMISSIONER MCBEAN:   Well, it is a

2   good question though, even if it hasn't been

3   posed in the past.  And I know you're not

4   interested in talking about the crime today.

5      INMATE TATUM:   Right.

6      DEPUTY COMMISSIONER MCBEAN:   I do notice

7   that in terms of your self-help, the main thing

8   you've done is AA, and there was the sexual

9   component of the crime.  Have you tried to do

10  anything at all in terms of self-help on any

11  sexual issues?

12     INMATE TATUM:   No because I -- what is the

13  conviction?  What is the conviction?

14     DEPUTY COMMISSIONER MCBEAN:   Concerning the

15  facts of the crime.

16     INMATE TATUM:   Okay.  But what about the

17  conviction?

18     DEPUTY COMMISSIONER MCBEAN:   I'm asking the

19  question.

20     INMATE TATUM:   (indiscernible) what was the

21  conviction?  I wasn't convicted of no sexual

22  crime.

23     PRESIDING COMMISSIONER FISHER:   Mr. Tatum.

24     INMATE TATUM:   (indiscernible).

25     PRESIDING COMMISSIONER FISHER:   Mr. Tatum

26  (indiscernible) let me give you some advice.

27  You're doing the same thing right now that

44

1  you've been doing in the other hearings that has

2  been getting you into trouble.  If we're trying

3  to go --

4      INMATE TATUM:  Get to what -- what are you

5  trying to get to Ms. Commissioner?

6      PRESIDING COMMISSIONER FISHER:  All right.

7  Get him out of here, please.

8      INMATE TATUM:  Can I have my chronos?  Give

9  me my chronos.

10      PRESIDING COMMISSIONER FISHER:  I'll give

11  them to you later.  I'll give it to your

12  attorney at the end of your hearing.  Just for

13  the record, I am having the officer remove Mr.

14  Tatum from the room.  He is not cooperating.

15  He's being combative and he's argumentative, and

16  we don't need to have him here.

17      ATTORNEY RUTLEDGE:  Can I lodge an

18  objection -- not to that.  But I would just

19  object to the Deputy Commissioner's previous

20  questions regarding the facts of the crime

21  because we don't --

22      PRESIDING COMMISSIONER FISHER:  Let me flip

23  so that we can have it on there.

24      Off the record.

25      DEPUTY COMMISSIONER MCBEAN:  Okay.  We're

26  all right.  We're on Side Two.

27      PRESIDING COMMISSIONER FISHER:  Okay.  Go

45

1  ahead.

2      ATTORNEY RUTLEDGE:   Just to the -- on

3  behalf of Mr. Tatum, I want to lodge an

4  objection specifically -- not to the anger

5  management issues, but specifically to the

6  sexual issues.  Being that Mr. Tatum does not

7  have any prior convictions of any sex acts and

8  that if the Board wants to point to a trial

9  transcript where there was some kind of

10  testimony, that would be different.  But we

11  would object on that there is no conviction or

12  trial transcript indicating that information.

13      DEPUTY DISTRICT ATTORNEY DELAGARZA:   There

14  was a preliminary hearing on this case, and I

15  will give you copies of that next hearing.

16      PRESIDING COMMISSIONER FISHER:   Okay.  That

17  would be great.  That would be good to have.

18  Thank you.  All right.  And based on the fact

19  that -- you know, I don't even know how to

20  respond to that.  I mean, we don't have trial

21  testimony, but we do have the Probation

22  Officer's Report that does have statements of

23  the victims that say that they were told to

24  remove their clothing.

25      DEPUTY DISTRICT ATTORNEY DELAGARZA:   Also,

26  there were statements from codefendants who

27  indicated that -- that it was the inmate.  I

46

1    believe it was Mr. Fernandez, that was one of

2    their names.  Mr. Fernandez indicated -- and

3    that's in the Probation Officer's Report that it

4    was the inmate who --

5        ATTORNEY RUTLEDGE:  I would say --

6        DEPUTY DISTRICT ATTORNEY DELAGARZA:   --

7    that's consistent with what the victim said.

8        ATTORNEY RUTLEDGE:  I would say that it was

9    a codefendant -- I wouldn't object to bringing

10   up the statement of the victims, but as far as

11   the codefendant, I would say there might be a

12   reliability issue there.

13       DEPUTY DISTRICT ATTORNEY DELAGARZA:  There

14   isn't a reliability issue when it's being used

15   to corroborate the victims, and if it was just

16   solely the codefendant, I would say you had a

17   valid argument, but when it's two victims who

18   both indicate it's the inmate and then it's

19   corroborated by a codefendant, I don't think is

20   a reliability issue at all.

21       PRESIDING COMMISSIONER FISHER:  All right.

22   And I agree with that.  If it were just the

23   codefendant, it would be a different issue.  But

24   it's the two victims, and so that it does do is

25   corroborate the fact that he was indeed the one.

26   And I think that under the circumstances with

27   the victim's statements -- although I do want --

47

1  I'd love to have the trial transcripts.  I think

2  that would be very helpful for this particular

3  inmate's hearing.  I think that it's not

4  inappropriate to ask him to at least probe those

5  areas while he's incarcerated.  I mean he's done

6  other stuff too.  There's no reason he can't do

7  this also.  He wasn't convicted obviously of

8  kidnap for rape, but --

9      DEPUTY DISTRICT ATTORNEY DELAGARZA:

10 (indiscernible).

11     PRESIDING COMMISSIONER FISHER:  Okay.  And

12 it does, in fact, go to the elements of the

13 crime and what actually happened.

14     ATTORNEY RUTLEDGE:  Right.

15     PRESIDING COMMISSIONER FISHER:  So whether

16 he was convicted of it or not, if the victims

17 say he was doing it, then it doesn't hurt him to

18 at least consider that this might be an issue

19 that he should explore.

20     ATTORNEY RUTLEDGE:  Okay.

21     DEPUTY COMMISSIONER MCBEAN:  And I might

22 address, even the institution had an arrest

23 suffix on him, which is only as a result of

24 concerns about sex crimes or activity, so from a

25 custodial level --

26     PRESIDING COMMISSIONER FISHER:  Okay.  Did

27 we cover everything?  Can we go to close?

48

1      DEPUTY COMMISSIONER MCBEAN:  I think so.

2      PRESIDING COMMISSIONER FISHER:  You had

3 finished, I think.

4      DEPUTY DISTRICT ATTORNEY DELAGARZA:  Yeah.

5      PRESIDING COMMISSIONER FISHER:  Okay.  All

6 right.  Ms. Delagarza, why don't you go ahead

7 and close.

8      DEPUTY COMMISSIONER MCBEAN:  Will you --

9 were you able to find that comment?

10      DEPUTY DISTRICT ATTORNEY DELAGARZA:  No.

11 I'm going through right now.  I saw it in one of

12 those --

13      DEPUTY COMMISSIONER MCBEAN:  Was it a Board

14 Report where they're telling -- or they were

15 saying what the Panel said or was it in a prior

16 transcript?

17      DEPUTY DISTRICT ATTORNEY DELAGARZA:  It was

18 not a transcript, it was a report, you know, so

19 I know it was a prior hearing.  And I'm trying

20 to find -- it was just something where it said

21 something about -- looking into the sexual

22 component of the crime.

23      PRESIDING COMMISSIONER FISHER:  Okay.

24      DEPUTY DISTRICT ATTORNEY DELAGARZA:  The

25 inmate makes the best argument of why he is not

26 suitable for parole.  Basically, this man still

27 has a tremendous violence potential that is just

49

1   below the surface, as was indicated throughout

2   this hearing.  And going through past hearings,

3   it appears to be a common thread throughout this

4   inmate's incarceration.  What's very troubling

5   about this particular inmate is the, not only

6   the violence that was exhibited, but the

7   potential for additional violence, and that I'm

8   talking about the fact that the two women would

9   have been raped were it not for the fact that

10   the police actually stopped them before they

11   could initiate the crime.  And this was not a

12   robbery as the inmate would like this Panel to

13   believe.  If you go through the facts of this

14   particular case, the victims had already been

15   robbed.  After they were robbed, they forced

16   into a van, and at that point, they were told to

17   disrobe.  So it wasn't a situation where they

18   needed to be taken some place for the purposes

19   of robbery.  They were taken some place, they

20   were robbed, and they were forced into a van

21   with, I believe, four other individuals and

22   there was no reason for doing that other than

23   what was actually stated and that was, they were

24   told to disrobe and the inmate said he was going

25   to fuck them.  So with respect to that, we have

26   the fact that these victims were particularly

27   vulnerable.  What's also interesting about this

50

1  inmate, is that he has two battery/assault

2  arrests. Again, the victim in those particular

3  cases was a woman, so we have that whole issue

4  of his. He seems to be targeting women as

5  victims. And going throughout his CDC 115s,

6  even though their not that recent, again, what

7  it shows is that this man has a serious violence

8  potential. He has serious anger management

9  issues, and until those are resolved and until

10  the issues relating to the sexual component in

11  this particular case are resolved favorably for

12  the inmate, he will continue to pose a threat.

13  He will not be able to do that until he admits

14  that and does something with respect to having

15  insight into that aspect of the crime. Thank

16  you.

17      PRESIDING COMMISSIONER FISHER: Okay.

18  Thank you. Before you start, Ms. Rutledge, let

19  me put a couple of things on the record. First

20  of all, regarding his appeal. I want to make

21  sure that we respond to what he talked about.

22  And the appeal, it does say that the Board

23  apparently indicated that he -- let's see. They

24  told him to -- someone made the comment that he

25  needed more therapy before he could be found

26  suitable for parole, apparently. And it says,

27  prisoner contends that the Panel lacked

51

1    sufficient evidence that he needs therapy.

2    Appeal granted.  It says a review of the Mental

3    Health Evaluation finds that there are no

4    recommendations for therapy treatment in the

5    prisoner's case.  Therefore, the wording and

6    therapy will be stricken from Page 508, Line

7    Seven of the decision.  And that's all it says

8    related to that issue.  Also, I have found, and

9    I am continuing to look, that I have found at

10   least one Commissioner that was, Commissioner

11   Lawlend (phonetic), in 2001, who in the decision

12   was talking to him about anger management.  And

13   says it looks like a problem with your anger

14   management or issues with women and she is

15   suggesting that he look into that issue and

16   what's available out there for him.  And that's

17   in the middle of a conversation, but that's just

18   the specific sentence that I found in her

19   decision.  I looked at that, and I'm continuing

20   to look at anything else that might be related

21   to that.  So if you'd like to go ahead and

22   close.

23       **ATTORNEY RUTLEDGE:**  Thank you.  I would

24   just note on the issue of anger management, that

25   there is a recent chrono date, August 5th, where

26   he is currently involved in an anger management

27   program.  It says that with these strategies,

52

1   INMATE TATUM is now capable of understanding his

2   anger, controlling his emotions.  He is

3   commended for his efforts to become a productive

4   citizen, so it looks like he's -- and that was

5   done by Superintendent Charlie D Walker.  So it

6   looks like he is addressing that issue.  And I

7   think -- I want to say that when (indiscernible)

8   she said that he would want us to believe, but

9   he hasn't talked about the facts of the crime.

10   I don't think -- we don't really know whether or

11   not he's -- he has said he has accepted the

12   facts as the Board read them, so I don't think

13   he is trying to mislead the Panel on facts of

14   the crime.  I'm just going through his

15   suitability factors.  He actually prepared a

16   statement, which I'm glad he did now that he's

17   not in the room.  But I'll simply read from it

18   on his behalf.

19       PRESIDING COMMISSIONER FISHER:  Thank you.

20       ATTORNEY RUTLEDGE:  He has not had any

21   disciplinary write ups in 16 -- 15 or 16 years.

22   He has done a number of things while he's been

23   incarcerated that the Chair fully covered

24   regarding his -- he finished up a voc trade of

25   small engine repair.  He's been working in the

26   furniture factory since '02.  He's got good

27   chronos for that.  Also, for sewing, he's been

53

1    active in the institution musically playing with
2    the institutional band.  So I think he is
3    programming, and he did completely his GED in
4    1991, and he has served 23 years.  I would note,
5    too, that he was cooperative with police at the
6    time of his arrest, which is noted in his file.
7    He has firm parole plans to reside with his
8    parents as indicated in letters provided by his
9    fiancée.  They have looked into him getting
10   additional training.  He does want to go to
11   truck driver school, but it notes in a Board
12   Report that has skills under the assessment of
13   the Board Report dated November 2004, it says
14   Tatum should have successful parole because he
15   has marketable skills and letters of support for
16   residence and employment.  So he does have
17   something to go home to and firm realistic plans
18   regarding employment.  And he also prepared a
19   response to the 3042 notice.  He says that in
20   1982, the DA offered him a plea deal, which all
21   parties agreed to the terms of the plea
22   agreement.  It was him to plead guilty to two
23   counts of kidnap, both to run concurrently, and
24   the idea the sentence was life with parole.  Now
25   having served 23 years, the DA continues to
26   oppose parole primarily on the circumstances
27   surrounding the commitment offense.  That will

54

1   never change.  He indicates the plea agreement

2   was life without parole not life without -- was

3   life with parole, not life without.  Having

4   exceeded the statutory time prescribed by law

5   for the commitment offense by six years, and it

6   also -- with the records showing that he is

7   remorseful and rehabilitated and having been

8   duly punished for the crime.  So I guess he's

9   responding to the DA's 3042 notice.

10   **DEPUTY COMMISSIONER MCBEAN:**  Let me respond

11   to that on record.  The Board is not bound by

12   any plea agreements that were made by the

13   District Attorney's office.  The Board is

14   charged under the law to determine suitability

15   based on the inmate's factors of suitability

16   versus his factors of unsuitability.  And what

17   he agreed to with the District Attorney's office

18   as far as what his sentence would be, was

19   between the inmate and the District Attorney.

20   If he is going to be found suitable for parole

21   and released from prison, he has to meet the

22   requirement of suitability and satisfy the Board

23   and then the governor that he's indeed

24   rehabilitated and suitable for parole.  Go

25   ahead.

26   **ATTORNEY RUTLEDGE:**  Okay.  What he's been

27   doing -- some other details about his post-

55

1  conviction programming.  He's been a member of

2  AA for 18 years, or at least he provided chronos

3  to the Board going as far as back as '89.  That

4  we have a record of, I believe.

5      DEPUTY COMMISSIONER MCBEAN:  NA/AA is --

6  actually it looks like it started in '90 and

7  looks like he started doing some videos in '89,

8  so, yeah.

9      ATTORNEY RUTLEDGE:  Okay.  And it looks

10  like in '88 he made a video on the effects of

11  drugs and alcohol abuse while at DVI where they

12  were reaching out to community children.  In

13  '98, he indicates that he completed a parenting

14  class.  And '99, I think he covered that he

15  volunteered for the music group.  He's been

16  working for four years in the furniture factory.

17  He's also -- he indicates in '97, completed two

18  sessions of life skills therapy with staff

19  psychologist Dr. Bateman and Dr. Terini.  He

20  says he completed a three-hour video session,

21  anger management.  And just reiterating the

22  psych evaluation, the recent one, assessment of

23  dangerousness if released in the community, his

24  violence potential would be no higher than the

25  average citizen in the community.  And Mr.

26  Tatum, in closing, would like to say that he is

27  a first termer.  The record reflects his sincere

56

1    remorse for the victims of the crime.    He does

2    today accept the facts of the crime as read by

3    the Board.    He has in previous reports expressed

4    and taken full responsibility and accountability

5    for his actions in the commission of this crime.

6    And that's documented in several places.    He has

7    worked really hard to program.    And he has -- he

8    did talk to the Board how he's -- why he hadn't

9    had any write ups in the last 16 years.    He says

10   it's a matter of him maturing and understanding

11   what's acceptable behavior and what's not.    And

12   he says he has shown -- she's wanting the Board

13   to recognize that he has tried very hard while

14   he's been in confinement to really turn things

15   around, and that he's really willing to work

16   hard at living a law-abiding life, and he

17   requests a grant of parole today.    Thank you.

18           **PRESIDING COMMISSIONER FISHER:**    Thank you.

19   We will go to recess.

20                       R E C E S S

21                       --o0o--

22

23

24

25

26

27

57

1          CALIFORNIA BOARD OF PAROLE HEARINGS.

2                    D E C I S I O N

3        DEPUTY COMMISSIONER MCBEAN:   Back on

4     record.

5          PRESIDING COMMISSIONER FISHER:   Thank you.

6     I want to note for the record that everyone who

7     was previously in the room and identified

8     themselves have returned to the room, with the

9     exception of Mr. Tatum.   And as was noted on the

10    record earlier, I asked the officers to remove

11    Mr. Tatum after he became quite combative and

12    argumentative during his hearing.   The Panel has

13    reviewed all of the information received from

14    the public and relied on the following

15    circumstances in concluding that Mr. Tatum is

16    not yet suitable for parole and would pose an

17    unreasonable risk of danger to society or a

18    threat to public safety if released from prison.

19    This is going to be a two-year denial.

20    Certainly the commitment offense was one of the

21    things we considered.   This commitment offense

22    was a very serious crime.   It was a very long

23    time ago and has been said many times before at

24    many different hearings, the offense will never

25    change.   However, in light of other areas that

26    I'm going to be covering, other issues that

27    **WILLIE TATUM C-55580 DECISION PAGE 1 9/15/05**

1   we're U to be discussing, the commitment offense
2   is certainly still very viable reason as part of
3   this denial.  This was a kidnap for robbery of
4   Susan Becker and Peggy Simon.  This was an
5   offense that was carried out in a very callous
6   manner.  Obviously, there were multiple victims,
7   and the victims were abused during this offense
8   because they were robbed, and then they were
9   forced into a van with apparently four men, Mr.
10  Tatum being one of them.  And Mr. Tatum,
11  according to the victims and corroborated by one
12  of his crime partners, told them to take off
13  their clothes because he was going to fuck them.
14  Whether or not a hand was laid on them, that was
15  abusive.  Those women were terrified.  There's
16  no doubt about it.  This was a horrible crime.
17  It was a crime where these young women had
18  absolutely no ability to protect themselves.
19  They were outnumbered, and they were quite
20  clearly going to be sexually abused had not the
21  police already been called and proceeded on
22  their behalf before they were raped.  The
23  prisoner does have a prior criminal history, and
24  he does have unstable social history.  He has --
25  he has a history of law enforcement contact
26  related to domestic violence issues in
27  **WILLIE TATUM C-55580 DECISION PAGE 2 9/15/05**

59

1  particular.  And in the context with law

2  enforcement that were listed under his prior

3  criminal history, there was no disposition or

4  else they were dismissed, but he's indicated to

5  us today that there were fights with the wife,

6  and he indicated to the probation officer in

7  discussing this arrest that he had hit her.

8  Also, notably she stabbed him.  He also has an

9  unstable social history related to the fact that

10  he was between the ages of 13 and 15, by his own

11  account a member of the Crips.  He started

12  smoking marijuana at the age of 14.  He was

13  involved in using other drugs and also in the

14  use of alcohol.  He said that at the time of the

15  crime, or at the time being incarcerated, he

16  didn't believe he was an alcoholic, but looking

17  back, he believe now that he was.  He dropped

18  out of school in the 11th grade.  He also

19  fathered a child with a woman he was not married

20  to.  He's been programming while he's been

21  incarcerated.  He completed his GED in 1991.  He

22  has vocations.  He does seem to have a

23  marketable skill, and he has participated in

24  some self-help over the years.  He's been

25  involved in substance abuse programming since

26  about 1989.  However, he certainly has not

27  **WILLIE TATUM C-55580 DECISION PAGE 3 9/15/05**

1   successfully participated in beneficial self-

2   help as was indicated by his behavior in the

3   hearing today. He's had six 115 disciplinary

4   reports during his incarceration. The last one

5   was in 1989. He's had four 128(a) counseling

6   chronos. The last one, 1990. The psychological

7   evaluation is dated -- let's see here. It's

8   dated 8/12/03. It's authored Dr. Gamard, and it

9   says it's felt that he would pose a less-than-

10   average risk for violence when compared to the

11   Level Two inmate population, and if released to

12   the community, would be estimated to be no

13   higher than the average citizen in the

14   community. After today's hearing, I want to

15   note for the record that I respectfully disagree

16   with Dr. Gamard's evaluation. He does have

17   parole plans. He would live with his mother and

18   her husband, his stepfather. He does have a

19   fiancée who also indicated her support.

20   Although, once again, I want to note for the

21   record he's not divorced from his wife yet, and

22   stated today that he would take of those matters

23   when he's released on parole. The Hearing Panel

24   notes that in response to 3042 notices, the

25   District Attorney of Los Angeles County had a

26   representative at the hearing today who spoke in

27   **WILLIE TATUM C-55580 DECISION PAGE 4 9/15/05**

61

1  opposition to a finding of suitability at this

2  time. The Panel finds that the prisoner needs

3  to continue to participate in self-help in order

4  to understand and cope with stress in a

5  nondestructive manner, specifically also, in

6  order to continue to address his anger issue

7  ands his inability to control his temper, as

8  once again was evidenced today at this hearing.

9  In lieu of his history and his continued

10  negative behavior, there's no indication that he

11  would behave differently if paroled. We want to

12  commend him for the work that he's been doing.

13  He's been disciplinary free since 1989, and

14  that's a long time, and he has been programming.

15  However, currently the positive aspects of

16  behavior do not outweigh the factors of

17  unsuitability. In a separate decision, the

18  Hearing Panel finds that it's not reasonable to

19  expect that parole would be granted at the

20  hearing during the following two years.

21  Specific reasons for this finding are as

22  follows: Once again, first of all, the

23  commitment offense. This was the kidnapping of

24  two women by several men. There Tatum was

25  aggressive in this crime. He was identified by

26  both women as well as one of his crime partners

27  **WILLIE TATUM C-55580 DECISION PAGE 5 9/15/05**

62

1   as being the one who told them to take their

2   clothes off, that they were going to get fucked.

3   And that kind of behavior toward women is

4   concerning in light of the combative history

5   that he had with his wife.  Certainly, the fact

6   that the Commissioners today were women did not

7   escape our notice either.  In fact, all of the

8   people at the table with Mr. Tatum today were

9   women, and he was extremely combative and

10  extremely angry.  Almost from the moment that he

11  walked in the door.  He from the time that he

12  walked in and we started to talk to him, he had

13  visible attitude about him that made it clear

14  that he wasn't pleased about the hearing, that

15  he wasn't particularly interested in what

16  anybody in the room had to say.  And that he

17  wasn't real interested in being cooperative.  He

18  did settle down for a while and started

19  answering questions, but he very quickly became

20  angry and inappropriate when questions before

21  asked about his insight into his own behavior.

22  I want to note for the record that it's my

23  feeling about this hearing that Mr. Tatum was

24  given every opportunity to respond to questions

25  in an appropriate manner, and then instead of is

26  simply answering our questions and even possibly

27  **WILLIE TATUM C-55580 DECISION PAGE 6 9/15/05**

63

1    saying, you know, I've already talked about this

2    or I'm troubled by the fact that this question

3    keeps coming up and here is why, instead what he

4    did was, he became very angry and very

5    combative, and I think that it's important that

6    Mr. Tatum really reflect on that because there

7    seems a real history of that in dealing with the

8    Commissioners on the Board of Prison Terms.  And

9    that completes the reading of the decision.  Do

10   you have any comments, Commissioner?

11        **DEPUTY COMMISSIONER MCBEAN:**   No further

12   comments.

13        **PRESIDING COMMISSIONER FISHER:**   Thank you.

14   That completes the hearing.

15                      --oOo--

16

17

18

19

20

21

22

23   PAROLE DENIED TWO YEARS

24   THIS DECISION WILL BE FINAL ON:_____

25   YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT

26   DATE, THE DECISION IS MODIFIED.

27   WILLIE TATUM C-55580 DECISION PAGE 7 9/15/05

# EXHIBIT B

I certify that this image is a true copy per master certification on this fiche.

Name Martha Oliva Date 12-3-82

I certify that this image is a true copy per master certification on this fiche.

Name Sonnie L. Hanson Date 12-3-82

1   AT THEM AND TOLD THEM TO GET BACK. THEY COMPLIED WITH THIS DEMAND,

2   AT WHICH TIME VICTIMS WERE FORCED TO DRIVE AWAY FROM THE LOCATION.

3   TATUM ORDERED SUSAN BECKER TO FOLLOW THE VAN IN FRONT OF HER. THEY

4   DROVE A SHORT DISTANCE, DURING WHICH TIME TATUM AND JACKSON ROBBED

5   THE VICTIMS OF THEIR JEWELRY. THEY THEN HAD THE VICTIMS STOP THEIR

6   CAR, AND THEY TRANSFERRED THEM INTO THE VAN.

7        INSIDE THE VAN, TATUM ORDERED THE VICTIMS TO REMOVE

8   THEIR CLOTHING. FERNANDEZ ATTEMPTED TO UNBUTTON PEGGY SIMONIS

9   PANTS BUT WAS TOLD TO WAIT UNTIL THEY GOT ON THE FREEWAY. IN THE

10   MEANTIME, POLICE HAD BEEN CONTACTED AND THE VAN IDENTIFIED. THE

11   VAN WAS SPOTTED, AND A CHASE ENSUED. THE CHASE LASTED A SHORT TIME

12   AND ENDED WITH THE VAN CRASHING INTO A TREE. THE FIVE DEFENDANTS

13   THEN ATTEMPTED TO ESCAPE. TATUM AND GARRINGER WERE ARRESTED

14   IMMEDIATELY AT THE SCENE. SEVERAL HOURS LATER, DEFENDANTS WILLIAMS

15   AND JACKSON WERE ARRESTED NEAR THE AREA WHERE THE VAN CRASHED.

16   LATER THAT SAME DAY, THE FIFTH DEFENDANT, FERNANDEZ, WAS ARRESTED

17   AT HOME ON THE BASIS OF A RAMEY WARRANT.

18        THE VICTIMS WERE VISIBLY SHAKEN BUT PHYSICALLY

19   UNHURT. THE JEWELRY WAS FOUND IN POSSESSION OF TATUM AND GARRINGER.

20   THIS PROPERTY WAS RECOVERED. TATUM TOLD THE POLICE WHERE HE HAD

21   THROWN THE GUN, WHICH WAS RECOVERED ALONG WITH THE KNIFE USED BY

22   JACKSON.

23        TATUM TALKED FREELY ABOUT THE OFFENSE AND ABOUT HIS

-7-

# EXHIBIT C

STD. 400A (8-71)

Case 3:08-cv-00814-TEH    Document 3    Filed 09/02/2008    Page 50 of 50
CONTINUATION SHEET
FOR FILING ADMINSTRATIVE REGULATIONS
WITH THE SECRETARY OF STATE
(Pursuant to Government Code Section 11380.1)

(c)   Matrix for Kidnapping for Robbery or Ransom.

## CIRCUMSTANCES

| 2282(c) KIDNAP FOR ROBBERY OR RANSOM Penal Code §209 (in years and does not include post conviction credit provided in §2290) | A. Minor Movement Movement was of short duration and resultant location would not substantially increase risk of harm. | B. Extensive Movement Movement was of lengthy duration or resultant location would substantially increase risk of harm. | C. Hostage Victim was taken as hostage. | D. Planning The crime involved intricate planning |
|---|---|---|---|---|
| I. Minor Injury Victim unharmed or received minor injury. | 8-10-12 | 9-11-13 | 10-12-14 | 11-13-15 |
| II. Victim Assaulted Victim was sexually assaulted or otherwise seriously injured or assaulted | 9-11-13 | 10-12-14 | 11-13-15 | 12-14-16 |
| III. Major Injury Victim's major injuries required extensive treatment or the victim was seriously disabled. | 10-12-14 | 11-13-15 | 12-14-16 | 13-15-17 |
| IV. Death Victim died. | Use matrix provided in Section 2282(b). | | | |

V I C T I M

DO NOT WRITE IN THIS SPACE

SUGGESTED   BASE   TERMS

31919-750 3-75 25M

# EXHIBIT 2

**FILED**

Los Angeles Superior Court

APR 10 2007

John A. Clarke, Executive Officer/Clerk

By _Joseph M. Pulido_, Deputy

JOSEPH M. PULIDO, S.C.C.
233210

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

In re,                                    ) Case No.: BH004120
                                          ) ORDER RE: WRIT OF HABEAS CORPUS
WILLIE E. TATUM, Jr,                      )
                                          )
            Petitioner,                   )
                                          )
        On Habeas Corpus                  )
                                          )
_____  )

    The Court has read and considered petitioner's Writ of Habeas Corpus filed on June 29, 2006. Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings ("Board") in parole matters, the Court concludes that the record contains "some evidence" to support the Board's finding that petitioner is unsuitable for parole (See Cal. Code Reg. Tit. 15, §2402; _In re Rosenkrantz_ (2002) 29 Cal.4th 616, 667 (hereafter _Rosenkrantz_).)

    Petitioner was received into custody on November 2, 1982 after being convicted of two counts of kidnapping and robbery with the use of a deadly weapon. Petitioner received a term of seven years to life with a minimum eligible parole date of February 28, 1989. The record reflects that on May 21, 1982, the petitioner and four other men kidnapped two female victims at 2:00 a.m. when petitioner, armed with a loaded revolver, forced his way into the victims' car. A co-defendant threatened the victims with a knife. The victims were forced to drive a short distance and were robbed of their jewelry. The victims were then ordered to enter a van where

1  the remaining co-defendants waited.  Petitioner demanded that the women take off their clothes

2  and threatened to sexually assault them.  The police, who had been contacted by the victims'

3  friend, then identified the van.  Petitioner was arrested after a brief chase.

4      The record reflects that the Board found petitioner unsuitable for parole after a parole

5  consideration hearing held September 15, 2005.  Petitioner was denied parole for two years.  The

6  Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk

7  of danger to society and a threat to public safety.  The Board based its decision on several

8  factors, including his commitment offense.

9      The Court finds that there is some evidence to support the Board's finding that multiple

10  victims were attacked in the same incident (Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(A).)

11  The Board also found that the offense was carried out in "a very callous manner" (Reporter's

12  Transcript, 9/15/05, p 58).  There is some evidence to support the finding that the offense was

13  carried out in manner that demonstrates an exceptionally callous disregard for human suffering

14  (Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(D).)  An "exceptionally callous disregard for

15  human suffering" means the offense in question must have been committed in a more aggravated

16  or violent manner than that ordinarily shown in the commission of that offense.  (*In re Scott*

17  (2004) 119 Cal. App.4[th] 871, at 891).  Here, the two female victims were outnumbered by five

18  male attackers. The victims were ordered to take off their clothes and threatened with sexual

19  assault.

20      The record reflects that the Board relied on additional factors in denying parole, and there

21  is some evidence to support that decision. There is some evidence that petitioner is unsuitable for

22  parole due to his "history of unstable or tumultuous relationships with others." (Cal. Code Regs.,

23  tit. 15, §2402, subd. (c)(3).)  The record reflects that the petitioner "has a history of law

24  enforcement contact related to domestic violence issues" (RT, pp.58-59).  In determining

25  suitability, the Board may consider "all relevant, reliable information available" (Cal. Code

26  Regs., tit. 15, §2402, subd. (b).) The record shows that petitioner's behavior at the parole

27  suitability hearing was uncooperative and combative (RT, 44).  There is some evidence to

28  support the Board's finding that petitioner could benefit from continuing to participate in self-

ep                                              2

1  help to "address his anger issues and his inability to control his temper" (Id, p. 61) based on his

2  conduct at the parole suitability hearing.  Although the Board commended petitioner for the

3  positive aspects of his behavior, they found that his positive behavior did not outweigh the

4  factors of unsuitability.

5       Petition for writ of habeas corpus is denied.

8  Dated: ___4/10/07___

          STEVEN VAN SICKLEN
          Judge of the Superior Court

10  Clerk to give notice.



ep

3

# EXHIBIT 3

Name  Willie Earn Tatum Jr.

Address  P.O.Box 689, ED-90/Low

Soledad, California

93960-0689

CDC or ID Number  C-55580

ORIGINAL

COURT OF APPEAL - SECOND DIST.

F I L E D

JUL 1 3 2007

JOSEPH A. LANE _____ Clerk

_____ Deputy Clerk

California Court of Appeals

Second Appellate District
*(Court)*

| | |
|---|---|
| Willie Earn Tatum Jr. | |
| Petitioner | |
| vs. | |
| Ben Curry, Warden | |
| Respondent | |

PETITION FOR WRIT OF HABEAS CORPUS

No. B200514

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

PETITION FOR WRIT OF HABEAS CORPUS
Assigned to DIVISION FOUR

Page one of six

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h).

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? [ x ] Yes. If yes, continue with number 13. [  ] No. If no, skip to number 15.

13. a. (1) Name of court: __Superior Court, Los Angeles County__

    (2) Nature of proceeding (for example, "habeas corpus petition"): __Habeas Corpus__

    (3) Issues raised: (a) ____Due Process violation__

       (b) _____

    (4) Result (Attach order or explain why unavailable): __Denied  See attached  Exhibit (D)__

    (5) Date of decision: __April 10th, 2007 Case No# BH004120__

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

       (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____
N/A
_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_____
N/A
_____

16. Are you presently represented by counsel? [  ] Yes. [ X ] No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? [  ] Yes. [ X ] No. If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
__See Attached Superior Court denial Case No# BH004120__

__SEE Exhibit (D)__

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: July 9, 2007

▶ _Willie Earl Tatum Jr._
      (SIGNATURE OF PETITIONER)

MC-275 (Rev. January 1, 1999)

PETITION FOR WRIT OF HABEAS CORPUS

Page six of six

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

SEE ATTACHED

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time (when) or place (where). *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

SEE ATTACHED

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

1  This case arises out of the repeated denials of Parole to
2  Petitioner, Willie E. Tatum Jr., a State prisoner who is a first termer
3  with one arrest as a juvenile and three arrest as an adult. He also
4  plead guilty to two(2), counts of Kidnap/Robbery ran concurrent and
5  was sentenced to life with the possibility of Parole. Throughout his
6  confinement his prison programing and performance has contributed to
7  him becoming an excellent candidate for Parole.

8  Throughout his incarceration he has participated in programs to
9  help better himself such helpful programs such as: Anger
10  Management, "AA", Life Skills, have received favorable and supportive
11  Psychological evaluations from staff Psychologist over the years and
12  have establish an excellent work record documented as exceptional an
13  above average ratings. In short, during his Twenty five(25), years in
14  prison and for the past eighteen(18), years being disciplinary free
15  along with positive programing, for all the above stated
16  accomplishment these factors are not truly considered within
17  Petititoner's Parole hearing.

18  Furthermore, the evidence of petitioner's performance while
19  incarcerated is particularly significant. As the Supreme Court has
20  recognized, "The behavior of an inmate during confinement is critical
21  in the sense that it reflects the degree to which the inmate is
22  prepared to adjust to Parole release" Greenholtz, 442 U.S. at
23  Pg.15,99,S.ct.2100.

24  Petitioner has appeared before the Parole Board on twelve(12),
25  occasions, each time being denied Parole solely on the commitment
26  offense. These denials are percisely what the Supreme Court was
27  talking about in Greenholtz v. Nebraska, 442 U.S. at pp.7-8
28  //

1   As the court in Greenholtz, said that,"To insure that a
2   state-created Parole scheme serve the public interest purpose of
3   rehabilitation and deterrence,the Parole Board must be cognizant not
4   only of the factors required by state statute to be considered,but
5   also the concept embodied in the constitution requiring due process
6   of law. See also, Biggs v. Terhune,334 f.3d 910,at 916 (9th
7   Cir.2003).

8       These factors underscore why the court in In re Scott(2),133 Cal.
9   App.4th 573, at pg.595,took pains to reiterate that "The commitment
10  offense can negate suitability[for parole],only if circumstances of
11  the crime... rationally indicate that the offender will present an
12  unreasonable public safety risk if release from prison. "Thus,as this
13  court of Appeal recently concluded in the matter of In re Lee,2006
14  DJDAR 13961 at pg.13963,the test is not whether "Some evidence"
15  supports the reasons the Parole Board cites for denying parole,but
16  whether "Some evidence" indicates a Parole release unreasonably
17  endangers public safety. (Cal. Code Regs.,title,15.§2402
18  subd.(a),[Parole denied if prisoner "will pose an unreasonable risk
19  of danger to society if released from prison."] Therefore,"Some
20  evidence" of the existence of a particular factor dose not
21  necessarily equate to some evidence the parolee's release
22  unreasonably endangers public safety.Id.

23      Thus,The court must view the Parole Board's reasons for denial of
24  petitioner's Parole within the context of the other factors it must
25  consider to see if some evidence shows he continues to pose an
26  unreasonable risk to public safety.In re Scott,supra,133 Cal.App.4th
27  at pg.594-595,applying that test petitioner's asserts the court will
28  find no evidence that he is likely to commit another crime or that
    his release would unreasonably endanger the public.

1  Petitioner is not attempting to minimize the seriousness of his
2  offense of 25,years ago,for which society has legitimately punish
3  him,however,no reasonable possibility exists that petitioner will
4  reoffend other than the instant case petitioner's criminal history is
5  minimal to say the least,for there in NO prior convictions one arrest
6  as a juvenile and three arrest as an adult,(See Exhibit (A)
7  2005 Board Hearing transcripts(hereinafter"HT"),at pg.10,Lns.6-27;
8  pg.11,Lns.1-27; pg.12,Lns.1-6)
9  Petitioner is now a middle age man of 50,years of age and who has
10  accomplish much during his incarceration,for he has acquired an
11  education and vocations,has taken numerous life skills classes
12  providing him with the ability to cope with stress an anger,none of
13  which he possessed at the age of 25,years of age when he committed
14  the offense.
15  The primary reason the Parole Board cites for its denial of parole
16  is,"The nature of petitioner's crime" unchanging factors
17  therefore,the board's decision is not supported by some evidence.
18  Petitioner contends the Superior court erred,when it summarily denied
19  the petition and failed to identify what evidence contained in the
20  record supported the board's finding of unsuitability. Petitioner,is
21  unclear as to whether the court found that "Some evidence" in the
22  record supported the reasons the board cites for denying parole,or
23  whether "some evidence" indicates his release unreasonably endangers
24  public safety.;In re Scott,2006 DJDAR 13961 at p.13963;(See
25  Exhibit(D),The decision from the Superior court denying the petition
26  on April 10th,2007)
27  As this court of Appeal found in Lee,"some evidence" of the existence
28  of a particular factor does not necessarily equate to some evidence
the parolee's release unreasonably endangers public safety. Id. at
p.13963.                              (3)

1  Furthermore,this court concluded,"The test is not whether some
2  evidence supports reasons the the [Board] cites for denying parole,but
3  whether some evidence indicates a parole release unreasonably
4  endangers public safety.(Cal. Code Regs.,title 15,§2402
5  subd.(a),"Parole denied if prisoner"will pose unreasonable risk of
6  danger to society if release from prison."];See, e.g., In re
7  Scott,(2005),133 Cal. App.4th 573,595 [The commitment offense can
8  negate suitability for parole only if circumstances of the crime...
9  rationally indicate that the offender will present an unreasonable
10 safety risk if releases from prison."]

11    Moreover,in accordance with the court of Appeal decision in In re
12 Lee,the Superior court's denial of the petition failed to reveal the
13 Board's reason's of unsuitability within the contex of the other
14 factors it must consider to see if some evidence shows petitioner
15 continues to pose a current an unreasonable risk to public safety.
16 (2006) DJDAR at pp.13963; See In re Scott,supra,133 Cal.App.4th at
17 pp.594-595. For the above stated reasons .the petition should be
18 return to the Superior court for review consistent with this court of
19 Appeal's view's in In re Scott,(2006),DJDAR !#(¢!.

20 **"The Board of Parole Hearings Decision Denying Parole Did Not Comport**
   **with Due Process"**
21    On September 15th,2005,Petitioner's twelfth(12th),Parole
22 consideration hearing was held. The Board of Parole Hearings
23 (Board),again denied parole for a period of two(2),years. In the
24 Board's decision to deny Parole the Board concluded that,"Petitioner
25 continued to pose an unreasonable risk of danger to society or a
26 threat to public safety if released from prison",The Board relied
27 primaraly on the commitment offense the Board found that the offense
28 "Was a very serious crime","The offense was carried out in a very

callous manner","There were mutiple victims"
See exhibit (A) 2005 Board's decision transcripts "HT" at
pg.57,Lns.12-26; pg.58,Lns.4-6

(4)

1  Parole suitability decisions for inmate serving indeterminate life
2  terms are made,in the first instance by the Board. In re Scott,(2004),
3  119 Cal. App.4th 871,884-885. The Board has broad discretion and must
4  normally set Parole relase  in a manner that provides uniform terms
5  for offenses of similar gravity an magnitude with respect to public
6  safety(ibid;Penal Code section,§3041,subd.(a),and must set a Parole
7  date unless it determines that the gravity of the current or past
8  convicted offense or offenses are such that public safety requires a
9  more  lengthier  period  of  incarceration.In  re  Scott,supra  at
10 pp.885;Penal Code section §3041 subd,(b). That decision is guided in
11 turn  by  regulations  directing  the  Board's  consideration  to  six
12 (6),nonexclusive  circumstances  tending  to  show  unsuitability,
13 California  Code  of  Regulations,tile  15.,section  §2402,subd.(c),and
14 nine  (9),tending  to  show  suitability  id.,section  §2402,subd.(d),In
15 re Scott,supra at pp.897.

16 According  to  the  applicable  regulations  circumstances  tending  to
17 establish unsuitability for Parole are that the prisoner:(1),committed
18 the  offense  in  an  especially  heinous,atrocious,or  cruel
19 manner;(2),possesses a previous record of violence;(3),has an unstable
20 social  history;(4),previously  has  sexually  assaulted  another
21 individual in a sadistic manner;(5),has a lengthy history of severe
22 mental  problems  related  to  the  offense;(6),has  engaged  in  serious
23 misconduct  while  in  prison.(Cal.  Code  Regs.,title  15.,section
24 §2402,subd.(c),In  re  Rosenkrantz,(200),29  Cal.4th  616,653-64  fn.
25 omitted.

26 Circumstance(1),is  supported  where  (a)  multiple  victims  were
27 attacked,injured,or killed in the same or separate incidents;(b),The
28 offense was carried out in a dispassionate and calculated manner,such
as an execution-style murder;(c),The victims was abused,defiled,or
mutilated during or after the offense;(d),The offense was carried out

1 in a manner that demonstrates an exceptionally callous disregard for

2 human suffering;and(e),The motive for the crime is inexplicable or

3 very trivial in relation to the offense, Cal. Code Regs.,title

4 15.section §2402,subd.(c),(1)",Rosenkrantz,at pp.653,fn.11.

5 Overmore, The court of appeal recently concluded in the matter of In

6 re Lee,(2006),DJDAR 13961 at p.13963,the test is whether "some

7 evidence" supports the reasons the board cites for denying parole,but

8 whether "some evidence" indicates a parolee's release unreasonably

9 endangers public safety.

10 Cal. Code Regs. title 15. section §2402 subd.(a) [parole denied if

11 prisoner "will pose an unreasonable risk of danger to society if

12 released from prison"] therefor,"some evidence" of the existence of a

13 particular factor in the commission of a crime such as "Multiple

14 victims",dose not necessarily equate to some evidence the parolee's

15 release unreasonably endangers public safety.Id.

16 The Superior court in its denial of the petition agreed with the

17 board in its denial of parole that the offense involved"Multiple

18 victims",Cal Code Regs.,title 15., section §2402 subd.(c)-(a) "Multiple

19 victims" were attacked,injured,or killed in the same or separate

20 incidents.

21 There were multiple victims involved in the commission of the crime

22 however the board has in its discretion has recharacterized the offense

23 making it to appear to be much more serious or violent than what

24 actually took place in the commission of the crime. Petitioner is not

25 attempting to minimize the seriousness of this offense of 25,years

26 ago,for which society has legitimately punish him. Commissioner Fisher

27 stated on record at petitioner's parole hearing held on 9/15/05,"That

28 the panel accepts the finding of the court to be true"(See Exhibit (A)

'HT" at pg.4,Lns.10-14)

(6)

1  Furthermore, petitioner with the agreement of the District Attorney's
2  office of Los Angeles county plead guilty to the offense from the
3  plea agreement that was offered to an accepted by petitioner by way
4  of the District Attorney's office for the conviction, for there wasn't
5  a trial. The facts of the offense would be found in the
6  (1982), Probation officer's report and the Superior
7  court(1982), sentencing transcripts an in viewing both of the said
8  mention transcripts in their entirety the court would see that the
9  recharacterization of the offense viewed by Commissioner Fisher is
10 different from the finding of the Superior court and the probation
11 report.

12 Moreover, [Commissioner Fisher]:"Obviously, there were multiple
13 victims and the victims were abused during the offense because they
14 were robbed whether or not a hand was laid on them, that was abusive.
15 (See Exhibit(A)"HT"at pg.58, Lns.6-15)

16 The (1982), Probation officer's report found that, "The victims were
17 visibly shaken but physically unhurt", (See Exhibit(B), Probation
18 report, at pg.7, Lns.18-19); (See also Exhibit(C), (1982), Superior court
19 sentencing transcripts, at pg.2, Lns.22; pg.3, Lns.9-11), The court found
20 that, "There was no or little harm inflicted upon them, "These women
21 were not abused or injured in the commission of this crime as
22 Commissioner Fisher views this offense.

23 Regulations provides that circumstances tending to establish
24 suitability for parole are that the prisoner, (1) does not possess a
   record of violent crimes committed while a juvenile; (2) has a stable
25 social history; (3) has shown signs of remorse; (4) committed the crime
26 as a result of signifcant stress in his life, especially if the stress
27 has built over a long period of time; (5) committed the criminal
   offense as a result of battered woman syndrome; (6) has made realistic
28 plans for parole or has developed marketable skills that can be put
   to use upon release; (9) has engaged in institutional activities that
   indicates an enhanced ability to function within the law upon

1  Cal.Code Regs.,title 15.,section §2402subd.(d)."Rosenkrantz,supra,29

2  Cal.4th at p.654.

3  Finally,the regulations explains that the foregoing circumstances are

4  set forth as general guidelines; the importance attached to any

5  circumstances or combination of circumstances in a particlar case is

6  left to the judgment of the panel."Cal.Code Regs.title 15 section

7  §2402,subd,(c)-(d),"Rosenkrantz,supra,29 Cal.4th at p.654.

8  Court review of the board's decision is governed by a deferential "some

9  evidence" standard designed to ensure minimum procedural due process

10 protection,"Rosenkrantz,supra,29 Cal.4th at p.658;In re Scott,supra,119

11 Cal.App.4th at p..885-887",[T]he "some evidence" standard is extremely

12 deferential and reasonably cannot be compared to the standard of review

13 involved in ... considering whether substantial evidence supports the

14 findings"(id. at p.665);Nevertheless,it requires "some indicia of

15 reliability",In re Scott(2005),334 f.3d 910,915,and maybe understood

16 as meaning that suitability determination must have some rational basis

17 in fact,In re Scott,at p.590 fn.6 .

18 The key question is whether "some evidence" supports the board's

19 decision. The board's decision discussed that petitioner as a juvenile

20 was arrested one (1),time for at the age of 16,years of age in (1974)

21 was involved in a fight and placed on six months probation and

22 successfully completed probation,the result of the fight i had broke

23 the guy's jaw whom i had a fight with,and six(6),years later as an

24 adult was arrested three(3),times from (1980-81),two(2)arrest for

25 domistic issues with my wife an in both incidents they wer prosecutor's

26 rejects an one (1) arrest for having a switch blade knife (See Exhibit

27 (A) "HT" at pg.10,Lns.5-27; pg.11,Lns.1-27; pg.12,Lns.1-8)

28 Most notably,the board commended petitioner for work that he has been

donig remaining disciplinary free since (1989),18,yrs.(See Exhibit(A)

"HT"at pg.24,Lns.6-26; pg.61,Lns.11-14)

1  The decision by the board goes on to comment that petitioner has
2  strong support from his family and fianc'ee (See Exhibit(A)"HT" at
3  pg.60,Lns.14-19),he has received favorable evaluations from
4  correctional mental health professionals,including a (2003)
5  Psychological assessment form staff Psychologist Dr.William Garmard
6  concluding that,"In terms of an assessment of dangerousness,states
7  that if released to the community,violence potential is estimated to
8  be no higher than the average citizen in the community,if he were
9  release from prison" (See Exhibit(A)"HT" at pg.34,Lns.17-27;
10 pg.35,Lns.1-14). All the above mention information has been discussed
11 and recognized by the board twelve (12) times,when the board have
12 commended him for all his favorable accomplishments. However
13 notwithstanding all the favorable gains that petitioner has made,the
14 board in looking solely at the facts of the commitment offense,and
15 made a finding that if petitioner,"Was released from prison on
16 parole,he would pose an unreasonable public safety risk to society"
17 and denied parole to petitioner.
18 The case of In re Scott,supra,133 Cal.App.4th 573,summarizes the law in
19 this situation, The board's assumption that a prisoner may be
20 unsuitable for release on the basis of the commitment offense alone is
21 correct [citation],but the proposition must be properly understood,the
22 commitment offense is one of only two factors indicative of
23 unsuitability a prisoner cannot change (The other being his previous
24 record of violence)
25 Reliance on such an immutable factor without regard to or
26 consideration of subsequent circumstances may be unfair [citation],and
27 runs contrary to the rehabilitative goals espoused by the prison
28 system and could result in a due process violation [Citation]
//

1   The commitment offense can negate suitability only if circumstances of

2   the crime reliably established by evidence in the record rationally

3   indicate that the offender will present an unreasonable public safety

4   risk if released from prison. Yet, the predictive value    of the

5   commitment  offense may be very questionable after a long period of

6   time.[citation]. Thus, denial of release based solely on the basis of

7   the gravity of the commitment offense warrants especially close

8   scrutiny," In re Scott, supra, 133 Cal.App.4th at pp.594-595, fns.omitted

9   Chief among the board's reasons for denying parole was the belief of

10  the panel that the offense was "carried out in a very callous

11  manner", obviously, there was  multiple victims, and the victims were

12  abused during the offense because they were robbed and then they

13  forced into a van with apparently four(4) men, [Mr.Tatum], petitioner

14  being one of them, and Mr.Tatum according to the victims and

15  corroborated by one of the codefendants, told them to take off their

16  clothes because he was going to fuck them(See Exhibit(A)"HT"at

17  pg.58, Lns.4-16)

18  In the Superior court decision to deny the petition the court found

19  other than the board's findings that,"There is some evidence to

20  support the finding that the offense was carried out in a manner that

21  demonstrates  an   exceptionally  callous  disregard  for  human

22  suffering,"means the offense in question must have been committed in a

23  more aggravated or violent manner than ordinarily shown in the

24  commission of that offense.

25  To deny parole where no circumstances of the offense reasonably could

26  be considered more aggravated or violent than the minimum neccessary

27  to sustain a conviction for that offense, violates due process of

28  law. In re Scott, supra, 133 Cal.App.4th at p.598,

//

(10)

1  The essence of the board's decision and the Superior court finding
2  that the offense was callous which demonstrates an exceptionally
3  disregard for human sufferin,thus making petitioner's release at this
4  time an unreasonable risk of danger to society. Given the lapse of
5  twenty-five (25),years of confinement and exemplary evidence of
6  rehabilitation gains made by petitioner over that time,continued
7  reliance on these aggravating factors of the crime do not amount to
8  "some evidence" supporting denial of parole.

9  The commitment offense, The court have observed in an unsuitability
10 factor that is immutable and whose perdictive value may be very
11 questionable after a long period of time [citation].In re
12 Scott,supra,133 Cal.App.4th at pp.594-595,fn.omitted. The Scott,opinion
13 also noted,as has our Supreme court,strong legal and scientific support
14 that."predictions" of future dangerousness are exceedingly
15 unreliable",even where the passage of time is not a factor and the
16 assessment is made by an expert. Id at p.595 fn.9

17 Reliance on a immutable factor,without regard to or consideration of
18 subsequent circumstances,my be unfair to run contrary to the
19 rehabilitation goals espoused by the prison system,and result in a due
20 process violation Id.at p.595.

21 A parole hearing [also],does not ordinarily provide a prisoner a
22 very good opportunity to show his offense was not committed in a
23 especially heinous,atrocious or cruel manner,even if such evidence
24 exist and the prisoner is willing to run the risk his effort to make
25 such a showing will be seen as unwillingness to accept responsibility
26 and therefore evidence of unsuitability, Id. at p..600-601,fn.
27 This may be made worse by the absence of a trail transcripts
28 (Ibid),That is the case here.

(11)

1  The alarming fact of this case is twelve(12),times in denying
2  petitioner's parole this board has relied solely on the gravity of
3  the offense something that no rehabilitative progress can ever
4  change.
5  An instructive case is,Yellen v. Diane Butler(E.D.Cal.2003,No# CIV
6  S-01-2398, Where petitioner,Yellen is serving two(2),concurrent terms
7  of life with the possibility of parole for the conviction of
8  Kidnap/Robbrey ,and was found unsuitable for parole at his
9  third(3rd),parole hearing before the board in (1999),and three more
10  additional hearings following the (1999) hearing an at which he found
11  unsuitable for parole.
12  The facts of the offense in many an all respects are far more worse
13  than the instant case,Petitioner,Yellen along with two(2), crime
14  partners in (1983),from November 5th til November 21st,went on a
15  crime spree crimes including:conspiring to robb Neiman-Marcus,the
16  overt acts in the conspiracy were stealing Mr.Silverman's
17  Porsche,breaking in at Kelco Industries to lure (ADT) security
18  personnel,Kidnapping and Robbing Mr.Nixion,stealing Mr.Castenada's
19  Van,posing as interested buyers of and attempting to steal
20  Mr.Terzibachian's Porsche,Kidnapping to robb Mr.Nixion and
21  Mr.Castenada,robbing Mr.Castenada and Mr.Nixion,unlawfully taking
22  both of their Vehicles,attempting grand theft auto of Mr.Terzibachian
23  Car,assault with fire-arms on Micheal and Rebecca Terzibachian and
24  Joseph Deuer,assaulting Neiman-Marcus employees,burglarizing
25  Neiman-Marcus.
26  Petitioner,Yellen was convicted and sentenced to prison for
27  concurrent life terms with the possibility of parole for
28  Kidnap/Robbery,the board continued to rely on the facts of the crime
   to deny parole.

1   The board concluded that Yellen's crime was trivial in relation to the
2   offense,and the involved multiple victims.
3   The Eastern District court(2003),in Yellen wrote,more important in
4   assessing any due process violation is the fact that continuous
5   reliance on unchanging circumstances transforms an offense for which
6   California law provides eligibility for parole into a de facto Life
7   imprisonment without the possibility of parole,the court ask
8   rhetorically petitioner,Yellen's crime or motivation for the crime
9   which are going to change,the answer is nothing. The circumstances of
10  the crime will always be what they were,and petitioner's motive for
11  committing them will always be trivial petitioner has no hope of ever
12  obtaining parole except that a panel in the future will arbitrarily
13  hold that the circumstances were not that serious or the motive was
14  more than trivial.
15  Given that no one seriously contends lack of seriousness or lack of
16  triviality at the present time the potential for parole in this case is
17  remote to the point of non-existence,petitioner's liberty interest
18  should not be determined by such an arbitrary remote possibility.
19  Further,the court found that there was not sufficient evidence to
20  support the (1999) board's decision finding petitioner,Yellen
21  unsuitable for parole.
22  Petitioner in the instant case is experiencing the same results as did
23  petitioner,Yellen continuous denial of parole an unlike
24  petitioner,Yellen being denied parole for six (6) times,petitioner in
25  the instant case have been denied parole by the board
26  twelve(12),times,the board relying on immutable factors to deny parole
27  violation of due process of law.
28  ///

1  The court in Irons, supra, 358 f.Supp.2d at p.947 fn.3 ;express that, "To
2  a point it is true,"the circumstances of the crime and the
3  motivation     for      it      may      indicate     a      petitioner's
4  instability,cruelty,impulsiveness,violent tendencies and the like.
5  Howeve,after fifteen(15),or so years in the caldron of prison life,not
6  exactly an ideal therapeutic environment to say the least,and after
7  repeated demonstrations that despite the recognized hardship of
8  prison,this petitioner does not posses those attribute,the predictive
9  ability of the circumstances of the crime is near zero.
10 The rehabilitation success of petitioner is without a doubt a major
11 factor in this case. The board's decision denying parole on the basis
12 of the facts of the offense lacks "some evidence" that granting parole
13 posed an unreasonable risk of danger to society,(Cal.Code Regs.,title
14 15. section §2402,subd.(a).,The petition filed in this case should be
15 granted and the board ordered to reverse its decision of the (2005)
16 parole hearing from unsuitable to suitable,and grant petitioner a
17 release date.
18 ///
19 There was no evidence before the Board showing that Petitioner had a
20 unstable social history another reason to deny parole.
21 The board opined that petitioner,"Has an unstable social history
22 related to the fact that between the ages of 13,to 15,years. of age
23 petitioner was a gang member,smoked marijuana an also was involved in
24 using other drugs and alcohol(See Exhibit(A)"HT"at pg.59,Lns.8-14)
25 Petitioner contend,that back in October(1982) when convicted of this
26 offense an entering into the Department of Corrections in my initial
27 interview,i was ask a number of questions such as:"Did i belong to a
28 gand,"Did i drink alcohol,"Have i ever used drugs",and from my memory i
   answered yes to all of the questions.

1  The record reflect that there is no evidence showing that when
2  petitioner had drunk alcohol from time to time and used drugs an
3  associated with a gang,for my involvement with these elements wasn't
4  to the degree that petitioner's daily life evolved around these
5  negative activities for if it was a reality of some 30,years ago of
6  extensive drug an alcohol use and gang activity,for that involvement
7  to that degree would constitute an unstable social history an it
8  would be well documented within the record of such involvement such
9  as arrest and convictions relating to these issues,however the record
10 is devoid of evidence showing that petitioner had an unstable social
11 history,prior to the commitment offense,petitioner was married and
12 worked as a welder and fork-lift driver,and provided for my family
13 and lived a stable social life.
14 Moreover,petitioner submits that his past does not by itself
15 reasonably establish current unsuitability because there is no
16 additional evidence to complete a chain of reasoning between his past
17 and in finding that because of it he currently poses an unreasonable
18 risk of danger if released.
19 The fact that petitioner was forthright an admitted to drinking an
20 using drugs along with gang association at the ages of 13-16,years of
21 age some 30,plus years ago does not by itself represent some evidence
22 that he is currently a risk and danger if release from prison.
23 Thus,as this court of Appeal recently concluded in the matter of In
24 re Scott,2006,DJDAR 13961 at p.13963,"The test is not whether some
25 evidence supports the reasons the board cites for denying parole,but
26 whether some evidence indicates a parolee's release unreasonably
27 endangers public safety. Cal.Code Regs.,title 15. section
28 §2402,subd.(a),[Parole denied of prisoner will pose an unreasonable
   risk of danger to society if released from prison]

(15)

1  Therefore,"some evidence" of the existence of a particular factor

2  does not necessarily equate to some evidence the parolee's release

3  unreasonably endangers public safety.Id.

4  Thus,the court must view the parole board's reason for denial of

5  petitioner's parole within the context of the other factors it must

6  consider to see if some evidence shows he continue to pose a current

7  unreasonable risk to public safety.In re Scott,supra,133 Cal.App.4th

8  at pp.594-595,Applying that test,petitioner asserts the court will

9  find no evidence that he is likely to commit another crime or that his

10 release would unreasonably endanger the public.

11 Furthermore, although at the board hearing the record will reveal

12 petitioner's involvement and participating in self-help substance

13 abuse programs continuously since (1989) within the institution.

14 (See Exhibit(A)"HT" at pg.26,Lns.4-27; pg.27,Lns.1-10)

15  In sum,the factor cited by the board that petitioner has an unstable

16 social history because of the use of alcohol and drug along with

17 association with a gang does not constitute some evidence that

18 petitioner,he currently poses an unreasonably risk of danger.

19 indeed,if peititoner's past involvement with the use of drugs an

20 alcohol and gang association invariably establish his

21 unsuitability,then the parole board could deny parole for the rest of

22 petititoner's life based on this immutable factor. The board's

23 decision in this regard appears to be arbitrary and capricious because

24 as noted,the decision omits any consideration of,or even reference

25 to,the undisputed evidence noted above.

26 ///

27 ///

28 ///

The Board's Decision Denying Parole Failed To Reflect Due Consideration Of The Circumstances Tending To Show His Suitability For Parole.

The board failed to consider evidence showing petitioner's is suitable for release from prison. The evidence shows the existence in this case of all the foregoing circumstances tending to show suitability for release from prison,except the "Battered woman syndrome,Cal.Code of Regs. section §2402,subd.(d),(1),(9).

The board commended petitioner for some of the circumstances tending to show suitability for parole;has completed high school,has vocations,and marketable skills,participated in self-help programing,has favorable psychiatric reports,and has realistic plans for parole an ample letters of support from family and friends supporting his release an at Fifty(50),years of age reduces the probability of recidivism (See Exhibit(A)"HT" at pg.59,Lns.21-24; pg.60,Lns.6-19)

The board's failure to undertake the individulized consideration of all relevant factors required by,Rosenkrantz,29 Cal.4th at p.655,"also offends the board's own regulations,which require that [A]ll relevant,reliable,information available to the panel shall be considered in determining suitability for parole,Cal.Code of Regulations.,title 15. section §2402,subd.(b);In re Ramirez,94 Cal.App.4th 549,at 571-72.

[F]ailure to acknowledge that Ramirez's conduct in prison was a circumstance that supported his application for parole,is yet another indication of an arbitrary and capricious determination.

The board's treatment of petitioner is if anything more unfair than that considered in Ramirez,because more evidence of circumstances tending to show suitability for release was ignored here than in that case.

//

(17)

1   Furthermore, the evidence of petitioner's participation and

2   performance while incarcerated is particularly significant. As the

3   Supreme court has recognized, the behavior of an inmate during

4   confinement is critical in the sense that it reflects the degree to

5   which the inmate is prepared to adjust to parole release

6   Greenholtz, 442 U.S. at p.15, 99 S.ct.2100.

7                              Conclusion

8   For all the reasons  expressed herein, this court should grant the

9   petition for habeas corpus.

10  ////

11  ////

12  ///

13  ////

14  ////

15  ////

16  ////

17  ////

18  ////

19  ////

20  ////

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

27  ///

28  ///

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

See Attached

_____

_____

_____

_____

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages. CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See In re Swain (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time (when) or place (where). (If available, attach declarations, relevent records, transcripts, or other documents supporting your claim.)*

See Attached

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

_____

_____

_____

_____

1   Petitioner Was Removed From His Parole Hearing And Deprived Of The
2   Right To Ask Questions And To Speak Regarding An Unsupported
    Claim,For There Was No Evidence That Petitioner Was Not
3   Cooperating,Being Combative,and Argumentative And Needed To Be Remove
4   From His Parole Hearing.

5

6   On September 15th,2005,Petitioner went before the Board for
7   petitioner's twelfth(12th),parole consideration hearing. The hearing
8   was conducted by Commissioner,Susan Fisher,Deputy Commissioner
9   D.H.Mcbean,Deputy District Attorney for the county of Los Angeles
10  Alexis Delagarza,Katera Rutledg Attorney for petitioner,and
11  Petitioner Willie E. Tatum Jr. were all present.
12    The Following Colloquy Is What Led To Petitioner's Removal From The
13  Hearing.
14  [District Attorney Delagraza]:"I think the last hearing or the
15  hearing before last,they suggested that petitioner do programing with
16  the respect to the fact that the victims of the crime were women and
17  the concern was that he had sexual aggression issues didhe ever do
18  any self-help or any kind of anything on that"]
19  [Petitioner]:"Excuse me,you said that you read that in some
20  transcripts of last years hearing"]
21  [Commissioner Fisher]:"Wait until the board ask the questions"]
22  [Deputy Commissioner Mcbean]:"Hold on is it in the transcripts of the
23  hearing or was it in the transcripts of the decision"]
24  [District Attorney Delagraza]:"In the report i read that where it
25  indicated what the inmate was told to do,I'm trying to find where it
26  was"]
27  [Petitioner]:"And back to the representative,The District
28  Attorney,"She said that she read is somewhere i mean,what document is
    this"]

(19)

1  [Commissioner Fisher]:"Just clam down we're not going to just leave
2  it on record unsolved"]
3  [Deputy Commissioner Mcbean]:"Well it is a good question though,even
4  if it hasn't been posed in the past,and i know you're not interested
5  in talking about the crime today"]
6  [Petitioner]:"Right"]
7  [Deputy Commissinoer Mcbean]:"I do notice that in terms of self-help,
8  the only thing you've done is A.A.,and there was the sexual component
9  of the crime,have you tried to do anything at all in terms of
10  self-help on any sexual issues"]
11  [Petitioner]:"No because,i what was the conviction?,what is the
12  conviction?"]
13  [Deputy Commissioner Mcbean]:"Concerning the facts on the crime"]
14  [Petitioner]:"Okay,but what about the conviction?"]
15  [Deputy Commissioner Mcbean]:"I'm asking the question"]
16  [Petitioner]:"What was the conviction,I wasn't convicted of no sexual
17  crime"]
18  [Commissioner Fisher]:"Mr.Tatum let me give you some advice you're
19  doing the same thing right now that you have been doing in other
20  hearings ,that have been getting you into trouble,if we're trying to
21  go"]
22  [Petitioner]:"Get to what-what are you trying to get to
23  Ms.Commissioner"[
24  [Commissioner Fisher]:"All right get him out of here please"]
25  [Petitioner]:"Can i have my chrono's,give me my chrono's"]
26  [Commissioner Fisher]:"I'll give them to you later,I'll give it to
27  your Attorney at the end of your hearing,just for the record,I'm
28  having the officer remove Mr.Tatum from the room,he is not
   coopperating,hes being combative,and hes argumentative,an we don't
   need to have him here"]

1  (See Exhibit(A)"HT",Starting at pg.40,Lns.20-27; On through to

2  pg.44,Lns.1-16)

3  California Penal Code section §3041.5,and California Code of

4  Regulations section §2247,affords petitioner the right during a

5  parole hearing to ask an answer questions and to speak on my own

6  behalf,an as petitioner exercised thses rights to ask questions and

7  to speak on my own behalf regarding the unsupported claim made by

8  District Attorney Delagraza,petitioner was told to wait by

9  Commissioner Fisher,"Until the board ask the questions,violating

10  procedural right's of petitioner.(See Exhibit(A)"HT" at

11  pg.41,Lns.4-9)

12  [Commissioner Fisher]:"Just clam down we're not going to just leave

13  it on record unsolved"];(See Exhibit(A)"HT" at pg.42,Lns.20-25)

14  The unsupported claim made by District Attorney Delagraza did in fact

15  remained on record unsolved,for she did not and could produce the

16  supporting documentation,[T]he "Report" as evidence at the hearing to

17  support her unsupported stated claim regarding this sexual aggression

18  issue that was fabricated by her.

19  Cal.Code of Regs. title,15. section §2030,(d),(2);hearing procedures;

20  Role of the Prosecutor, in pertinent part:

21  "In making comments,supporting documentation in the file should be

22  cited",for District Attorney Delagraza stated that she had read a

23  prior board report stating that a prior board suggested that

24  petitioner do some programing relating to sexual agression issues,for

25  she mad the unsupported claim but did not and could not produce the

26  documentation at the hearing to support her claim that went unsolved

27  an as result petitioner was removed from his parole hearing

28  after questioning the vilidity of the District Attorney's statement.

(See Exhibit(A)"HT" at pg.40,Lns.20-27;pg.41,Lns.1-17;pg.48,Lns.8-22)

1  Further,for no such "Reports" even exist for the board don't issue

2  any reports for any recommendations or suggested programing that the

3  board may recommend,it would be found in the decision section of a

4  board transcripts after parole is denied,for an example of this

5  procedure(See Exhibit(A)"HT"at Decision pg.61,Lns.2-5)

6  Moreover,at the outset of the parole hearing petitioner invoke the

7  right not to discuss the offense(See Exhibit(A)"HT" at pg.4,Lns.2-15;

8  pg.7,Lns.5-11);See also California Penal Code section §5011(b),and

9  Cal.Code of Regulations section §2236)

10 The question stated into the record by District Attorney Delagraza

11 and supported by the board panel which led to petitioner being

12 removed from his parole hearing,was a question involving

13 circumstances surrounding the offense in which petitioner was not

14 convicted of however these circumstances still remain as elements of

15 the crime and petitioner chose not to discuss the offense,the

16 conviction in (1982) was for Kidnap/Robbery, not Kidnap/Rape;(See

17 Exhibit(A)"HT"at pg.40,Lns.20-27; pg.47,Lns.1-19)

18 Overmore,Commissioner Fisher was the hearing officer in charge of

19 petitioner's parole hearing,Cal.Code of Regulation,title 15.section

20 §2030(d),(1),hearing procedures in pertinent part:

21 The hearing officer shall ensure throughout the hearing that

22 unecessary,irrelevant or cumulative oral testimony and statements are

23 excluded",and for the allowance by Commissioner Fisher of the

24 unsupported stated claim and questions ask by District Attorney

25 Delagraza,and Deputy Commissioner Mcbean,for these questions and

26 statements were unecessary,irrelevant and was found to be unsupported

27 by the record leading to petitioner being removed from his

28 hearing,violation of due process of law.

22)

1                                  Conclusion

2   That, this cort grant this petition, for all the reasons expressed

3   herein.

4   //

Respectfully,
Submitted, Petitioner

Willie E. Tatum Jr.

July 9, 2007

(23)

# EXHIBIT 4

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

COURT OF APPEAL - SECOND DIST.

F I L E D

SEP 26 2007

JOSEPH A. LANE _____ Clerk

S. VEVERKA _____ Deputy Clerk

| | | |
|---|---|---|
| In re | ) | B200514 |
| | ) | |
| WILLIE EARN TATUM, JR., | ) | (Super.Ct.No. BH004120) |
| | ) | (Steven R. Van Sicklen, Judge) |
| on Habeas Corpus. | ) | |
| | ) | |
| | ) | ORDER |
| | ) | |
| | ) | |

DOCKETED
LOS ANGELES

SEP 2 ° 7007

BY SUE APOLINAR

NO. _____

THE COURT:*

The petition for writ of habeas corpus has been read and considered.

The petition is denied. Denial of parole may be based solely or in part upon the particular circumstances of the inmate's commitment offense. The record shows that the particular circumstances of petitioner's kidnapping-for-purpose-of- robbery offense "exceed the minimum elements necessary to sustain a conviction" of that offense in numerous respects. (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1070-1071, 1094-1095.) The record also amply satisfies the applicable "some evidence" standard with regard to the other factors identified by the Board in determining petitioner unsuitable for parole in 2005.

* EPSTEIN, P. J.,          WILLHITE, J.,          MANELLA, J.

# EXHIBIT 5

# S157114

SUPREME COURT
**FILED**

OCT 1 0 2007

Frederick K. Onirich Clerk

_____

Deputy

### PETITION FOR REVIEW

In re WILLIE TATUM

C/A #B200514
S.C. #A528706
BH004120

On Habeas Corpus

Willie Tatum
C-55580
P. O. Box 689
Soledad, CA 93960-0689

Willie Tatum
C-55580
P.O.Box 689
Soledad,Ca.93960-0689
Pro Se

RECEIVED
OCT 1 0 2007
CLERK SUPREME COURT

## California Supreme Court

| | |
|---|---|
| Willie Tatum,                    ) | No. |
|                Petitioner        ) | |
|                                  ) | |
| v.                               ) | Petition for Review |
| Ben Curry,Warden,et al.          ) | of of Appeal's |
|                   Respondant     ) | Denial Case No. B200514 |
| | Filed September 26,2007 |

### Petition for Review

Petitioner,Willie Tatum,ask this court to review the denial of the California Court of Appeal,Second Appellate District,denying his application for writ of habeas corpus against the Board of Parole Hearing,denying his application to be release on parole.

### Necessity for Review

The board of parole hearing denied petitioner parole,concluding that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety if released from prison,yet in the board's decision to deny parole the board failed to show or prove that petitioner is a current threat and danger to society if release from prison.

The board also relied on additional factors in denying parole,the evidence the board relied on was that,petitioner has a history of unstable tumultuous relationship with others Cal. Code Regs.,tit.15 §2402,subd.(c),(3),two domestic violence issues with petitioner former wife,and the record before the board at petitioner's parole hearing shows that both of these incidents were DA's rejects,yet the board continues to use these incidents as added weight to continue to deny parole to petitioner.

Petitioner was removed from his parole hearing held on September 15,2005,the board concluded petitioner became uncooperative and combative during the hearing,and needed to be removed from the hearing,denying petitioner his right's to ask an answer questions,and to speak on his own behalf.

Review is necessary to guide the board as to how to apply and follow California's Law regarding parole board hearings.

Petitioner submits this application for review,declaring the record (established) at his twelfth (12th),parole consideration hearing held on September 15th,2005,holds NO evidence that petitioner **currently** poses a risk to public safety with which to support the board's denial of parole to petitoner.

Name  Willie Earn Tatum Jr.

Address  P.O. Box 689, ED-90/Low

Soledad, California

93960-0689

CDC or ID Number  C-55580

## California Court of Appeals

## Second Appellate District
*(Court)*

---

Willie Earn Tatum Jr.

Petitioner

vs.

Ben Curry, Warden

Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

---

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
-275 [Rev. January 1, 1999]

PETITION FOR WRIT OF HABEAS CORPUS

Page one of six
Penal Code, § 1473 et seq.
Cal. Rules of Court, rules 56.5, 201

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☒ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: Superior Court, Los Angeles County

    (2) Nature of proceeding (for example, "habeas corpus petition"): Habeas Corpus

    (3) Issues raised: (a) Due Process violation

               (b)

    (4) Result (Attach order or explain why unavailable): Denied  See attached Exhibit (D)

    (5) Date of decision: April 10th, 2007 Case No# BH004120

  b. (1) Name of court:

    (2) Nature of proceeding:

    (3) Issues raised: (a)

               (b)

    (4) Result (Attach order or explain why unavailable):

    (5) Date of decision:

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

N/A

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

N/A

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
See Attached Superior Court denial Case No# BH004120
SEE Exhibit (D)

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: June 29, 2006

                                  ▶ Willie E. Tatum Jr.
                                       (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]        PETITION FOR WRIT OF HABEAS CORPUS

1   This case arises out of the repeated denials of Parole to
2   Petitioner,Willie E. Tatum Jr.,a State prisoner who is a first termer
3   with one arrest as a juvenile and three arrest as an adult. He also
4   plead guilty to two(2),counts of Kidnap/Robbery ran concurrent and
5   was sentenced to life with the possibility of Parole. Throughout his
6   confinement his prison programing and performance has contributed to
7   him becoming an excellent candidate for Parole.

8   Throughout his incarceration he has participated in programs to
9   help better himself. such helpful programs such as:Anger
10  Management,"AA",Life Skills, have received favorable and supportive
11  Psychological evaluations from staff Psychologist over the years and
12  have establish an excellent work record documented as exceptional an
13  above average ratings. In short,during his Twenty five(25),years in
14  prison and for the past eighteen(18),years being disciplinary free
15  along with positive programing,for all the above stated
16  accomplishment these factors are not truly considered within
17  Petitioner's Parole hearing.

18  Furthermore,the evidence of petitioner's performance while
19  incarcerated is particularly significant. As the Supreme Court has
20  recognized,"The behavior of an inmate during confinement is critical
21  in the sense that it reflects the degree to which the inmate is
22  prepared to adjust to Parole release"Greenholtz,442 U.S. at
23  Pg.15,99,S.ct.2100.

24  Petitioner has appeared before the Parole Board on twelve(12),
25  occasions,each time being denied Parole solely on the commitment
26  offense. These denials are percisely what the Supreme Court was
27  talking about in Greenholtz v. Nebraska,442 U.S. at pp.7-8
28  //

1    As the court in _Greenholtz_, said that,"To insure that a
2  state-created Parole scheme serve the public interest purpose of
3  rehabilitation and deterrence,the Parole Board must be cognizant not
4  only of the factors required by state statute to be considered,but
5  also the concept embodied in the constitution requiring due process
6  of law. _See also, Biggs v. Terhune_,334 f.3d 910,at 916 (9th
7  Cir.2003).

8    These factors underscore why the court in _In re Scott(2)_,133 Cal.
9  App.4th 573, at pg.595,took pains to reiterate that "The commitment
10 offense can negate suitability[for parole],only if circumstances of
11 the crime... rationally indicate that the offender will present an
12 unreasonable public safety risk if release from prison."Thus,as this
13 court of Appeal recently concluded in the matter of _In re Lee_,2006
14 DJDAR 13961 at pg.13963,the test is not whether "Some evidence"
15 supports the reasons the Parole Board cites for denying parole,but
16 whether "Some evidence" indicates a Parole release unreasonably
17 endangers public safety. (Cal. Code Regs.,title,15.§2402
18 subd.(a),[Parole denied if prisoner "will pose an unreasonable risk
19 of danger to society if released from prison."] Therefore,"Some
20 evidence" of the existence of a particular factor dose not
21 necessarily equate to some evidence the parolee's release
22 unreasonably endangers public safety.Id.

23   Thus,The court must view the Parole Board's reasons for denial of
24 petitioner's Parole within the context of the other factors it must
25 consider to see if some evidence shows he continues to pose an
26 unreasonable risk to public safety.In re Scott,supra,133 Cal.App.4th
27 at pg.594-595,applying that test petitioner's asserts the court will
28 find no evidence that he is likely to commit another crime or that
   his release would unreasonably endanger the public.

1  Petitioner is not attempting to minimize the seriousness of his

2  offense of 25 years ago, for which society has legitimately punish

3  him, however, no reasonable possibility exists that petitioner will

4  reoffend other than the instant case petitioner's criminal history is

5  minimal to say the least, for there in **NO** prior convictions one arrest

6  as a juvenile and three arrest as an adult, (See Exhibit (A)

7  2005 Board Hearing transcripts(hereinafter"HT"), at pg.10,Lns.6-27;

8  pg.11,Lns.1-27; pg.12,Lns.1-6)

9  Petitioner is now a middle age man of 50 years of age and who has

10 accomplish much during his incarceration, for he has acquired an

11 education and vocations, has taken numerous life skills classes

12 providing him with the ability to cope with stress an anger, none of

13 which he possessed at the age of 25 years of age when he committed

14 the offense.

15 The primary reason the Parole Board cites for its denial of parole

16 is, "The nature of petitioner's crime" unchanging factors

17 therefore, the board's decision is not supported by some evidence.

18 Petitioner contends the Superior court erred, when it summarily denied

19 the petition and failed to identify what evidence contained in the

20 record supported the board's finding of unsuitability. Petitioner, is

21 unclear as to whether the court found that "Some evidence" in the

22 record supported the reasons the board cites for denying parole, or

23 whether "some evidence" indicates his release unreasonably endangers

24 public safety.;In re Scott,2006 DJDAR 13961 at p.13963;(See

25 Exhibit(D),The decision from the Superior court denying the petition

26 on April 10th,2007)

27 As this court of Appeal found in Lee, "some evidence" of the existence

28 of a particular factor does not necessarily equate to some evidence

the parolee's release unreasonably endangers public safety. Id. at

p.13963.

(3)

1  Furthermore,this court concluded,"The test is not whether some
2  evidence supports reasons the the [Board] cites for denying parole,but
3  whether some evidence indicates a parole release unreasonably
4  endangers public safety.(Cal. Code Regs.,title 15,§2402
5  subd.(a),"Parole denied if prisoner"will pose unreasonable risk of
6  danger to society if release from prison."];See, e.g., In re
7  Scott,(2005),133 Cal. App.4th 573,595 [The commitment offense can
8  negate suitability for parole only if circumstances of the crime...
9  rationally indicate that the offender will present an unreasonable
10 safety risk if releases from prison."]

11   Moreover,in accordance with the court of Appeal decision in In re
12 Lee,the Superior court's denial of the petition failed to reveal the
13 Board's reason's of unsuitability within the contex of the other
14 factors it must consider to see if some evidence shows petitioner
15 continues to pose a current an unreasonable risk to public safety.
16 (2006) DJDAR at pp.13963; See In re Scott,supra,133 Cal.App.4th at
17 pp.594-595. For the above stated reasons ,the petition should be
18 return to the Superior court for review consistent with this court of
19 Appeal's view's in In re Scott,(2006),DJDAR !#(¢!.

20 "The Board of Parole Hearings Decision Denying Parole Did Not Comport
                              with Due Process"
21   On September 15th,2005,Petitioner's twelfth(12th),Parole
22 consideration hearing was held. The Board of Parole Hearings
23 (Board),again denied parole for a period of two(2),years. In the
24 Board's decision to deny Parole the Board concluded that,"Petitioner
25 continued to pose an unreasonable risk of danger to society or a
26 threat to public safety if released from prison",The Board relied
27 primaraly on the commitment offense the Board found that the offense
28 "Was a very serious crime","The offense was carried out in a very
callous manner","There were mutiple victims"
See exhibit (A) 2005 Board's decision transcripts "HT" at
pg.57,Lns.12-26; pg.58,Lns.4-6
(4)

1   Parole suitability decisions for inmate serving indeterminate life
2   terms are made,in the first instance by the Board. In re Scott,(2004),
3   119 Cal. App.4th 871,884-885. The Board has broad discretion and must
4   normally set Parole relase in a manner that provides uniform terms
5   for offenses of similar gravity an magnitude with respect to public
6   safety(ibid;Penal Code section,§3041,subd.(a),and. must set a Parole
7   date unless it determines that the gravity of the current or past
8   convicted offense or offenses are such that public safety requires a
9   more lengthier period of incarceration.In re Scott,supra at
10  pp.885;Penal Code section §3041 subd,(b). That decision is guided in
11  turn by regulations directing the Board's consideration to six
12  (6),nonexclusive circumstances tending to show unsuitability,
13  California Code of Regulations,tile 15.,section §2402,subd.(c),and
14  nine (9),tending to show suitability id.,section §2402,subd.(d),In
15  re Scott,supra at pp.897.
16  According to the applicable regulations circumstances tending to
17  establish unsuitability for Parole are that the prisoner;(1),committed
18  the offense in an especially heinous,atrocious,or cruel
19  manner;(2),possesses a previous record of violence;(3),has an unstable
20  social history;(4),previously has sexually assaulted another
21  individual in a sadistic manner;(5),has a lengthy history of severe
22  mental problems related to the offense;(6),has engaged in serious
23  misconduct while in prison.(Cal. Code Regs.,title 15.,section
24  §2402,subd.(c),In re Rosenkrantz,(200),29 Cal.4th 616,653-64 fn.
25  omitted.
26  Circumstance(1),is supported where (a) multiple victims were
27  attacked,injured,or killed in the same or separate incidents;(b),The
28  offense was carried out in a dispassionate and calculated manner,such
    as an execution-style murder;(c),The victims was abused,defiled,or
    mutilated during or after the offense;(d) The offense was

1  in a manner that demonstrates an exceptionally callous disregard for

2  human suffering;and(e),The motive for the crime is inexplicable or

3  very trivial in relation to the offense, Cal. Code Regs.,title

4  15.section §2402,subd.(c),(1).", Rosenkrantz,at pp.653,fn.11.

5  Overmore, The court of appeal recently concluded in the matter of In

6  re Lee,(2006),DJDAR 13961 at p.13963,the test is whether "some

7  evidence" supports the reasons the board cites for denying parole,but

8  whether "some evidence" indicates a parolee's release unreasonably

9  endangers public safety.

10  Cal. Code Regs. title 15. section §2402 subd.(a) [parole denied if

11  prisoner "will pose an unreasonable risk of danger to society if

12  released from prison"] therefor,"some evidence" of the existence of a

13  particular factor in the commission of a crime such as "Multiple

14  victims",dose not necessarily equate to some evidence the parolee's

15  release unreasonably endangers public safety.Id.

16  The Superior court in its denial of the petition agreed with the

17  board in its denial of parole that the offense involved"Multiple

18  victims",Cal Code Regs.,title 15., section §2402 subd.(c)-(a) "Multiple

19  victims" were attacked,injured,or killed in the same or separate

20  incidents.

21  There were multiple victims involved in the commission of the crime

22  however the board has in its discretion has recharacterized the offense

23  making it to appear to be much more serious or violent than what

24  actually took place in the commission of the crime. Petitioner is not

25  attempting to minimize the seriousness of this offense of 25,years

26  ago,for which society has legitimately punish him. Commissioner Fisher

27  stated on record at petitioner's parole hearing held on 9/15/05,"That

28  the panel accepts the finding of the court to be true"(See Exhibit (A)

"HT" at pg.4,Lns.10-14).

1  Furthermore,petitioner with the agreement of the District Attorney's

2  office of Los Angeles county plead guilty to the offense from the

3  plea agreement that was offered to an accepted by petitioner by way

4  of the District Attorney's office for the conviction,for there wasn't

5  a trial. The facts of the offense would be found in the

6  (1982),Probation officer's report and the Superior

7  court(1982),sentencing transcripts an in viewing both of the said

8  mention transcripts in their entirety the court would see that the

9  recharacterization of the offense viewed by Commissioner Fisher is

10 different from the finding of the Superior court and the probation

11 report.

12   Moreover,[Commissioner  Fisher]:"Obviously,there  were  multiple

13 victims and the victims were abused during the offense because they

14 were robbed whether or not a hand was laid on them,that was abusive.

15 (See Exhibit(A)"HT"at pg.58,Lns.6-15)

16  The (1982),Probation officer's report found that,"The victims were

17 visibly shaken but physically unhurt",(See Exhibit(B),Probation

18 report,at pg.7,Lns.18-19);(See also Exhibit(C),(1982),Superior court

19 sentencing transcripts,at pg.2,Lns.22; pg.3,Lns.9-11);The court found

20 that,"There was no or little harm inflicted upon them,"These women

21 were not abused or injured in the commission of this crime as

22 Commissioner Fisher views this offense.

23  Regulations provides that circumstances tending to establish

24 suitability for parole are that the prisoner,(1) does not possess a

25 record of violent crimes committed while a juvenile;(2) has a stable

   social history;(3) has shown signs of remorse;(4) committed the crime

26 as a result of signifcant stress in his life,especially if the stress

27 has built over a long period of time;(5) committed the criminal

   offense as a result of battered woman syndrome;(6) has made realistic

28 plans for parole or has developed marketable skills that can be put

   to use upon release;(9) has engaged in institutional activities that

   indicates an enhanced ability to function within the law upon

1  Cal.Code Regs.,title 15.,section §2402subd.(d)."Rosenkrantz,supra,29

2  Cal.4th.at p.654.

3  Finally,the regulations explains that the foregoing circumstances are

4  set forth as general guidelines; the importance attached to any

5  circumstances or combination of circumstances in a particlar case is

6  left to the judgment of the panel."Cal.Code Regs.title 15 section

7  §2402,subd,(c)-(d),"Rosenkrantz,supra,29 Cal.4th.at p.654.

8  Court review of the board's decision is governed by a deferential "some

9  evidence" standard designed to ensure minimum procedural due process

10 protection,"Rosenkrantz,supra,29 Cal.4th at p.658;In re Scott,supra,119

11 Cal.App.4th at p..885-887,[T]he "some evidence" standard is extremely

12 deferential and reasonably cannot be compared to the standard of review

13 involved in ... considering whether substantial evidence supports the

14 findings"(id. at p.665);Nevertheless,it requires "some indicia of

15 reliability",In re Scott(2005),334.f.3d 910,915,and maybe understood

16 as meaning that suitability determination must have some rational basis

17 in fact,In re Scott,at p.590 fn.6.

18 The key question is whether "some evidence" supports the board's

19 decision. The board's decision discussed that petitioner as a juvenile

20 was arrested one (1),time for at the age of 16,years of age in (1974)

21 was involved in a fight and placed on six months probation and

22 successfully completed probation,the result of the fight i had broke

23 the guy's jaw whom i had a fight with,and six(6),years later as an

24 adult was arrested three(3),times from (1980-81),two(2)arrest for

25 domistic issues with my wife an in both incidents they wer prosecutor's

26 rejects an one (1) arrest for having a switch blade knife (See Exhibit

27 (A) "HT" at pg.10,Lns.5-27; pg.11,Lns.1-27; pg.12,Lns.1-8)

28 Most notably,the board commended petitioner for work that he has been

donig remaining disciplinary free since (1989),18,yrs.(See Exhibit(A)

"HT"at pg.24,Lns,6-26; pg.61,Lns.11-14)

1   The decision by the board goes on to comment that petitioner has
2   strong support from his family and fianc'ee (See Exhibit(A)"HT" at
3   pg.60,Lns.14-19),he has received favorable evaluations from
4   correctional mental health professionals,including a (2003)
5   Psychological assessment form staff Psychologist Dr.William Garmard
6   concluding that,"In terms of an assessment of dangerousness,states
7   that if released to the community,violence potential is estimated to
8   be no higher than the average citizen in the community,if he were
9   release from prison" (See Exhibit(A)"HT" at pg.34,Lns.17-27;
10  pg.35,Lns.1-14).All the above mention information has been discussed
11  and recognized by the board twelve (12) times;when the board have
12  commended him for all his favorable accomplishments. However
13  notwithstanding all the favorable gains that petitioner has made,the
14  board in looking solely at the facts of the commitment offense,and
15  made a finding that if petitioner,"Was released from prison on
16  parole,he would pose an unreasonable public safety risk to society"
17  and denied parole to petitioner.
18  The case of In re Scott,supra,133 Cal.App.4th 573,summarizes the law in
19  this situation, The board's assumption that a prisoner may be
20  unsuitable for release on the basis of the commitment offense alone is
21  correct [citation],but the proposition must be properly understood,the
22  commitment offense is one of only two factors indicative of
23  unsuitability a prisoner cannot change (The other being his previous
24  record of violence)
25  Reliance on such an immutable factor without regard to or
26  consideration of subsequent circumstances may be unfair [citation],and
27  runs contrary to the rehabilitative goals espoused by the prison
28  system and could result in a due process violation [Citation]

//

1   The commitment offense can negate suitability only if circumstances of
2   the crime reliably established by evidence in the record rationally
3   indicate that the offender will present an unreasonable public safety
4   risk if released from prison. Yet,the predictive value of the
5   commitment offense may be very questionable after a long period of
6   time.[citation]. Thus,denial of release based <u>solely</u> on the basis of
7   the gravity of the commitment offense warrants especially close
8   scrutiny,"<u>In re Scott</u>,supra,133 Cal.App.4th at pp.594-595,fns.omitted
9   Chief among the board's reasons for denying parole was the belief of
10  the panel that the offense was "carried out in a very callous
11  manner",obviously,there was multiple victims,and the victims were
12  abused during the offense because they were robbed and then they
13  forced into a van with apparently four(4) men,[Mr.Tatum],petitioner
14  being one of them,and Mr.Tatum according to the victims and
15  corroborated by one of the codefendants,told them to take off their
16  clothes because he was going to fuck them(See Exhibit(A)"HT"at
17  pg.58,Lns.4-16)
18  In the Superior court decision to deny the petition the court found
19  other than the board's findings that,"There is some evidence to
20  support the finding that the offense was carried out in a manner that
21  demonstrates an exceptionally callous disregard for human
22  suffering,"means the offense in question must have been committed in a
23  more aggravated or violent manner than ordinarily shown in the
24  commission of that offense.
25  To deny parole where no circumstances of the offense reasonably could
26  be considered more aggravated or violent than the minimum neccessary
27  to sustain a conviction for that offense,violates due process of
28  law.In re Scott,supra,133 Cal.App.4th at p.598,

//

(10)

The essence of the board's decision and the Superior court finding that the offense was callous which demonstrates an exceptionally disregard for human sufferin,thus making petitioner's release at this time an unreasonable risk of danger to society. Given the lapse of twenty-five (25),years of confinement and exemplary evidence of rehabilitation gains made by petitioner over that time,continued reliance on these aggravating factors of the crime do not amount to "some evidence" supporting denial of parole.

The commitment offense, The court have observed in an unsuitability factor that is immutable and whose perdictive value may be very questionable after a long period of time [citation].In re Scott,supra,133 Cal.App.4th at pp.594-595,fn.omitted. The Scott,opinion also noted,as has our Supreme court,strong legal and scientific support that "predictions" of future dangerousness are exceedingly unreliable",even where the passage of time is not a factor and the assessment is made by an expert. Id at p.595 fn.9.

Reliance on a immutable factor,without regard to or consideration of subsequent circumstances,my be unfair to run contrary to the rehabilitation goals espoused by the prison system,and result in a due process violation Id.at p.595.

A parole hearing [also],does not ordinarily provide a prisoner a very good opportunity to show his offense was not committed in a especially heinous,atrocious or cruel manner,even if such evidence exist and the prisoner is willing to run the risk his effort to make such a showing will be seen as unwillingness to accept responsibility and therefore evidence of unsuitability, Id. at p..600-601,fn.

This may be made worse by the absence of a trail transcripts (Ibid),That is the case here.

1  The alarming fact of this case is twelve(12)times in denying

2  petitioner's parole this board has relied <u>solely</u> on the gravity of

3  the offense something that no rehabilitative progress can ever

4  change.

5  An instructive case is,Yellen v. Diane Butler(E.D.Cal.2003,No# CIV

6  S-01-2398, Where petitioner,Yellen is serving two(2),concurrent terms

7  of life with the possibility of parole for the conviction of

8  Kidnap/Robbrey ,and was found unsuitable for parole at his

9  third(3rd),parole hearing before the board in (1999),and three more

10 additional hearings following the (1999) hearing an at which he found

11 unsuitable for parole.

12 The facts of the offense in many an all respects are far more worse

13 than the instant case,Petitioner,Yellen along with two(2), crime

14 partners in (1983),from November 5th til November 21st,went on a

15 crime spree crimes including:conspiring to robb Neiman-Marcus,the

16 overt acts in the conspiracy were stealing Mr.Silverman's

17 Porsche,breaking in at Kelco Industries to lure (ADT) security

18 personnel,Kidnapping and Robbing Mr.Nixion,stealing Mr.Castenada's

19 Van,posing as interested buyers of and attempting to steal

20 Mr.Terzibachian's Porsche,Kidnapping to robb Mr.Nixion and

21 Mr.Castenada,robbing Mr.Castenada and Mr.Nixion,unlawfully taking

22 both of their Vehicles,attempting grand theft auto of Mr.Terzibachian

23 Car,assault with fire-arms on Micheal and Rebecca Terzibachian and

24 Joseph Deuer,assaulting Neiman-Marcus employees,burglarizing

25 Neiman-Marcus.

26 Petitioner,Yellen was convicted and sentenced to prison for

27 concurrent life terms with the possibility of parole for

28 Kidnap/Robbery,the board continued to rely on the facts of the crime

   to deny parole.

1   The board concluded that Yellen's crime was trivial in relation to the

2   offense,and the involved multiple victims.

3   The Eastern District court(2003),in _Yellen_ wrote,more important in

4   assessing any due process violation is the fact that continuous

5   reliance on unchanging circumstances transforms an offense for which

6   California law provides eligibility for parole into a de facto _Life_

7   imprisonment without the possibility of parole,the court ask

8   rhetorically petitioner,Yellen's crime or motivation for the crime

9   which are going to change,the answer is nothing. The circumstances of

10  the crime will always be what they were,and petitioner's motive for

11  committing them will always be trivial petitioner has no hope of ever

12  obtaining parole except that a panel in the future will arbitrarily

13  hold that the circumstances were not that serious or the motive was

14  more than trivial.

15  Given that no one seriously contends lack of seriousness or lack of

16  triviality at the present time the potential for parole in this case is

17  remote to the point of non-existence,petitioner's liberty interest

18  should not be determined by such an arbitrary remote possibility.

19  Further,the court found that there was not sufficient evidence to

20  support the (1999) board's decision finding petitioner,Yellen

21  unsuitable for parole.

22  Petitioner in the instant case is experiencing the same results as did

23  petitioner,Yellen continuous denial of parole an unlike

24  petitioner,Yellen being denied parole for six (6) times,petitioner in

25  the instant case have been denied parole by the board

26  twelve(12),times,the board relying on immutable factors to deny parole

27  violation of due process of law.

28  ///

(13)

1   The court in Irons,supra,358 f.Supp.2d at p.947 fn.3.express that,"To

2 a point it is true,"the circumstances of the crime and the

3 motivation for it may indicate a petitioner's

4 instability,cruelty,impulsiveness,violent tendencies and the like.

5 Howeve,after fifteen(15),or so years in the caldron of prison life,not

6 exactly an ideal therapeutic environment to say the least,and after

7 repeated demonstrations that despite the recognized hardship of

8 prison,this petitioner does not posses those attribute,the predictive

9 ability of the circumstances of the crime is near zero.

10   The rehabilitation success of petitioner is without a doubt a major

11 factor in this case. The board's decision denying parole on the basis

12 of the facts of the offense lacks "some evidence" that granting parole

13 posed an unreasonable risk of danger to society,(Cal.Code Regs.,title

14 15. section §2402,subd.(a).,The petition filed in this case should be

15 granted and the board ordered to reverse its decision of the (2005)

16 parole hearing from unsuitable to suitable,and grant petitioner a

17 release date.

18 ///

19   There was no evidence before the Board showing that Petitioner had a

20 unstable social history another reason to deny parole.

21 The board opined that petitioner,"Has an unstable social history

22 related to the fact that between the ages of 13,to 15,years. of age

23 petitioner was a gang member,smoked marijuana an also was involved in

24 using other drugs and alcohol(See Exhibit(A)"HT"at pg.59,Lns.8-14)

25 Petitioner contend,that back in October(1982) when convicted of this

26 offense an entering into the Department of Corrections in my initial

27 interview,i was ask a number of questions such as:"Did i belong to a

28 gand,"Did i drink alcohol,"Have i ever used drugs",and from my memory i

answered yes to all of the questions.

1  The record reflect that there is no evidence showing that when
2  petitioner had drunk alcohol from time to time and used drugs an
3  associated with a gang,for my involvement with these elements wasn't
4  to the degree that petitioner's daily life evolved around these
5  negative activities for if it was a reality of some 30,years ago of
6  extensive drug an alcohol use and gang activity,for that involvement
7  to that degree would constitute an unstable social history an it
8  would be well documented within the record of such involvement such
9  as arrest and convictions relating to these issues,however the record
10 is devoid of evidence showing that petitioner had an unstable social
11 history,prior to the commitment offense,petitioner was married and
12 worked as a welder and fork-lift driver,and provided for my family
13 and lived a stable social life.
14 Moreover,petitioner submits that his past does not by itself
15 reasonably establish current unsuitability because there is no
16 additional evidence to complete a chain of reasoning between his past
17 and in finding that because of it he currently poses an unreasonable
18 risk of danger if released.
19 The fact that petitioner was forthright an admitted to drinking an
20 using drugs along with gang association at the ages of 13-16,years of
21 age some 30,plus years ago does not by itself represent some evidence
22 that he is currently a risk and danger if release from prison.
23 Thus,as this court of Appeal recently concluded in the matter of In
24 re Scott,2006,DJDAR 13961 at p.13963,"The test is not whether some
25 evidence supports the reasons the board cites for denying parole,but
26 whether some evidence indicates a parolee's release unreasonably
27 endangers public safety. Cal.Code Regs.,title 15. section
28 §2402,subd.(a),[Parole denied of prisoner will pose an unreasonable
   risk of danger to society if released from prison]

1  Therefore,"some evidence" of the existence of a particular factor

2  does not necessarily equate to some evidence the parolee's release

3  unreasonably endangers public safety.Id.

4  Thus,the court must view the parole board's reason for denial of

5  petitioner's parole within the context of the other factors it must

6  consider to see if some evidence shows he continue to pose a current

7  unreasonable risk to public safety.In re Scott,supra,133 Cal.App.4th

8  at pp.594-595,Applying that test,peititoner asserts the court will

9  find no evidence that he is likely to commit another crime or that his

10  release would unreasonably endanger the public.

11  Furthermore, although at the board hearing the record will reveal

12  petitioner's involvement and participating in self-help substance

13  abuse programs continuously since (1989) within the institution.

14  (See Exhibit(A)"HT" at pg.26,Lns.4-27; pg.27,Lns.1-10)

15  In sum,the factor cited by the board that petitioner has an unstable

16  social history because of the use of alcohol and drug along with

17  association with a gang does not constitute some evidence that

18  petitioner,he currently poses an unreasonably risk of danger.

19  indeed,if peititoner's past involvement with the use of drugs an

20  alcohol and gang association invariably establish his

21  unsuitability,then the parole board could deny parole for the rest of

22  petititoner's life based on this immutable factor. The board's

23  decision in this regard appears to be arbitrary and capricious because

24  as noted,the decision omits any consideration of,or even reference

25  to,the undisputed evidence noted above.

26  ///

27  ///

28  ///

1  The Board's Decision Denying Parole Failed To Reflect Due
2  Consideration Of The Circumstances Tending To Show His Suitability
3  For Parole.

4  The board failed to consider evidence showing petitioner's is
5  suitable for release from prison. The evidence shows the existence
6  in this case of all the foregoing circumstances tending to show
7  suitability for release from prison,except the "Battered woman
   syndrome,Cal.Code of Regs. section §2402,subd.(d),(1),(9).

8  The board commended petitioner for some of the circumstances tending
9  to show suitability for parole;has completed high school,has
10 vocations,and marketable skills,participated in self-help
   programing,has favorable psychiatric reports,and has realistic plans
11 for parole an ample letters of support from family and friends
12 supporting his release an at Fifty(50),years of age reduces the
13 probability of recidivism (See Exhibit(A)"HT" at pg.59,Lns.21-24;
14 pg.60,Lns.6-19)

15 The board's failure to undertake the individulized consideration of
16 all relevant factors required by Rosenkrantz,29 Cal.4th at
17 p.655,"also offends the board's own regulations,which require that
18 [A]ll relevant,reliable,information available to the panel shall be
19 considered in determining suitability for parole,Cal.Code of
20 Regulations.,title 15. section §2402,subd.(b);In re Ramirez,94
21 Cal.App.4th 549,at 571-72.

22 [F]ailure to acknowledge that Ramirez's conduct in prison was a
23 circumstance that supported his application for parole,is yet another
24 indication of an arbitrary and capricious determination.

25 The board's treatment of petitioner is if anything more unfair than
26 that considered in Ramirez,because more evidence of circumstances
27 tending to show suitability for release was ignored here than in that
28 case.
   //

1    Furthermore, the evidence of petitioner's participation and
2    performance while incarcerated is particularly significant. As the
3    Supreme court has recognized, the behavior of an inmate during
4    confinement is critical in the sense that it reflects the degree to
5    which the inmate is prepared to adjust to parole release
6    Greenholtz, 442 U.S. at p.15, 99 S.ct.2100.
7                              Conclision
8    For all the reasons expressed herein, this court should grant the
9    petition for habeas corpus.
10   ////
11   ////
12   ///
13   ////
14   ////
15   ////
16   ////
17   ////
18   ////
19   ////
20   ////
21   ////
22   ////
23   ////
24   ////
25   ////
26   ////
27   ///
28   ///

1  Petitioner Was Removed From His Parole Hearing And Deprived Of The

2  Right To Ask Questions And To Speak Regarding An Unsupported

3  Claim,For There Was No Evidence That Petitioner Was Not
   Cooperating,Being Combative,and Argumentative And Needed To Be Remove

4  From His Parole Hearing.

5

6  On September 15th,2005,Petitioner went before the Board for

7  petitioner's twelfth(12th), parole consideration hearing. The hearing

8  was conducted by Commissioner,Susan Fisher,Deputy Commissioner

9  D.H.Mcbean,Deputy District Attorney for the county of Los Angeles

10 Alexis Delagarza,Katera Rutledg Attorney for petitioner,and

11 Petitioner Willie E. Tatum Jr. were all present.

12  The Following Colloguy Is What Led To Petitioner's Removal From The

13 Hearing.

14 [District Attorney Delagraza]:"I think the last hearing or the

15 hearing before last,they suggested that petitioner do programing with

16 the respect to the fact that the victims of the crime were women and

17 the concern was that he had sexual aggression issues didhe ever do

18 any self-help or any kind of anything on that"]

19 [Petitioner]:"Excuse me,you said that you read that in some

20 transcripts of last years hearing"]

21 [Commissioner Fisher]:"Wait until the board ask the questions"]

22 [Deputy Commissioner Mcbean]:"Hold on is it in the transcripts of the

23 hearing or was it in the transcripts of the decision"]

24 [District Attorney Delagraza]:"In the report i read that where it

25 indicated what the inmate was told to do,I'm trying to find where it

26 was"]

27 [Petitioner]:"And back to the representative,The District

28 Attorney,"She said that she read is somewhere i mean,what document is
   this"]

1  [Commissioner Fisher]:"Just clam down we're not going to just leave
2  it on record unsolved"]
3  [Deputy Commissioner Mcbean]:"Well it is a good question though,even
4  if it hasn't been posed in the past,and i know you're not interested
5  in talking about the crime today"]
6  [Petitioner]:"Right"]
7  [Deputy Commissinoer Mcbean]:"I do notice that in terms of self-help,
8  the only thing you've done is A.A.and there was the sexual component
9  of the crime,have you tried to do anything at all in terms of
10  self-help on any sexual issues"]
11  [Petitioner]:"No because,i what was the conviction?,what is the
12  conviction?"]
13  [Deputy Commissioner Mcbean]:"Concerning the facts on the crime"]
14  [Petitioner]:"Okay,but what about the conviction?"]
15  [Deputy Commissioner Mcbean]:"I'm asking the question"]
16  [Petitioner]:"What was the conviction,I wasn't convicted of no sexual
17  crime"]
18  [Commissioner Fisher]:"Mr.Tatum let me give you some advice you're
19  doing the same thing right now that you have been doing in other
20  hearings ,that have been getting you into trouble,if we're trying to
21  go"]
22  [Petitioner]:"Get to what-what are you trying to get to
23  Ms.Commissioner"[
24  [Commissioner Fisher]:"All right get him out of here please"]
25  [Petitioner]:"Can i have my chrono's,give me my chrono's"]
26  [Commissioner Fisher]:"I'll give them to you later,I'll give it to
27  your Attorney at the end of your hearing,just for the record,I'm
28  having the officer remove Mr.Tatum from the room,he is not
cooppperating,hes being combative,and hes argumentative,an we don't
need to have him here"]

1  (See Exhibit(A)"HT",Starting at pg.40,Lns.20-27; On through to

2  pg.44,Lns.1-16)

3  California Penal Code section §3041.5,and California Code of

4  Regulations section §2247,affords petitioner the right during a

5  parole hearing to ask an answer questions and to speak on my own

6  behalf,an as petitioner exercised thses rights to ask questions and

7  to speak on my own behalf regarding the unsupported claim made by

8  District Attorney Delagraza,petitioner was told to wait by

9  Commissioner Fisher,"Until the board ask the questions,violating

10 procedural right's of petitioner.(See Exhibit(A)"HT" at

11 pg.41,Lns.4-9)

12 [Commissioner Fisher]:"Just clam down we're not going to just leave

13 it on record unsolved"];(See Exhibit(A)"HT" at pg.42,Lns.20-25).

14 The unsupported claim made by District Attorney Delagraza did in <u>fact</u>

15 remained on record unsolved,for she did not and could produce the

16 supporting documentation,[T]he "Report" as evidence at the hearing to

17 support her unsupported stated claim regarding this sexual aggression

18 issue that was fabricated by her.

19 Cal.Code of Regs. title,15. section §2030,(d),(2);hearing procedures;

20 Role of the Prosecutor, in pertinent part:

21 "In making comments,supporting documentation in the file should be

22 cited",for District Attorney Delagraza stated that she had read a

23 prior board report stating that a prior board suggested that

24 petitioner do some programing relating to sexual agression issues;for

25 she mad the unsupported claim but did not and could not produce the

26 documentation at the hearing to support her claim that went unsolved

27 an as result petitioner was removed from his parole hearing

28 after questioning the vilidity of the District Attorney's statement.

   (See Exhibit(A)"HT" at pg.40,Lns.20-27;pg.41,Lns.1-17;pg.48,Lns.8-22)

1    Further,for no such "Reports" even exist for the board don't issue

2    any reports for any recommendations or suggested programing that the

3    board may recommend,it would be found in the decision section of a

4    board transcripts after parole is denied,for an example of this

5    procedure(See Exhibit(A)"HT"at Decision pg.61,Lns.2-5)

6    Moreover,at the outset of the parole hearing petitioner invoke the

7    right not to discuss the offense(See Exhibit(A)"HT" at pg.4,Lns.2-15;

8    pg.7,Lns.5-11);See also California Penal Code section §5011(b),and

9    Cal.Code of Regulations section §2236).

10   The question stated into the record by District Attorney Delagraza

11   and supported by the board panel which led to petitioner being

12   removed from his parole hearing,was a question involving

13   circumstances surrounding the offense in which petitioner was not

14   convicted of however these circumstances still remain as elements of

15   the crime and petitioner chose not to discuss the offense,the

16   conviction in (1982) was for Kidnap/Robbery, not Kidnap/Rape;(See

17   Exhibit(A)"HT"at pg.40,Lns.20-27; pg.47,Lns.1-19)

18   Overmore,Commissioner Fisher was the hearing officer in charge of

19   petitioner's parole hearing,Cal.Code of Regulation,title 15.section

20   §2030(d),(1),hearing procedures in pertinent part:

21   The hearing officer shall ensure throughout the hearing that

22   unecessary,irrelevant,or cumulative oral testimony and statements are

23   excluded",and for the allowance by Commissioner Fisher of the

24   unsupported stated claim and questions ask by District Attorney

25   Delagraza,and Deputy Commissioner Mcbean,for these questions and

26   statements were unecessary,irrelevant and was found to be unsupported

27   by the record leading to petitioner being removed from his

28   hearing,violation of due process of law.

22)

1

**Conclusion**

2    That this cort grant this petition, for all the reasons expressed

3    herein.

4    //

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I,Willie Tatum declare under penalty of perjury that the above is true and correct.

For all the forgoing reasons this petition for review should be granted.

Dated: 10.3.07

Respectfully Submitted,

Willie E. Tatum Jr.

**PROOF OF SERVICE BY MAIL**
**BY PERSON IN STATE CUSTODY**
(C.C.P. §§ 1013(A), 2015,5)

I, _Willie E. Tatum Jr._, declare:

I am over 18 years of age and I am party to this action. I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California. My prison address is:

_Willie E. Tatum Jr._, CDCR #: _C-55580_
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: _EAST DORM 90/low_
SOLEDAD, CA 93960-0689.

on _October 3, 2007_, I served the attached:

_One Copy of Writ of habeas Corpus, for The review of The California Supreme Court._

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined. The envelope was addressed as follows: _California Supreme Court_

_350 Mc Allister St._

_San Francisco, Ca. 94102-7303_

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on _10.3.07_.

_Willie E. Tatum Jr._
_____
Declarant

# CALIFORNIA APPELLATE COURTS



### Case Information

Welcome

Search

E-mail

Calendar

Help

Opinions

C|C
home

## 2nd Appellate District

 Change court

Court data last updated: 10/11/2007 01:05 PM

**Case Summary**   **Docket**   **Scheduled Actions**   **Briefs**
**Disposition**   **Parties and Attorneys**   **Trial Court**

## Disposition

**Tatum, Jr. v. The People et al.**
**Division 4**
**Case Number B200514**

| Description: | Petition summarily denied by order |
| --- | --- |
| Date: | 09/26/2007 |
| Status: | Final |
| Publication Status: | |
| Author: | |
| Participants: | |
| Case Citation: | |

**Click here** to request automatic e-mail notifications about this case.

© 2007 Judicial Council of California

RECEIVED

OCT 1 0 2007

CLERK SUPREME COURT

ATTENTION CLERK OF THE COURT:

Please accept the enclosed PETITION for filing in this court. Due to circumstances beyond my control, I declare as true under penalty of perjury, the following reasons I was unable to obtain any more copies of this petition.

1. The prison I'm currently housed in, Correctional Training Facility, suffers numerous lockdowns, and various other excuses why the prison library is closed.

2. The prison library is closed many days due to the prison Librarian being off.

3. The prison library allows less than 60 inmates in the library at a time for a prison that has around 3,500 inmates. I waited numerous times for my turn in the library, yet was denied access.

4. The one copier the library does have for over 3,500 inmates, has been out of toner, paper or some service problem, at least that's what I was told.

5. The United States Supreme Court requires only one copy of PETITIONS filed in their Court by inmates confined in an institution who are not represented by counsel. The high Court recognizes the difficulties inmates have in producing copies (see United States Supreme Courts New Rules-Model 1995, 116 S. Ct. 22).

6. Due to the requirements I file my PETITIONS in a timely manner, I have no choice but to file this petition without the number of copies requested by court rules. If this is a problem, please filed my petition and let me know if I need to provide more copies, and I will do my best to obtain them.

Thank you for your time and understanding.

_Willie E. Tatum Jr._                    Dated: _10. 3. 07_

P.S. If possible could you please return to me a filed copy for my records.

Thank you

*Proof of Service – Mail*

## PROOF OF SERVICE

Re:    Case Number _S157114_
       Case Title _In re Willie Tatum on H.C._

I hereby declare that I am a citizen of the United States, am over 18 years of age, and am/am not a party in the above-entitled action. I am employed in/reside in the County of _San Francisco_ and my business/residence address is _350 McAllister St._ _SF, CA 94102_

On _Oct. 11th 2007_, I served the attached document described as a _Petition for Review_

on the parties in the above-named case. I did this by enclosing true copies of the document in sealed envelopes with postage fully prepaid thereon. I then placed the envelopes in a U.S. Postal Service mailbox in _San Francisco_, California, addressed as follows:

COURT OF APPEAL
SECOND APPELLATE DISTRICT
300 SOUTH SPRING STREET
2ND FLOOR, NORTH TOWER
LOS ANGELES, CA 90013

_Los Angeles Superior Court_
_111 North Hill Street_
_Los Angeles, CA 90012_

I, _Colleen Thompson_, declare under penalty of perjury that the foregoing is true and correct.

Executed on _October 11, 2007_, at _San Francisco_, California.

_Colleen E. _____
Signature

# EXHIBIT 6

# CALIFORNIA APPELLATE COURTS

## Case Information

| | |
|---|---|
| Supreme Court | ## Supreme Court |
| Welcome | Court data last updated: 08/28/2008 10:53 AM |
| Search | |
| E-mail | |
| Calendar | |
| Help | |
| Opinions | |

**Case Summary    Docket    Briefs
Disposition    Parties and Attorneys    Lower Court**

### Docket (Register of Actions)

**TATUM (WILLIE) ON H.C.**
**Case Number S157114**

| Date | Description | Notes |
|---|---|---|
| 10/10/2007 | Petition for review filed | Willie Tatum, Petitioner in Pro Per |
| 10/11/2007 | Record requested | |
| 10/16/2007 | Received Court of Appeal record | |
| 11/29/2007 | Time extended to grant or deny review | The time for granting or denying review in the above-entitled matter is hereby extended to and including January 8, 2008, or the date upon which review is either granted or denied. |
| 12/12/2007 | Petition for review denied | |

**Click here to request automatic e-mail notifications about this case.**

© 2007 Judicial Council of California

Change court

C|C
home