United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8                   IN THE UNITED STATES DISTRICT COURT
9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   WILLIE E. TATUM,                        No. C-08-0814 TEH (PR)
12              Petitioner,
13         v.                                ORDER DENYING PETITION FOR WRIT
                                             OF HABEAS CORPUS
14   BEN CURRY, Warden
15              Respondent.
16   _____/
17
18         Pro se Petitioner Willie E. Tatum, a state prisoner
19   incarcerated at the California Training Facility in Soledad,
20   California, seeks a writ of habeas corpus under 28 U.S.C. § 2254
21   challenging the California Board of Parole Hearings' ("BPH")
22   September 15, 2005 decision to deny him parole, which, for the
23   reasons that follow, the Court denies.
24
25                                   I
26         The facts of the crimes, as recited by BPH without
27   objection from Petitioner, are as follows:
28

On May 21, 1982, at about 2:00 A.M., female victim[s] Becker and Simon . . . were forced off the road by [a] van.  [Petitioner] and [another man] exited the van and approached the victim[]s['] car.  [Three more men remained in the van.]  [Petitioner] was armed with a loaded revolver and forced his way into the passenger side of the victim[]s['] vehicle.  [One of the other men] threatened the victims with a knife and also forced his way into the victim[]s['] vehicle.  The victims screamed.  [Both the brother and boyfriend of one of the victims] heard the scream and went out to investigate.  [Petitioner] pointed the revolver directly at the m[en] and told them to get back.  The two men complied with [Petitioner's] order.  The victims were forced to drive away from their location.  [Petitioner] ordered Becker to follow the van.  They drove a short distance during which [Petitioner] and [a co-perpetrator] robbed the victims of their jewelry.  They then ordered the victims out of their car and into the waiting van.  Inside the van, [Petitioner] ordered the victims to remove their clothes.  [One of the co-perpetrators] attempted to unbutton [] Simon's pants.  He stopped when he was told to wait until they got on the freeway.  The police had been contacted by the victim's boyfriend, and the van was identified.  The police spotted the van and a chase ensued.  The chase lasted a short time.  The chase culminated when the van crashed into a tree.  The five defendants then attempted to escape by running out of the van. [Petitioner] and [one of the co-perpetrators] were arrested immediately at the scene. [The] remaining [co-perpetrators] were arrested later near the scene of the crashed van.

Doc. #4-1 at 43-44.

In 1982, Petitioner was sentenced to seven years to life in state prison following his guilty plea to two counts of kidnapping for the purpose robbery and an attached deadly weapon enhancement.  Doc. #4-1 at 36; Doc. #4-3 at 2.  His minimum eligible parole date was February 28, 1989.  Doc. #4-1 at 36.

2

On September 15, 2005, Petitioner appeared before BPH for his twelfth parole suitability hearing.  Doc. #1 at 9.  Before the hearing concluded, Petitioner, who apparently exhibited disruptive behavior at his prior parole suitability hearings, became "combative" and "argumentative" and was removed.  Doc. #4-2 at 26-27.  At the conclusion of the hearing, BPH found Petitioner "was not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison."  Doc. #4-2 at 40.  BPH cited several reasons to support its decision, including:  (1) the "very callous" nature of the commitment offense; (2) that there were multiple victims who were subject to Petitioner's "abusive" threats; (3) Petitioner's "unstable" social history, including his history of domestic violence; and (4) his "inability to control his temper, as once again was evidenced today at this hearing."  Id. at 40-42, 44.  Petitioner's parole was deferred for two years.  Id. at 40.

Petitioner unsuccessfully challenged BPH's decision in the state superior and appellate courts.  Doc. #4-3 at 2-4; Doc. #4-5 at 2.  On December 12, 2007, the California Supreme Court summarily denied Petitioner's Petition for Review.  Doc. #4-7 at 2.  This federal Petition for a Writ of Habeas Corpus followed.  Doc. #1.

Per order filed on July 2, 2008, the Court found Petitioner's claim that BPH violated his due process rights, when liberally construed, colorable under § 2254, and ordered Respondent to show cause why a writ of habeas corpus should not be granted.  Doc. #3.  Respondent has filed an Answer and Petitioner has filed a

3

1    Traverse.  Doc. ## 4 & 5.

2

3                                    II

4          The Antiterrorism and Effective Death Penalty Act of 1996

5    ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive

6    vehicle for a habeas petition by a state prisoner in custody

7    pursuant to a state court judgment, even when the petitioner is not

8    challenging his underlying state court conviction."  <u>White v.</u>

9    <u>Lambert</u>, 370 F.3d 1002, 1009–10 (9th Cir. 2004).  Under AEDPA, this

10   Court may entertain a petition for habeas relief on behalf of a

11   California state inmate "only on the ground that he is in custody in

12   violation of the Constitution or laws or treaties of the United

13   States."  28 U.S.C. § 2254(a).

14         The writ may not be granted unless the state court's

15   adjudication of any claim on the merits:  "(1) resulted in a

16   decision that was contrary to, or involved an unreasonable

17   application of, clearly established Federal law, as determined by

18   the Supreme Court of the United States; or (2) resulted in a

19   decision that was based on an unreasonable determination of the

20   facts in light of the evidence presented in the State court

21   proceeding."  28 U.S.C. § 2254(d).  Under this deferential standard,

22   federal habeas relief will not be granted "simply because [this]

23   court concludes in its independent judgment that the relevant

24   state-court decision applied clearly established federal law

25   erroneously or incorrectly.  Rather, that application must also be

26   unreasonable."  <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000).

27

28                                    4

1    While circuit law may provide persuasive authority in
2    determining whether the state court made an unreasonable application
3    of Supreme Court precedent, the only definitive source of clearly
4    established federal law under 28 U.S.C. § 2254(d) rests in the
5    holdings (as opposed to the dicta) of the Supreme Court as of the
6    time of the state court decision.  <u>Williams</u>, 529 U.S. at 412; <u>Clark</u>
7    <u>v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir. 2003).

8    In determining whether the state court's decision is
9    contrary to, or involved an unreasonable application of, clearly
10   established federal law, a federal court looks to the decision of
11   the highest state court to address the merits of a petitioner's
12   claim in a reasoned decision.  <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669
13   n.7 (9th Cir. 2000).  The federal court also looks to any lower
14   state court decision that was examined, and whose reasoning was
15   adopted, by the highest state court to address the merits of a
16   petitioner's claim.  <u>See</u> <u>Williams v. Rhoades</u>, 354 F.3d 1101, 1106
17   (9th Cir. 2004).

18   Where the state court cited only state law, the federal
19   court must ask whether state law, as explained by the state court,
20   is "contrary to" clearly established governing federal law.  <u>See</u>,
21   <u>e.g.</u>, <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1230 (9th Cir. 2001);
22   <u>Hernandez v. Small</u>, 282 F.3d 1132, 1141 (9th Cir. 2002) (state court
23   applied correct controlling authority when it relied on state court
24   case that quoted Supreme Court for proposition squarely in accord
25   with controlling authority).  If the state court, relying on state
26   law, correctly identified the governing federal legal rules, the
27
28                                    5

federal court must ask whether the state court applied them

unreasonably to the facts.  See Lockhart, 250 F.3d at 1232.

### III

Petitioner seeks federal habeas corpus relief from BPH's
September 15, 2005 decision finding him unsuitable for parole and
denying him a subsequent hearing for two years on the ground that
the decision does not comport with due process.  Specifically,
Petitioner claims BPH's decision was not supported by "some
evidence."  Doc. #1 at 10-11.

### A

Under California law, prisoners like Petitioner who are
serving indeterminate life sentences become eligible for parole
after serving minimum terms of confinement required by statute.  In
re Dannenberg, 34 Cal.4th 1061, 1077-78 (2005).  At that point,
California's parole scheme provides that BPH "shall set a release
date unless it determines that the gravity of the current convicted
offense or offenses, or the timing and gravity of current or past
convicted offense or offenses, is such that consideration of the
public safety requires a more lengthy period of incarceration."
Cal. Penal Code § 3041(b).  Regardless of the length of the time
served, "a life prisoner shall be found unsuitable for and denied
parole if in the judgment of the panel the prisoner will pose an
unreasonable risk of danger to society if released from prison."
Cal. Code Regs. tit. 15, § 2402(a).  In making this determination,

6

BPH must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offense, including behavior before, during and after the crime.  See Id. § 2402(b)-(d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" that cannot be denied without adequate procedural due process protections.  Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002).  It matters not that a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."  Biggs v. Terhune, 334, F.3d 910, 915 (9th Cir. 2003).

Petitioner's due process rights require that "some evidence" support BPH's decision finding him unsuitable for parole.  Sass, 461 F.3d at 1125.  This "some evidence" standard is deferential, but ensures that "the record is not so devoid of evidence that the findings of [the board] were without support or otherwise arbitrary."  Superintendent v. Hill, 472 U.S. 445, 457 (1985).  Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  Id. at 455.  Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  Id. at 455-56.

Due process also requires that the evidence underlying

**7**

BPH's decision have some indicium of reliability.  <u>Biggs</u>, 334 F.3d at 915; <u>McQuillion</u>, 306 F.3d at 904.  Relevant to this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, BPH.  <u>See</u> <u>Pedro v. Oregon Parole Bd.</u>, 825 F.2d 1396, 1399 (9th Cir. 1987).  If BPH's determination of parole unsuitability is to satisfy due process, there must be some reliable evidence to support the decision.  <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232 (9th Cir. 2005).

**B**

Petitioner claims BPH's finding that he was unsuitable for parole violated his due process rights because it is not supported by "some evidence."  Doc. #1 at 10-11.  Petitioner is mistaken.

As an initial matter, the Court notes the record shows BPH afforded Petitioner and his counsel an opportunity to speak and present Petitioner's case at the hearing, gave them time to review documents relevant to Petitioner's case and provided them with a reasoned decision in denying parole.  Doc. #4-1 at 38-43; Doc. #4-2 at 40-46.

The record also shows BPH relied on several circumstances tending to show unsuitability for parole and that these circumstances formed the basis for its conclusion that Petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison."  Doc. #4-2 at 40; <u>see</u> Cal. Code Regs. tit. 15, § 2402(a) (stating that a prisoner determined to be an unreasonable risk to

**8**

1   society shall be denied parole).

2           First, regarding the commitment offense, BPH noted:

3           the offense was carried out in a very callous
            manner.   [] [T]here were multiple victims, and
4           the victims were abused during this offense
            because they were robbed, and then they were
5           forced into a van with apparently four men,
            [Petitioner] being one of them.  And
6           [Petitioner], according to the victims and
            corroborated by one of his crime partners, told
7           them to take off their clothes because he was
            going to fuck them.  Whether or not a hand was
8           laid on them, that was abusive.  Those women
            were terrified.  There's no doubt about it.
9           This was a horrible crime.  It was a crime where
            these young women had absolutely no ability to
10          protect themselves.  They were outnumbered, and
            they were quite clearly going to be sexually
11          abused had not the police already been called
            and proceeded on their behalf before they were
12          raped.

13  Doc. #4-2 at 41; <u>see</u> Cal. Code Regs. tit. 15, § 2402(c)(1)(A) & (C)

14  (listing that "multiple victims were attacked, injured or killed in

15  the same or separate incidents" and "the victim[s] [were] abused,

16  defiled or mutilated during or after the offense" as factors tending

17  to show the commitment offense demonstrates an unsuitability for

18  parole).

19          Second, BPH noted Petitioner's previous "history of law

20  enforcement contact related to domestic violence issues in

21  particular. . . . [Petitioner] indicated . . . today that there were

22  fights with the wife and he indicated to the probation officer in

23  discussing this arrest that he had hit her.  Also, notably she

24  stabbed him."  Doc. #4-2 at 41-42; <u>see</u> Cal. Code Regs. tit. 15, §

25  2402(c)(3) (listing "unstable social history" defined as "a history

26  of unstable or tumultuous relationships with others" as factors

27

28                                  9

tending to show unsuitability for parole).

Third, BPH noted Petitioner's inability to control his anger and his resulting need for continued participation in self-help so that he could "understand and cope with stress in a non-destructive manner."  Doc. #4-2 at 44.

BPH also considered other factors tending to support suitability for parole including that Petitioner:  (1) completed his General Educational Development while incarcerated; (2) had a marketable skill; (3) had been involved in substance abuse programming since about 1989; and (4) planned on residing with his mother and stepfather should he be paroled.  Doc. #4-2 at 42-43.

The state superior court affirmed the decision of BPH to deny Petitioner parole, finding that it was supported by "some evidence."  Doc. #4-3 at 2-4.  The court noted:

> there is some evidence to support the Board's finding that multiple victims were attacked in the same incident [Citation].  The Board also found that the offense was carried out in 'a very callous manner[.]' [Citation].  There is some evidence to support the finding that the offense was carried out in manner [sic] that demonstrates an exceptionally callous disregard for human suffering[.]  [Citation].  An 'exceptionally callous disregard for human suffering' means the offense in question must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of that offense.  [Citation].  Here, the two female victims were outnumbered by five male attackers.  The victims were ordered to take off their clothes and threatened with sexual assault.
>
> The record reflects that the Board relied on additional factors in denying parole, and there is some evidence to support that decision. There is some evidence that petitioner is unsuitable for parole due to his 'history of

1
2
3
4
5
6
7
8
9
10

> unstable or tumultuous relationships with
> others[.]'  [Citation].  The record reflects
> that the petitioner 'has a history of law
> enforcement contact related to domestic violence
> issues[.]'  [Citation].  In determining
> suitability, the Board may consider 'all
> relevant, reliable information available[.]'
> [Citation].  The record shows that petitioner's
> behavior at the parole suitability hearing was
> uncooperative and combative[.]  [Citation].
> There is some evidence to support the Board's
> finding that Petitioner could benefit from
> continuing to participate in self-help to
> 'address his anger issues and his inability to
> control his temper' [citation] based on his
> conduct at the parole suitability hearing.
> Although the Board commended petitioner for the
> positive aspects of his behavior, [it] found
> that this positive behavior did not outweigh the
> factors of unsuitability.

11

12 Doc. #4-3 at 3-4.

13        The state appellate court also affirmed the decision of

14 BPH to deny Petitioner parole, in an order that stated, in its

15 entirety:

16
17
> The petition for writ of habeas corpus has
> been read and considered.

18
19
20
21
22
23
24
> The petition is denied.  Denial of parole
> may be based solely or in part upon the
> particular circumstances of the inmate's
> commitment offense.  The record shows that the
> particular circumstances of petitioner's
> kidnapping-for-purpose-of-robbery offense
> "exceed the minimum elements necessary to
> sustain a conviction" of that offense in
> numerous respects.  (In re Dannenberg (2005) 34
> Cal.4th 1061, 1070-1071, 1094-1095.)  The record
> also amply satisfies the applicable "some
> evidence" standard with regard to the other
> factors identified by the Board in determining
> petitioner unsuitable for parole in 2005.

25 Doc. #4-5 at 2; see also Doc. #4-6 at 32.  The state supreme court

26 summarily denied Petitioner's Petition for Review.  Doc. #4-7 at 2.

27

28
11

On this record, the Court finds that the state courts'
rejection of Petitioner's due process claim that BPH's decision to
deny him parole was not supported by "some evidence" was not
contrary to, nor did it involve an unreasonable application of,
clearly established federal law, and it was not based on an
unreasonable determination of the facts.  See 28 U.S.C. § 2254(d);
LaJoie, 217 F.3d at 669 n.7; Williams, 354 F.3d at 1106.  Although
the state courts cited only state law in denying Petitioner's claim,
both courts correctly identified the "some evidence" standard that
applies under federal law; therefore this Court must determine
whether the state courts applied the standard unreasonably to the
facts.  Doc #4-3 at 2; see Lockhart, 250 F.3d at 1232.

The record shows that BPH had some reliable evidence to
support its finding of unsuitability.  BPH observed that, as he had
demonstrated in prior suitability hearings, Petitioner remained
unable "to control his temper" and had to be removed from the
hearing because of his "combative" and "argumentative" behavior.
Doc. #4-2 at 26-27 & 44.  BPH indicated that Petitioner

> need[ed] to continue to participate in self-help
> in order to understand and cope with stress in a
> non-destructive manner . . . [and] to continue
> to address his anger issue and[] his inability
> to control his temper, as once again was
> evidenced today at this hearing.  In [light] of
> his history and his continued negative behavior,
> there's no indication that he would behave
> differently if paroled.

Id. at 44.

BPH also noted Petitioner's history of domestic violence,
including an incident where Petitioner hit his wife and she stabbed

12

1   him.   Doc. #4-2 at 41-42.   Based on these considerations, especially
2   when viewed in conjunction with the nature of the commitment
3   offense, which involved Petitioner and four other men kidnapping and
4   robbing two women and threatening them with sexual assault, this
5   Court cannot say that BPH's finding that Petitioner was unsuitable
6   for parole was "without support or otherwise arbitrary."   See Hill,
7   472 U.S. at 457.

8         Given the evidence before the Court, BPH reasonably
9   concluded that Petitioner was not yet suitable for parole.   See,
10  e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based
11  on gravity of offense and the petitioner's psychiatric reports
12  documenting his failure to complete programming while in prison);
13  Biggs, 334 F.3d at 916 (upholding denial of parole based on gravity
14  of offense and the petitioner's conduct prior to imprisonment);
15  Morales v. California Dep't. of Corrections, 16 F.3d 1001, 1005 (9th
16  Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995) (upholding
17  denial of parole based on the cruel nature of offense, the
18  petitioner's unstable and criminal history, and his need for further
19  psychiatric treatment).   It is not up to this Court to "reweigh the
20  evidence."   Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).
21  //
22  //
23  //
24  //
25  //
26  //
27
28                                    13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV

For the reasons set forth above, the Petition for a Writ of Habeas Corpus is DENIED.

The Clerk shall terminate any pending motions as moot, enter judgment in favor of Respondent and close the file.


IT IS SO ORDERED.



DATED      07/30/09
                                          **THELTON E. HENDERSON**
                                          **United States District Judge**

G:\PRO-SE\TEH\HC.08\Tatum-08-814-bph denial.wpd

**14**